UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

KHAN AVIATION, INC.,

Debtor.

Case No. 19-04261
Chapter 11
Hon. Scott W. Dales

## DEBTOR'S EMERGENCY MOTION FOR (i) ENTRY OF AN INTERIM AND FINAL ORDER (a) AUTHORIZING IT TO USE CASH COLLATERAL; AND (b) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

**NOW COME** Debtor, Khan Aviation, Inc., by and through his attorneys, Wardrop & Wardrop, P.C. and Haller & Colvin, P.C., and for his Emergency Motion for: *(i) Entry of an Interim and Final Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief* ("Motion"), state as follows:

### INTRODUCTION

1.      On October 8, 2019 ("Petition Date") the Debtor filed for protection under Chapter 11 of the United States Bankruptcy Code ("Code").

2.      On the same day Najeeb Ahmed Khan (Case No. 19-04258), GN Investments, LLC (Case No: 19-04262), NAK Holdings, LLC (Case No: 19-04267), NJ Realty, LLC (Case No: 19-04266), Sarah Air, LLC (Case No: 19-04268), and KRW Investments, Inc. (Case No: 19-04264) (collectively with the Debtor referred to as the "Debtors").

3.      The primary goal of these Chapter 11 Cases is to facilitate the orderly liquidation of the Debtors' assets in an effort to maximize the value of the Debtors' estates for the benefit of its creditors. The value of the Debtors' assets is diminishing due to various creditor and other

34095/000/00988048-2SLS

party-in-interest actions that have served to diminish value and frustrate the Debtors' attempts to liquidate assets to date.[1]

4.    The claims of the creditors arise primarily from the alleged financial mismanagement (the "Mismanagement") by Debtor Najeeb Ahmed Khan ("Mr. Khan") of a company named Interlogic Outsourcing, Inc. ("IOI"). Mr. Khan is the sole shareholder of IOI, but has given up all voting and management rights.[2]

5.    The mismanagement is also the subject of a pending criminal investigation. Mr. Khan is fully cooperating with the federal authorities and has retained separate criminal defense counsel in that matter.

6.    KeyBank National Association ("KeyBank"), the largest creditor of the Debtors, provided certain payroll processing and ACH processing services to IOI for the benefit of IOI customers. Mr. Khan voluntarily reported the Mismanagement to KeyBank on Monday, July 8, 2019. He has fully cooperated with KeyBank since that time to mitigate any damages incurred by KeyBank, as well as IOI's clients, by providing information and full cooperation.

---

[1] For example, IOI, due to its size and scope, was often courted by investors and other buyers, with discussions taking place as late as June 2019. Two industry buyers and one financial buyer were negotiating offers in the over $50 million range. IOI had previously received an offer on or around March 23, 2017, to purchase the IOI company's stock and assets for approximately $69,000,000. After Mr. Khan voluntarily reported the Mismanagement to KeyBank, he also provided contacts and other information regarding ongoing discussions as referenced above. However, by KeyBank taking the series of actions described below, IOI's assets were ultimately sold by the IOI CRO for just $3,500,000. As just one other example of the diminishment of the value of the Debtors' assets because of various and competing creditor actions, a planned auction of the Mr. Khan's extensive automobile collection, with an approximate value of at least $36,000,000.00, that was to take place on around November 8, 2019, was halted on or around August 15, 2019, because of competing creditor actions and a restraining order halting such auction.

[2] IOI and its affiliated group of companies were founded by Mr. Khan beginning in 2002 and provide payroll, payroll tax, and benefit administration services directly to clients throughout the United States. On July 11, 2019, at KeyBank's direction, Mr. Dan Wikel of Huron Consulting was introduced by Mr. Khan to IOI leadership and given management control of IOI. On July 13, 2019, Mr. Khan was directed by KeyBank to appoint Timothy Daileader of Drivetrain LLC as Independent Director and Sole Manager of the Debtors (the "Independent Director") and ceded all voting rights and control of IOI as the Director as of that date. Mr. Daileader then appointed the chief restructuring officer who later commenced Chapter 11 bankruptcy proceedings for IOI and its affiliates in the United States Bankruptcy Court for the Northern District of Indiana (South Bend Division), Case No. 19-31445-hcd (jointly administered) (the "IOI Bankruptcy Case").

7.      Certain transfers initiated on July 5, 2019, failed for insufficient funds and resulted in overdrafts on KeyBank's payroll processing accounts (the "KeyBank Claim"). While the actual amount of the KeyBank Claim is unknown, upon information and belief the amount of the loss may be up to $139,400,000.

8.      Other creditors have filed claims related to the Mismanagement, including clients of IOI with claims related to the non-payment of employee withholding tax deposits (the "Client Claims"). On July 9, 2019, and subsequently, Mr. Khan has provided information regarding the availability of funds to be used to fund client accounts and on how to resolve other client liabilities, including tax liabilities. Debtors believe the total amount of Client Claims may be approximately $35,000,000. Upon information and belief, approximately $17,000,000 of client funds as of July 8, 2019, were on deposit at Chase Bank or other banks in IOI accounts and Debtor understands that a large portion are subject to a pending claim by KeyBank. Those funds are not assets of these Debtors.

9.      On July 9, 2019, KeyBank filed a lawsuit against Mr. Khan and IOI in the United States District Court for the Northern District of Ohio, seeking, among other things, a temporary restraining order against Mr. Khan. *See* Case No. 19-01566 (the "KeyBank Lawsuit").

10.      While complete documents were not made available to Mr. Khan, at the request and direction of KeyBank, and without independent counsel or the opportunity to review the documents he was signing, on July 12, 2019, Mr. Khan executed a Security Agreement in favor of KeyBank and subsequently executed numerous other security and pledge instruments that will be the subject of an adversary proceeding to be filed with these cases. Each of these bankruptcy cases were filed within ninety (90) days of the above-referenced pledges, making such pledges avoidable for the benefit of the Debtors' estates.

11.    On July 16, 2019, an *Agreed Order Granting Preliminary Injunction* was entered in the KeyBank Lawsuit enjoining Mr. Khan's transfer and use of funds and authorizing Mr. Khan's use of funds pursuant to an agreed-upon budget. This budgeting process continued up to the Petition Date. During this almost three (3) month period, Mr. Khan has abided by the budget agreed to with KeyBank.

12.    Certain of IOI clients also sued IOI, Mr. Khan and former IOI officers in an action in the Elkhart Superior Court, State of Indiana, Case No. 20D02-1908-PL-000208 (the "Elkhart Litigation"). That action has been removed to the United States Bankruptcy Court for the Northern District of Indiana, where a proceeding instituted by IOI is pending. IOI's assets were recently sold in that action. Further, one Michigan creditor of IOI has sued Mr. Khan and KeyBank in an action in Livingston County, Michigan. That matter has been removed to the United States Bankruptcy Court for the Eastern District of Michigan. Additional creditor claims are anticipated.

13.    Mr. Khan's spouse since 1990, Nancy Lee Khan ("Ms. Khan"), filed a complaint for separate maintenance on August 8, 2019, in the Cass County Circuit Court in which she seeks an equitable division of the parties' marital estate (the "Separate Maintenance Action").[3]

14.    In the Separate Maintenance Action, Ms. Khan has sought and obtained several *ex parte* restraining orders against the transfer or dissipation of assets in which Mr. Khan maintains any interest. KeyBank is challenging the provisions of the most recent Cass County restraining order as that order pertains to KeyBank.

15.    To effectuate the goal of these Chapter 11 Cases, *i.e.*, to facilitate the orderly liquidation of the Debtors' assets, many of which were acquired prior to the Mismanagement, and in an effort to maximize the value of the Debtors' estates for the benefit of its creditors, the Debtors

---

[3] Ms. Khan currently resides in the marital home in Edwardsburg, Michigan, in Cass County. Mr. Khan resides in a guest residence located on the same jointly owned property.

intend to file motions with the Court as soon as possible to authorize the sale of the Debtors'
non-exempt assets for the benefit of its creditors, in consultation with KeyBank and its other
creditors.  Mr. Khan also intends to seek a prompt determination with respect to his exempt
property, as well as a prompt determination in the Separate Maintenance Action.  The Debtors also
intend to expeditiously negotiate the terms of a Plan of Liquidation with KeyBank and its other
creditors that will provide for the resolution of any claim or other disputes and the prompt
distribution of assets to the Debtors' creditors.

16.    The sale of the collectible automobiles will be delayed, for the purposes of
maximizing the sale value until April 1, 2020.  The Debtors were, pre-petition, working with the
nationally recognized auction company, RM Sotheby's, a division of Sotheby's, to auction the
vehicles.  But creditors prevented a timely auction this fall and the Debtors have been advised RM
Sotheby's that holding off on the auction until April 1, 2020, will increase the amount recovered
by many times the costs (insurance, storage, etc.) incurred by the Estate to wait until April 1, 2020,
for the sale of the automobiles.

## SPECIFIC BACKGROUND FOR CASH COLLATERAL MOTION

17.    Since the Petition Date, the Debtors have conducted their affairs and operated their
businesses as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Code.

18.    No official committee of creditors holding unsecured claims has been appointed
and no Trustee or Examiner has been appointed in these cases.

19.    A Declaration in support of this Motion is attached as **Exhibit B** which also
references proposed budgets attached as **Exhibit C-1** through **Exhibit C-4** (the "Budgets").

20.    The Debtor files this Motion pursuant to Fed. R. Bankr. P. 4001 and L.B.R. 4001-3
(W.D.M.).

21.     This Court has jurisdiction over these matters relating to this Motion pursuant to 28 U.S.C. §1334(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(M). The statutory predicates for the relief sought herein are Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(a), (b) and (d) and LBR 4001-3. Venue of the Chapter 11 case in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

22.     The Debtors are an individual, Mr. Khan, and certain entities that the individual is a 100% owner of.

23.     Mr. Khan and the other Debtors own, among other things, accounts and various assets of high value, including collector automobiles and aircraft.

24.     Mr. Khan requires the use of cash to pay his personal living expenses and, most importantly to pay, certain expenses related to the preservation and maintenance of his and the other Debtors' assets.

25.     Upon information and belief, KeyBank asserts an interest in the cash collateral of the Debtors (arising from various pledges and other guaranties that are the subject of an adversary proceeding that will be filed to avoid those interests.)

26.     The Debtors recognize the potential concern that creditors, the Court, and other parties in interest may have regarding the Debtor's alleged Mismanagement with respect to the Debtor's functioning as debtor-in-possession of its estates.  Mr. Khan has remained in control of the Debtors' assets since being subject to the Ohio Budget in July, which budget has been updated and approved monthly by KeyBank.[4]

27.     The Debtors have also retained Delta Management Resources, LLC ("Delta"), led by William Beck ("Mr. Beck"), to act as the financial advisor to the Debtors and Liquidation

---

[4] Mr. Khan is also intimately familiar with the assets of the Debtors, having acquired them over many years (many well prior to the time period related to the Mismanagement).

Agreement to provide oversight, supervision and reporting to the Bankruptcy Court and creditors of the estate with respect to the use of Debtors funds during the pendency of the bankruptcy cases, and to facilitate and implement an orderly liquidation of the assets to maximize their value.

28.     Mr. Beck is well-known and highly respected in this district and has served as financial advisor in many in court and out of court distressed matters and has specialized knowledge regarding the liquidation of collectible motor vehicles, airplanes and other financial assets. Mr. Beck also has extensive knowledge and experience in complex liquidations including with respect to the type of personal property owned by the Debtors, and will serve an invaluable role in coordinating the on-going liquidation of the assets for the benefit of all creditors.

29.     Delta was retained shortly prior to the filing of the cases, and has developed the attached Budget to control the proposed allowed expenditures of the Debtors. Delta will oversee all expenditures and business decisions, and will prepare and provide regular reporting of the expenditures to the Court, creditors, and parties in interest, in the corporate case and the individual case.

## SUMMARY OF THE RELIEF REQUESTED

30.     Through this Motion, the Debtor seeks entry of an interim and final Order, in the form attached as **Exhibit A** or in such alternative terms as the Court finds just and equitable: (i) granting and affirming adequate protection to secured creditors; (ii) authorizing use of cash collateral on an interim basis; and (iii) scheduling a final hearing.

31.     Upon information and belief, the only creditor asserting a lien in cash collateral is KeyBank. Debtor Najeeb Ahmed Khan's wife may assert an interest in cash collateral.

32.     As adequate protection for any security interests that might be retained by KeyBank after litigation of the Adversary Proceeding to be filed, and as further set forth in paragraph ¶32, the Debtors offer replacement lien(s) in all types and descriptions of collateral which are

purportedly held by KeyBank, acquired or arising after the Petition Date, to the extent provided in

11 U.S.C. § 361(2) in the same rank, validity and priority as existed pre-petition, and such

additional adequate protection as more fully described in this Motion and in the proposed Order,

subject to challenge by the Estate or another interested party.

33.     The Debtor seeks an entry of an interim and final Order authorizing use of cash

collateral to preserve the Debtors' operations and the Debtors' estates for the benefit of their

creditors. In compliance with Rule 4001(d), the Debtor states:

a.      Upon information, the only entity which could claim an interest in cash
collateral is KeyBank and Nancy Khan; and

b.      Pursuant to the proposed Order and as further set forth in paragraph ¶31, the
Debtor proposes to grant the allegedly secured creditor continuing security
interests, consistent with the proposed Order, to protect said creditor (to the
extent KeyBank retains lien interests after litigation of the Adversary
Proceeding to be filed) from a decrease in value in their respective collateral
from the Petition Date pursuant to 11 U.S.C. §361(2).

## SUMMARY OF SECURED CLAIM

34.     KeyBank claims that the Debtor is liable for amounts due and owing to it by

Interlogic Outsourcing, Inc. pursuant to payment guarantees that were allegedly entered into by

KeyBank and the Debtors in July of 2019.  To secure these obligations, within 90 days of the filing

of the Bankruptcy Petitions, KeyBank was granted a security interest in substantially all of Mr.

Khan's assets, GN Investments' assets, NAK Holdings' assets, Sarah Air's assets, KRW

Investments' assets, NJ Realty's assets, and Khan Aviation's assets.  Such security interests were

perfected by the filing of UCC-1 Financing Statements in the appropriate states between July 15,

2019, and July 22, 2019.  (All within 90 days of the date of filing of the Bankruptcy Petition).

Debtors assert that the security interests and attendant liens are avoidable under 11 U.S.C. §§547

and 548.

35.    KeyBank's security interest in motor vehicles owned by Mr. Khan, GN Investments and NAK Holdings may have been perfected by the addition of KeyBank as lienholder on the titles to the vehicles sometime after July 19, 2019, and thus within 90 days of the Bankruptcy Petitions. KeyBank's security interest in Mr. Khan's capital stock may have been perfected by the transfer of the capital stock through stock transfer certificates on or about July 19, 2019. Debtors assert that these transfers are likewise avoidable under 11 U.S.C. §§547 and 548.

36.    The Debtor would assert that there was no consideration for the security interests granted to Key Bank.

37.    Debtor would point out to the Bank that there are several assets that, even if the security interest granted would not be subject to being set aside as a preference or fraudulent conveyance, are assets in which Key Bank is clearly not perfected. Debtor has numerous bank accounts in which Key Bank does not have a control agreement or any other type of perfection in such accounts.

## SUMMARY OF THE DEBTOR'S ASSETS

38.    The following is a partial summary of the Debtors' significant personal property assets that are the subject of this Motion. The values listed below are estimates provided by Debtor, based upon his knowledge of the assets as of October 7, 2019:[5]

a.    Bank Accounts (by Debtor):

  i.    NJ Realty, LLC – 1st Source - #4107 - $23,109

  ii.    GN Investments, LLC – 1st Source - #7998 - $40,638

  iii.    Najeeb Khan –

    1.    1st Source - #8068 - $886,087.15

    2.    1st Source - #6709 - $14,618.20 (joint with wife)

---

[5] Any values stated herein are estimates only and subject to the Debtors' filing of their schedules.

       3.       Lake City Bank – $145,200.45

       4.       HSA Account - $73,471.43

       5.       KeyBank Trust Account #1941 - $1,165,000.00

    iv.    Khan Aviation – 1st Source #0291 - $2,489.00

    v.    KRW Investments - 1st Source #2340 - $3,357.00

b.    Notes Receivable (by Debtor)

    i.    GN Investments - $1,763,701

c.    Other Personal Property (by Debtor):

    i.    Vehicles (by Debtor)

       1.       NAK Holdings, LLC - $5,625,000

       2.       Najeeb Khan - $30,821,750 (Car Collection)

    ii.    Aircraft and Aviation Equipment and hangars (by Debtor)

       1.       Sarah Air, LLC - $885,000

       2.       Khan Aviation - $2,065,000 (net of lien)

    iii.    Bonds, Mutual Funds, Stocks (by Debtor)

       1.       GN Investments, LLC - $437,500

       2.       Najeeb Khan - $3,063,000

d.    Deposits (by Debtor)

    i.    NAK Holdings, LLC - $89,372

39.    The Debtor do not waive any rights they have against KeyBank including, but not limited to, their avoidance powers pursuant to 11 U.S.C. § 544 *et seq.*

## REQUESTED USE OF CASH COLLATERAL

40.    The Debtor has an immediate need for use of cash collateral to meet his necessary, ordinary course business expenditures and, most importantly, to preserve the value of its estates

for the benefit of all creditors (see *Declaration of Najeeb Ahmed Khan* attached hereto as **Exhibit B**).

41.     The Debtors have, with the assistance of its financial advisor Mr. Beck, prepared budgets for each Debtor (the "Budgets") attached as **Exhibit C-1** to **Exhibit C-4,** which contain an anticipated budget of necessary expenditures going forward that are necessary to be paid to avoid irreparable harm to each of the bankruptcy estates for the next thirty (30) days.

42.     On the basis of the adequate protection submitted below, the Debtors submit that they should be granted authority to use cash collateral, in accordance with the Budgets.

## OFFERS OF ADEQUATE PROTECTION TO SECURED CREDITORS

43.     The Debtor proposes to use cash collateral to fund payment of normal and ordinary post-petition operating expenses (including, without limitation, the payment of post-petition professional fees and expenses approved by this Court in accordance with the requirements of the Code) as and when incurred, with such usage in general accordance with the Budget. The Debtor anticipates that some of the costs are variable and, as such, anticipates that some of the expenses will be slightly lower than that presented in the Budgets and some of their expenses may be slightly higher.

44.     The Debtor believes that to the extent the value of the Cash Collateral Assets diminish during the Budget periods, the value of the collectable automobiles will be enhanced by several times the total of Debtor's expenditures as a result of the proposed proper administration and sale of the automobiles. Debtor has been advised that an immediate sale of the automobiles will result in a loss of value in the vehicles of several million dollars as opposed to a sale in the spring of 2020.

45.     As adequate protection under §361 and §363 of the Code with respect to the Indebtedness and for any diminution in the Prepetition Collateral (whether Cash Collateral or otherwise), the Debtor offers the following to KeyBank:

a.     Unless and until the avoidance of KeyBank's alleged security interests by a final order of this Court, the proceeds of any sale by the Debtors of any property subject to alleged liens held by KeyBank shall, unless KeyBank agrees in conjunction with the approval of a sale under §363 of the Code, be paid to KeyBank to be held in a segregated DIP account subject to further order of this Court;

b.     Unless and until the avoidance of KeyBank's alleged security interests by a final order of this Court, KeyBank shall be granted continuing and replacement security interests and liens in all of the Debtors' post-petition property, excluding the Debtors' rights under §§ 544, 545, 546, 547, 548, 549 and 550. However, nothing in this paragraph shall be deemed to provide KeyBank with an improvement of position from the values of its collateral, as of the date of the Petition nor grant any interests in any property which KeyBank did not have a properly perfected lien;

c.     Delta will oversee all expenditures of Debtors' funds, which shall be made only pursuant to the Budget, and shall provide reporting of such expenditures on a periodic basis as set by the Court; and

d.     The Debtors will make available to KeyBank or any other creditor requesting such information all reports and documents as are required to be filed with the Office of the United States Trustee as well as proof of timely payment of taxes and insurance payments required to be paid under the terms of this Court's definitive order.

## NOTICE AND FINAL HEARING

46.     Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor which may have a claim in Debtor's Cash Collateral; (c) the Debtor's twenty (20) largest unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

47.     The Debtor further requests that the Court schedule a final hearing on this Motion and authorize it to serve copies of an interim order entered by the Court which fixes the time, date

and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor; (c) the Debtor's top twenty (20) unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court. The Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests this Honorable Court grant the relief requested in this Motion, authorizing the use of cash collateral, and granting adequate protection pursuant to the terms set forth herein or on such terms as the Court finds just and equitable.

Respectfully submitted,

WARDROP & WARDROP, P.C.

Dated: October 17, 2019                    By: _____
                                                Robert F. Wardrop II (P31639)
                                                Denise D. Twinney (P40735)
                                                300 Ottawa Avenue, NW, Suite 150
                                                Grand Rapids, MI  49503
                                                (616) 459-1225
                                                robb@wardroplaw.com
                                                denise@wardroplaw.com
                                                Co-counsel for the Debtors


                                                HALLER & COLVIN, P.C.
                                                Martin E. Seifert
                                                444 East Main Street
                                                Fort Wayne, IN  46802
                                                (260) 426-0444
                                                MSeifert@hallercolvin.com
                                                Co-counsel for the Debtors

534307.101419.EmergencyMotionCashCollateralKhanAviation

**EXHIBIT A – PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re:<br><br>　　　KHAN AVIATION, INC.,<br><br>　　　　　　Debtor. | Case No. 19-04261<br>Chapter 11<br>Hon. Scott W. Dales |

**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR (i)
ENTRY OF AN INTERIM AND FINAL ORDER (a) AUTHORIZING IT
TO USE CASH COLLATERAL; AND (b) PROVIDING ADEQUATE
PROTECTION AND OTHER RELIEF**

**THIS MATTER** having come to be heard upon the Debtor's Emergency Motion for: (i) Entry of an Interim and Final Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief ("Motion"); and the Court noting due service upon all creditors and parties in interest; and the Court being otherwise fully advised in the premises;

IT IS THEREFORE ORDERED:

1.　　The Debtor may use cash collateral to fund payment of normal and ordinary post-petition operating expenses (including, without limitation, the payment of post-petition professional fees and expenses approved by this Court in accordance with the requirements of the Code) as and when incurred through and including the date of the Final Hearing delineated herein as set forth in the attached Budgets, except for deviations from the Budgets as approved by KeyBank in writing.

2.　　The Debtor shall comply with ¶31 of the Motion in order to provide KeyBank adequate protection pursuant to §§361 and 363 of the Code with respect to the Indebtedness and for any diminution in the Prepetition Collateral (whether Cash Collateral or otherwise) pursuant to §361(2).

3.      The Debtor's authority to use cash collateral shall continue unless: (i) the Debtor fails to materially comply with the terms recited in ¶31 of the Motion; (ii) a Chapter 11 Trustee is appointed in the Debtor's estate; (iii) the Debtor's Chapter 11 case is converted to a proceeding under Chapter 7; and (iv) an Order is entered dismissing this case without KeyBank's consent.

4.      A Final Hearing on the Debtor's Motion will be held on _____, at the United States Bankruptcy Court for the Western District of Michigan located at _____ ("Final Hearing") which may be adjourned or continued by the Court at the Final Hearing. Within 48 hours of the entry of this Order, or if this Order shall be entered on a Friday or a day immediately preceding a legal holiday then, by the conclusion of the next business day, the Debtor shall serve, or cause to be served, a copy of this Order on all parties required to be served under Fed. R. Bankr. P. 4001(d), including (a) all creditors holding secured claims of record; (b) any creditors' committee appointed pursuant to § 1102 of the Code, or if no committee, Debtor's twenty largest (20) unsecured creditors; (c) all parties who have timely filed requests for notice under Bankruptcy Rule 2002; and (d) the United States Trustee. Any objection to this Order shall be in writing and shall be filed with the Court and served upon the Debtor (Wardrop & Wardrop, P.C., Attn:  Robert F. Wardrop II); and upon the United States Trustee not later than five (5) days prior to the date set for the Final Hearing as set forth above.

5.      If no objection is made to this Order, it may become final at the Final Hearing.

**END OF ORDER**

**EXHIBIT B - DECLARATION**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>NAJEEB AHMED KHAN,<br><br>Debtor. | Case No. 19-04258<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>KHAN AVIATION, INC.<br><br>Debtor. | Case No. 19-04261<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>GN INVESTMENTS, LLC,<br><br>Debtor. | Case No. 19-04262<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>KRW INVESTMENTS, INC.<br><br>Debtor. | Case No. 19-04264<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>NJ REALTY, LLC,<br><br>Debtor. | Case No. 19-04266<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>NAK HOLDINGS, LLC,<br><br>Debtor. | Case No. 19-04267<br>Chapter 11<br>Hon. Scott W. Dales |
| In re:<br><br>SARAH AIR, LLC<br><br>Debtor. | Case No. 04268<br>Chapter 11<br>Hon. Scott W. Dales |

**DECLARATION OF NAJEEB AHMED KHAN**

1. I am a debtor and also the 100% owner of the other debtors in these cases (individually, a "Debtor" and collectively the "Debtors"). I have read, and I am familiar with the assets described in, the *Emergency Motion for: (i) Entry of an Interim and Final. Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief* ("Motion for Use of Cash").

2. The factual allegations contained in the Motion for Use of Cash are true and accurate.

3. I execute this Declaration in support of the Motion for Use of Cash and further verify the following information regarding same.

4. The Debtors have an immediate need to use cash collateral for necessary expenses as set forth in its Motion for Use of Cash.

5. The Debtors are myself and certain entities that I am 100% owner of.

6. I and the other Debtors own, among other things, accounts and various assets of high value, including collector automobiles and aircraft and boats.

7. I require the use of cash to pay my personal living expenses and certain expenses related to the preservation and maintenance of my and the other Debtors' assets.

8. Upon information and belief, KeyBank asserts an interest in the cash collateral of the Debtors, arising from various pledges and other guaranties. I anticipate those interests will be the subject of an adversary proceeding to avoid those interests.

9. I have remained in control of the Debtors' assets since July 2019, when a budget was entered into in *Key Bank, N.A. v. Najeeb Khan, et al.*, Case No. 19-01566, U.S. District Court, N.D. OH. This budget was previously updated and approved monthly by KeyBank.

10.    The Debtors have also retained Delta Management Resources, LLC ("Delta"), led by William Beck ("Mr. Beck"), to act as the financial advisor to the Debtors to provide oversight, supervision and reporting to the Bankruptcy Court and creditors of the estate with respect to the use of Debtors funds during the pendency of the bankruptcy cases.  Delta will oversee all expenditures, and will prepare and provide regular reporting of the expenditures to the Court, creditors, and parties in interest.

11.    The following is a partial summary of the Debtors' significant personal property assets that are the subject of this Motion. The values listed below are estimates provided by Debtors, based upon their knowledge of the assets as of October 7, 2019:

    a.    Bank Accounts (by Debtor):

        i.    NJ Realty, LLC – 1st Source - #4107 - $23,109

        ii.    GN Investments, LLC – 1st Source - #7998 - $40,638

        iii.    Najeeb Khan –

            1.    1st Source - #8068 - $886,087.15

            2.    1st Source - #6709 - $14,618.20 (joint with wife)

            3.    Lake City Bank – $145,200.45

            4.    HSA Account - $73,471.43

            5.    KeyBank Trust Account #1941 - $1,165,000.00

        iv.    Khan Aviation – 1st Source #0291 - $2,489.00

        v.    KRW Investments - 1st Source #2340 - $3,357.00

    b.    Notes Receivable (by Debtor)

        i.    GN Investments - $1,763,701

    c.    Other Personal Property (by Debtor):

      i.      Vehicles (by Debtor)

          1.      NAK Holdings, LLC - $5,625,000

          2.      Najeeb Khan - $30,821,750 (Car Collection)

      ii.     Aircraft and Aviation Equipment and hangars (by Debtor)

          1.      Sarah Air, LLC - $885,000

          2.      Khan Aviation - $2,065,000 (net of lien)

      iii.    Bonds, Mutual Funds, Stocks (by Debtor)

          1.      GN Investments, LLC - $437,500

          2.      Najeeb Khan - $3,063,000

  d.     Deposits (by Debtor)

      i.     NAK Holdings, LLC - $89,372

12.    I and the other Debtors have an immediate need for use of cash collateral to meet necessary, ordinary course business expenditures and, most importantly, preserve the value of these estates for the benefit of all creditors.

13.    I have, with the assistance of its financial advisor Mr. Beck, prepared budgets for each Debtor (the "Budgets") attached as **Exhibit C-1** to **Exhibit C-4** to the Motion, which contain an anticipated budget of necessary expenditures going forward that are necessary to be paid to avoid irreparable harm to each of the bankruptcy estates for the next thirty (30) days.

14.    I anticipate that some of the costs are variable and, as such, anticipates that some of the expenses will be slightly lower than that presented in the Budgets and some of their expenses may be slightly higher.

I declare under penalty of perjury that the foregoing is true and correct.

_____
NAJEEB AHMED KHAN

Subscribed and sworn to before me this
14 day of October, 2019.

_____
Rebecca A Yankle , Notary Public
Kent County, Michigan
My Commission Expires: 3/15/2025
Acting in the County of Kent

## EXHIBIT C - BUDGETS

Exhibit C-1 Budget for Najeeb Ahmed Khan

Exhibit C-2 Budget for Khan Aviation, Inc.

Exhibit C-3 Budget for KRW Investments, Inc.

Exhibit C-4 Budget for NJ Realty, LLC

## NAJEEB KHAN-FIVE (5) WEEK CASH FLOW FORECAST

| | Item Description | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Receipts** | | | | | | | | |
| 2 | Interest/Dividends | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 3 | Sale of Assets | | | - | - | - | - | - | - |
| 4 | Other | | | 828 | - | - | - | 828 | 1,656 |
| 5 | TOTAL | | | $ 828 | $ - | $ - | $ - | $ 828 | $ 1,656 |
| 6 | **Disbursements-Personal Support & Maintenance** | | | | | | | | |
| 7 | **Household Utilities** | | | | | | | | |
| 8 | Power/Electric | Monthly | Estimate | $ - | $ 425 | $ - | $ - | $ - | $ 425 |
| 9 | Gas | Monthly | Estimate | - | | - | - | - | |
| 10 | Water/Sewer | Quarterly | Estimate | - | | - | - | - | |
| 11 | Cable/Internet/Communications | Monthly | Estimate | 350 | - | - | - | 350 | 700 |
| 12 | Maintenance & Repairs | As Incurred | Estimate | 500 | 500 | 500 | 500 | 500 | 2,500 |
| 13 | Insurance | As Incurred | Actual | - | - | - | - | - | |
| 14 | Property tax | As Incurred | Actual | - | - | - | | - | |
| 15 | Other | As Incurred | Estimate | 150 | - | 150 | | 150 | 450 |
| 16 | Sub-Total | | | $ 1,000 | $ 925 | $ 650 | $ 500 | $ 1,000 | $ 4,075 |
| 17 | | | | | | | | | |
| 18 | **Living Expenses** | | | | | | | | |
| 19 | Groceries | Weekly | Average | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 1,125 |
| 20 | General/Discretionary | Weekly | Average | 300 | 300 | 300 | 300 | 300 | 1,500 |
| 21 | Insurance-Medicare | Monthly | Estimate | 250 | - | - | - | 250 | 500 |
| 22 | Elder Care | Monthly | Actual | 2,100 | - | - | - | 2,100 | 4,200 |
| 23 | Medical Co-Pay/Drug | As Incurred | Average | 350 | 350 | 350 | 350 | 350 | 1,750 |
| 24 | Other | As Incurred | Estimate | 150 | 150 | 150 | 150 | 150 | 750 |
| 25 | Sub-Total | | | $ 3,375 | $ 1,025 | $ 1,025 | $ 1,025 | $ 3,375 | $ 9,825 |
| 26 | | | | | | | | | |
| 27 | **Automotive (Personal)** | | | | | | | | |
| 28 | Fuel | Weekly | Estimate | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 750 |
| 29 | Maintenance & Repairs | As Incurred | Estimate | 100 | 100 | 100 | 100 | 100 | 500 |
| 30 | Insurance | As Incurred | Actual | - | - | - | - | - | |
| 31 | Sub-Total | | | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 1,250 |
| 32 | | | | | | | | | |
| 33 | **Professional Fees** | | | | | | | | |
| 34 | Legal | As Approved | Estimate | $ - | $ - | $ - | $ - | $ - | $ - |
| 35 | Accounting/Tax | As Approved | Estimate | - | - | - | - | - | |
| 36 | Financial Advisor | As Approved | Estimate | - | - | - | - | - | |
| 37 | Other | As Incurred | Estimate | - | - | - | - | - | |
| 38 | Sub-Total | | | $ - | $ - | $ - | $ - | $ - | |
| 39 | | | | | | | | | |
| 40 | CATEGORY SUB-TOTAL | | | $ 4,625 | $ 2,200 | $ 1,925 | $ 1,775 | $ 4,625 | $ 15,150 |
| 41 | | | | | | | | | |

EXHIBIT C-1

| | Item Description | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 42 | **Disbursements-Asset Preservation, Protection and Disposition** | | | | | | | | |
| 43 | | | | | | | | | |
| 44 | **Other Residences** | | | | | | | | |
| 45 | Power/Electric-AZ & FL | Monthly | Estimate | $ 600 | $ - | $ - | $ - | $ 600 | $ 1,200 |
| 46 | Gas-AZ & FL | Monthly | Estimate | 200 | - | - | - | 200 | 400 |
| 47 | Water/Sewer-AZ & FL | Monthly | Estimate | - | 800 | - | - | - | 800 |
| 48 | Cable/Internet/Communications-FL | As Incurred | Estimate | - | 225 | - | - | - | 225 |
| 49 | Garbage-Consolidated | Monthly | Actual | 382 | - | - | - | 382 | 764 |
| 50 | Maintenance & Repairs | As Incurred | Estimate | - | - | - | - | 750 | 750 |
| 51 | Insurance | As Incurred | Actual | - | - | - | - | - | - |
| 52 | Property Tax-Arizona | As Incurred | Actual | - | - | - | - | - | - |
| 53 | Property Tax-Florida | As Incurred | Actual | - | - | - | 27,000 | - | 27,000 |
| 54 | HOA Fees-Florida | Quarterly | Actual | 7,146 | - | - | - | - | 7,146 |
| 55 | HOA Fees-Arizona | Monthly | Actual | | 1,366 | - | - | - | 1,366 |
| 56 | Other | As Incurred | Estimate | 250 | 250 | 250 | 250 | 250 | 1,250 |
| 57 | Sub-Total | | | $ 8,578 | $ 2,641 | $ 250 | $ 27,250 | $ 2,182 | $ 40,901 |
| 58 | | | | | | | | | |
| 59 | **Auto (Investment)** | | | | | | | | |
| 60 | Storage | As Required | Actual | $ - | $ - | $ - | $ - | $ - | $ - |
| 61 | Maintenance | Average | Estimate | 350 | 350 | 350 | 350 | 350 | 1,750 |
| 62 | Insurance | TBD | Actual | - | - | - | 140,000 | - | 140,000 |
| 63 | Other | TBD | Estimate | - | - | - | - | - | - |
| 64 | Sub-Total | | | $ 350 | $ 350 | $ 350 | $ 140,350 | $ 350 | $ 141,750 |
| 65 | | | | | | | | | |
| 66 | **Marine/Aircraft** | | | | | | | | |
| 67 | Storage | As Incurred | Actual | $ 560 | $ 10,000 | $ 2,500 | $ - | $ 560 | $ 13,620 |
| 68 | Maintenance-Marine | As Incurred | Estimate | - | - | | - | - | - |
| 69 | Maintenance-Sarah Air | As Incurred | Estimate | - | | - | - | - | - |
| 70 | Maintenance-NAK Holding | As Incurred | Estimate | - | - | | - | - | - |
| 71 | Loan to Khan Aviation | As Incurred | Actual | 28,000 | - | 1,000 | - | 50,000 | 79,000 |
| 72 | Loan to KRW Investments | As Incurred | Actual | 18,000 | 2,000 | - | 20,000 | 1,000 | 41,000 |
| 73 | Loan to NJ Realty | As Incurred | Actual | - | - | - | - | - | - |
| 74 | Insurance | Annual | Actual | - | - | - | - | - | - |
| 75 | Other | As Incurred | Estimate | - | - | - | - | - | - |
| 76 | Sub-Total | | | $ 46,560 | $ 12,000 | $ 3,500 | $ 20,000 | $ 51,560 | $ 133,620 |
| 77 | | | | | | | | | |
| 78 | **CATEGORY SUB-TOTAL** | | | $ 55,488 | $ 14,991 | $ 4,100 | $ 187,600 | $ 54,092 | $ 316,271 |
| 79 | | | | | | | | | |
| 80 | **TOTAL DISBURSEMENTS** | | | $ 60,113 | $ 17,191 | $ 6,025 | $ 189,375 | $ 58,717 | $ 331,421 |
| 81 | | | | | | | | | |
| 82 | **NET CASH FLOW** | | | $ (59,285) | $ (17,191) | $ (6,025) | $ (189,375) | $ (57,889) | $ (329,765) |
| 83 | | | | | | | | | |

| | Item Description | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 84 | **Bank/Securities Account Balances-Beginning** | | | | | | | | |
| 85 | **Non-Qualified Accounts** | | | | | | | | |
| 86 | 1st Source Bank-Lead Account-8068 (7/9 Stmt) | | | $ 886,087 | $ 826,802 | $ 809,611 | $ 803,586 | $ 614,211 | |
| 87 | 1st Source Bank-Lead Account-6709 (7/24 Stmt) | | | 14,618 | 14,618 | 14,618 | 14,618 | 14,618 | |
| 88 | Lake City Bank | | | 145,200 | 145,200 | 145,200 | 145,200 | 145,200 | |
| 89 | Chase Bank | | | 979,128 | 979,128 | 979,128 | 979,128 | 979,128 | |
| 90 | RPCA Financial Ventures | | | 109,029 | 109,029 | 109,029 | 109,029 | 109,029 | |
| 91 | E*Trade | | | 740,339 | 740,339 | 740,339 | 740,339 | 740,339 | |
| 92 | Wells Fargo Advisors | | | 1,182,130 | 1,182,130 | 1,182,130 | 1,182,130 | 1,182,130 | |
| 93 | Total | | | $ 4,056,532 | $ 3,997,247 | $ 3,980,056 | $ 3,974,031 | $ 3,784,656 | |
| 94 | | | | | | | | | |
| 95 | **Qualified Accounts** | | | | | | | | |
| 96 | Wells Fargo (IRA) | | | $ 224,587 | $ 224,587 | $ 224,587 | $ 224,587 | $ 224,587 | |
| 97 | John Hancock (401K) | | | 543,491 | 543,491 | 543,491 | 543,491 | 543,491 | |
| 98 | HSA Bank | | | 73,471 | 73,471 | 73,471 | 73,471 | 73,471 | |
| 99 | Total | | | $ 841,550 | $ 841,550 | $ 841,550 | $ 841,550 | $ 841,550 | |
| 100 | | | | | | | | | |
| 101 | **Bank/Securities Account Balances-Ending** | | | | | | | | |
| 102 | **Non-Qualified Accounts** | | | | | | | | |
| 103 | 1st Source Bank-Lead Account-8068 | | | $ 826,802 | $ 809,611 | $ 803,586 | $ 614,211 | $ 556,322 | |
| 104 | 1st Source Bank-Lead Account-6709 | | | 14,618 | 14,618 | 14,618 | 14,618 | 14,618 | |
| 105 | Lake City Bank | | | 145,200 | 145,200 | 145,200 | 145,200 | 145,200 | |
| 106 | Chase Bank | | | 979,128 | 979,128 | 979,128 | 979,128 | 979,128 | |
| 107 | RPCA Financial Ventures | | | 109,029 | 109,029 | 109,029 | 109,029 | 109,029 | |
| 108 | E*Trade | | | 740,339 | 740,339 | 740,339 | 740,339 | 740,339 | |
| 109 | Wells Fargo Advisors | | | 1,182,130 | 1,182,130 | 1,182,130 | 1,182,130 | 1,182,130 | |
| 110 | Total | | | $ 3,997,247 | $ 3,980,056 | $ 3,974,031 | $ 3,784,656 | $ 3,726,767 | |
| 111 | | | | | | | | | |
| 112 | **Qualified Accounts** | | | | | | | | |
| 113 | Wells Fargo (IRA) | | | $ 224,587 | $ 224,587 | $ 224,587 | $ 224,587 | $ 224,587 | |
| 114 | John Hancock (401K) | | | 543,491 | 543,491 | 543,491 | 543,491 | 543,491 | |
| 115 | HSA Bank | | | 73,471 | 73,471 | 73,471 | 73,471 | 73,471 | |
| 116 | Total | | | $ 841,550 | $ 841,550 | $ 841,550 | $ 841,550 | $ 841,550 | |
| 117 | | | | | | | | | |
| 118 | **Assumptions** | | | | | | | | |
| 119 | 1] No disposition of assets, related cash receipts or associated expenses have been included within the forecast horizon. | | | | | | | | |
| 120 | 3) Forecast Model Reflects All Cash Activity in Account 8068. | | | | | | | | |
| 121 | 4) Line 4 is debtor's social security benefit. | | | | | | | | |

## KHAN AVIATION-FIVE (5) WEEK CASH FLOW FORECAST

| # | Item Description | Account | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Receipts** | | | | | | | | | |
| 2 | Interest/Dividends | | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 3 | Sale of Assets | | | | - | - | - | - | - | |
| 4 | Loan Proceeds | | | | 28,000 | - | 1,000 | - | 50,000 | 79,000 |
| 5 | Other | | | | - | - | - | - | - | |
| 6 | TOTAL | | | | $ 28,000 | $ - | $ 1,000 | $ - | $ 50,000 | $ 79,000 |
| 7 | **Disbursements-Asset Preservation, Protection and Disposition** | | | | | | | | | |
| 8 | **Khan Aviation** | | | | | | | | | |
| 9 | Loan Payment-PNC | | Monthly | Actual | $ 27,000 | $ - | $ - | $ - | $ 27,000 | $ 54,000 |
| 10 | Power/Electric | | Monthly | Estimate | 1,800 | - | - | - | 1,800 | 3,600 |
| 11 | Gas | | Monthly | Estimate | - | - | - | - | - | |
| 12 | Water/Sewer | | Monthly | Estimate | - | - | - | - | - | |
| 13 | Cable/Internet/Communications | | Monthly | Estimate | 450 | - | - | - | 450 | 900 |
| 14 | Maint. & Repair-Facility | | As Required | Estimate | - | - | - | - | 20,000 | 20,000 |
| 15 | Maint. & Repair-Aircraft | | As Required | Estimate | - | - | - | - | - | |
| 16 | Insurance | | Monthly | Estimate | - | - | - | - | - | |
| 17 | Property tax | | TBD | Estimate | - | - | - | - | - | |
| 18 | Security | | Monthly | Estimate | 200 | - | - | - | 200 | 400 |
| 19 | Legal | | As Approved | Estimate | - | - | - | - | - | |
| 20 | Accounting/Tax | | As Approved | Estimate | - | - | - | - | - | |
| 21 | Financial Advisor | | As Approved | Estimate | - | - | - | - | - | |
| 22 | Other | | As Incurred | Estimate | 500 | 500 | 500 | 500 | 500 | 2,500 |
| 23 | TOTAL | | | | $ 29,950 | $ 500 | $ 500 | $ 500 | $ 49,950 | $ 81,400 |
| 24 | | | | | | | | | | |
| 25 | NET CASH FLOW | | | | $ (1,950) | $ (500) | $ 500 | $ (500) | $ 50 | $ (2,400) |
| 26 | | | | | | | | | | |
| 27 | **Bank Account Balances** | | | | | | | | | |
| 28 | Beginning Balance -1st Source Bank-Account-0291 | | | | $ 2,767 | $ 817 | $ 317 | $ 817 | $ 317 | $ - |
| 29 | Add: Cash receipts | | | | 28,000 | - | 1,000 | - | 50,000 | |
| 30 | Less: Disbursements | | | | 29,950 | 500 | 500 | 500 | 49,950 | |
| 31 | Ending Balance -1st Source Bank-Account-0291 | | | | $ 817 | $ 317 | $ 817 | $ 317 | $ 367 | |
| 32 | | | | | | | | | | |
| 33 | Loan Balance | | | | $ 28,000 | $ 28,000 | $ 29,000 | $ 28,000 | $ 79,000 | |
| 34 | | | | | | | | | | |
| 35 | **Assumptions** | | | | | | | | | |
| 36 | 1] No disposition of assets, related cash receipts or associated expenses have been included within the forecast horizon | | | | | | | | | |
| 37 | 2] Loan Balance reflects protective advance from Najeeb Khan | | | | | | | | | |

EXHIBIT C-2

## KRW INVESTEMENTS-FIVE (5) WEEK CASH FLOW FORECAST

| # | Item Description | Account | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Receipts** | | | | | | | | | |
| 2 | Interest/Dividends | | | | $      - | $      - | $      - | $      - | $      - | $      - |
| 3 | Sale of Assets | | | | - | - | - | - | - | |
| 4 | Loan Proceeds | | | | 18,000 | 2,000 | - | 20,000 | 1,000 | 41,000 |
| 5 | Other | | | | - | - | - | - | | |
| 6 | TOTAL | | | | $ 18,000 | $ 2,000 | $      - | $ 20,000 | $ 1,000 | $ 41,000 |
| 7 | | | | | | | | | | |
| 8 | **Disbursements-Asset Preservation, Protection and Disposition** | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | Power/Electric | | Monthly | Estimate | $   300 | $      - | $      - | $      - | $   300 | $   600 |
| 11 | Gas | | Monthly | Estimate | - | - | - | - | - | |
| 12 | Water/Sewer | | Monthly | Estimate | - | - | - | - | - | |
| 13 | Cable/Internet/Communications | | Monthly | Estimate | 73 | - | - | - | 73 | 145 |
| 14 | Mortgage Payment-Lake City Bank | | Monthly | Actual | 20,000 | - | - | 20,000 | - | 40,000 |
| 15 | Maint. & Repair-Facility | | As Incurred | Estimate | - | - | - | - | - | |
| 16 | Insurance | | As Incurred | Actual | | 2,500 | - | - | - | 2,500 |
| 17 | Property tax | | As Incurred | Actual | - | - | - | - | - | |
| 18 | Security | | Monthly | Estimate | 200 | - | - | - | 200 | 400 |
| 19 | Legal | | As Approved | Estimate | - | - | - | - | - | |
| 20 | Accounting/Tax | | As Approved | Estimate | - | - | - | - | - | |
| 21 | Financial Advisor | | As Approved | Estimate | - | - | - | - | - | |
| 22 | Other | | As Incurred | Estimate | 50 | 50 | 50 | 50 | 50 | 250 |
| 23 | TOTAL | | | | $ 20,623 | $ 2,550 | $     50 | $ 20,050 | $   623 | $ 43,895 |
| 24 | | | | | | | | | | |
| 25 | NET CASH FLOW | | | | $ (2,623) | $  (550) | $    (50) | $    (50) | $   378 | $ (2,895) |
| 26 | | | | | | | | | | |
| 27 | **Bank Account Balances** | | | | | | | | | |
| 28 | Beginning Balance -1st Source Bank-Account | | | | $ 3,358 | $   735 | $   185 | $   135 | $    85 | $      - |
| 29 | Add: Cash receipts | | | | 18,000 | 2,000 | - | 20,000 | 1,000 | |
| 30 | Less: Disbursements | | | | 20,623 | 2,550 | 50 | 20,050 | 623 | |
| 31 | Ending Balance -1st Source Bank-Account | | | | $   735 | $   185 | $   135 | $    85 | $   463 | |
| 32 | | | | | | | 0 | | | |
| 33 | **Loan Balance** | | | | $ 18,000 | $ 20,000 | $ 20,000 | $ 40,000 | $ 41,000 | |
| 34 | | | | | | | | | | |
| 35 | **Assumptions** | | | | | | | | | |
| 36 | **1] No disposition of assets, related cash receipts or associated expenses have been included within the forecast horizon** | | | | | | | | | |
| 37 | **2] Loan Balance reflects protective advance from Najeeb Khan** | | | | | | | | | |
| 38 | **3] For presentation purposes, the loan from the Najeeb Khan is reflected at the beginning of the forecast horizon** | | | | | | | | | |

# EXHIBIT C-3

## NJ REALTY-FIVE (5) WEEK CASH FLOW FORECAST

| | Item Description | Account | Frequency | Forecast Method | Period 1 10/7/2019 | Period 2 10/14/2019 | Period 3 10/21/2019 | Period 4 10/28/2019 | Period 5 11/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Receipts** | | | | | | | | | |
| 2 | Interest/Dividends | | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 3 | Sale of Assets | | | | - | - | - | - | - | - |
| 4 | Loan Proceeds | | | | - | - | - | - | - | - |
| 5 | Other | | | | - | - | - | - | - | - |
| 6 | TOTAL | | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 7 | | | | | | | | | | |
| 8 | **Disbursements-Asset Preservation, Protection and Disposition** | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | Power/Electric | | Monthly | Estimate | $ - | $ - | $ - | $ - | $ 150 | $ 150 |
| 11 | Gas | | Monthly | Estimate | - | - | - | - | - | - |
| 12 | Water/Sewer | | Monthly | Estimate | - | - | - | - | - | - |
| 13 | Cable/Internet/Communications | | Monthly | Estimate | - | - | - | - | - | - |
| 14 | Maint. & Repair-Facility | | As Incurred | Estimate | - | 500 | - | - | 2,100 | 2,100 |
| 15 | Insurance | | As Incurred | Actual | - | - | - | - | 6,970 | 6,970 |
| 16 | Property tax | | As Incurred | Actual | - | - | - | - | 6,970 | 6,970 |
| 17 | Security | | Monthly | Estimate | - | - | - | - | 125 | 125 |
| 18 | Legal | | As Approved | Estimate | - | - | - | - | - | - |
| 19 | Accounting/Tax | | As Approved | Estimate | - | - | - | - | - | - |
| 20 | Financial Advisor | | As Approved | Estimate | - | - | - | - | - | - |
| 21 | Other | | As Incurred | Estimate | 100 | - | 100 | - | 100 | 300 |
| 22 | TOTAL | | | | $ 100 | $ 500 | $ 100 | $ - | $ 9,445 | $ 10,145 |
| 23 | | | | | | | | | | |
| 24 | NET CASH FLOW | | | | $ (100) | $ (500) | $ (100) | $ - | $ (9,445) | $ (10,145) |
| 25 | | | | | | | | | | |
| 26 | **Bank Account Balances** | | | | | | | | | |
| 27 | Beginning Balance -1st Source Bank-Account | | | | $ 23,110 | $ 23,010 | $ 22,510 | $ 22,410 | $ 22,410 | $ - |
| 28 | Add: Cash receipts | | | | - | - | - | - | - | |
| 29 | Less: Disbursements | | | | 100 | 500 | 100 | - | 9,445 | |
| 30 | Ending Balance -1st Source Bank-Account | | | | $ 23,010 | $ 22,510 | $ 22,410 | $ 22,410 | $ 12,965 | |
| 31 | | | | | | | | | | |
| 32 | Loan Balance | | | | $ - | $ - | $ - | $ - | $ - | |
| 33 | | | | | | | | | | |
| 34 | **Assumptions** | | | | | | | | | |
| 35 | 1] No disposition of assets, related cash receipts or associated expenses have been included within the forecast horizon. | | | | | | | | | |

EXHIBIT C-4