# EXHIBIT B

| | |
|---|---|
| | **REALTOR Office Use Only** |
| | **MLS No.**   19048338 |



# BUY AND SELL AGREEMENT

For reference purposes only, the Offer Date is ___10/16/2019___.
Selling REALTOR®/Broker is acting as a (**Check One**) ☐ Seller's Agent/ ☐ Buyer's Agent/ ☑ Dual ☐ Transaction Coordinator.

1.  **1. Parties.** To: _____Nancy L. Khan_____
2.  hereinafter called the Seller; the undersigned, hereinafter called the Buyer, hereby offers to buy the property at:
3.  _____23411 Lakeview Drive_____
    House Number      Street Name
4.  located in _____Edwardsburg_____, _____Cass County_____ County
5.  Michigan and legally described as: ___0502 85-15W E 35ft Lot 26 & Lots 27 & 28 BLK 1 Ferrelldale___
6.  _____
7.  _____
8.  and Tax Code(s):_____1409009502300_____
9.  Subject to any building and use restrictions, zoning ordinances and easements of public record for the sum of
10. $_____750,000.00_____; _____seven hundred fifty thousand_____ Dollars.

11. **2. Fixtures & Improvements:** All improvements and appurtenances are included in the purchase price, if now in
12. or on the Property, including but not limited to the following: all buildings; landscaping; lighting fixtures and their
13. shades and bulbs; ceiling fans; hardware for draperies and curtains; window shades and blinds; built-in kitchen
14. appliances; drop-in ranges; wall to wall carpeting, if attached; all attached mirrors; all attached TV mounting
15. brackets; all attached shelving; attached work benches; stationary laundry tubs; water softener; water heater (unless
16. rented); incinerator; sump pump; water pump and pressure tank; heating and air conditioning equipment (window
17. units excluded); attached humidifiers; heating units, including add-on heating stoves and heating stoves connected
18. by flue pipe; fireplace screens, inserts, and grates; fireplace doors, if attached; liquid heating and cooking fuel
19. tanks if owned by Seller; TV antenna and complete rotor equipment; satellite dish; all support equipment for
20. inground pools; screens and storm windows and doors; awnings; installed basketball backboard, pole and goal;
21. mailbox; flagpole(s); fencing, invisible inground fencing and all related equipment, detached storage buildings;
22. underground sprinkling, including the pump; installed outdoor grills; all plantings and bulbs; garage door opener
23. and control(s); and any and all items and fixtures permanently affixed to the property; **and also includes:**
24. _____Refrigerator, Stove, Dishwasher Microwave, Trash Compacter,_____
25. _____
26. _____(address growing crops).

27. **3. The Terms of Purchase** shall be indicated by an "X" below.
28. ☐ CASH       The full purchase price upon execution and delivery of a warranty deed, not contingent upon
29.              Buyer's ability to obtain said funds. Buyer to provide to Seller's satisfaction written proof of
30.              available funds within _____ business days after the Effective Date or Seller may terminate this
31.              Agreement by written notice of termination.

32. ☑ NEW        The full purchase price upon execution and delivery of a warranty deed contingent upon Buyer's
33. MORTGAGE    ability to obtain a _____%; _____TBD_____ mortgage which Buyer
34.              agrees to apply for within _____ business days after the Effective Date and accept promptly if
35.              tendered. In the event that the Buyer does not apply for financing within the time provided above,
36.              the Seller may terminate this Agreement by written notice of termination, which is delivered to the
37.              Buyer prior to the time the Buyer makes application for financing. Buyer hereby authorizes their
38.              lender to disclose the status of the loan application and loan approval to Listing and Selling
39.              REALTORS®/Brokers and release copy of the Closing Disclosure, when issued, to Listing and
40.              Selling REALTORS®/ Brokers.

41. ☐ LAND       $_____ upon execution and delivery of Land Contract/Purchase Money Mortgage
42. CONTRACT    wherein the balance of the purchase price shall be payable in equal monthly installments of
43. **or**       $_____ or more per month.
44. ☐            The first installment shall be due and payable _____ days after date of closing. The
45. PURCHASE    monthly installment will include interest at _____% per annum. Interest shall commence on
46. MONEY       date of closing. The entire balance shall be payable within _____ months. In addition,
47. MORTGAGE    Buyer agrees to pay all taxes and insurance ☐ separately when due **or** ☐ monthly in addition to the
48.              above monthly payment.

49. ☐ OTHER FINANCING as set forth on the attached Financing Addendum.

| | | | |
|---|---|---|---|
| JB 10/16/19 9:11 PM EDT dotloop verified | MG 10/16/19 7:31 PM EDT dotloop verified | Buyer's Initials | NLK 10/17/19 7:04 AM EDT dotloop verified | | Seller's Initials |

Copyright June 2018 by The Southwestern Michigan Association of REALTORS, Inc.
Use of this form by non-members is strictly prohibited.                                    Page 1 of 7

# BUY AND SELL AGREEMENT

50. **4. Closing/Possession.** The sale shall be closed on _____11/15/2019_____ or before, if mutually
51. agreed by the parties. Closing of this sale shall be an insured closing through the title company that provides the
52. mortgage policy of title insurance, or in the case of a cash sale, the owners policy of title insurance. The closing
53. fee shall be paid by the Buyer. Buyer shall have complete possession at ___time___ (☐a.m., ☐p.m.,
54. ☐noon)_____of_____closing. After possession date, if the Seller remains, the Seller agrees to pay
55. the Buyer at the rate of $___150.00___ per day. Said payment shall not be construed as rent, but as
56. liquidated damages. Buyer may proceed with other legal remedies as well.

57. **5. Title Insurance.** The Seller shall furnish an extended Owner's Policy of Title Insurance, if available, in the
58. amount of purchase price. It is recommended that Buyer retain an attorney to render an opinion on marketability of
59. title. The Seller shall deliver the title insurance commitment to Buyer within ten (10) business days of the Effective
60. Date of this Agreement.

61. **6. Home Sale Contingency.** The Buyer's obligation to consummate this transaction (check one):
62. ☑Is not contingent upon the sale or closing of any other property by Buyer.
63. ☐Is contingent upon the closing of a pending sale of Buyer's property located at _____
64. _____ on or before _____. A copy of the Buyer's
65. agreement to sell that property is being delivered to the Seller along with this offer.
66. ☐Is contingent upon the execution of a binding agreement and the closing of a sale of Buyer's property located at
67. _____ on or before
68. _____. Seller will have the right to continue to market Seller's property until Buyer enters into a
69. binding agreement to sell Buyer's property and delivers a copy thereof to Seller. Said agreement can not be subject
70. to the sale of another property, but can be subject to a pending sale. During such marketing period, Seller may
71. enter into a binding agreement with another Buyer on such price and terms as the Seller deems appropriate, and in
72. such event, this Agreement will automatically terminate and Buyer's earnest money deposit will be promptly
73. refunded.
74. ☐Is contingent on the terms of the attached Contingency Clause Addendum.

75. **7. Wood Destroying Insect Inspection.** The Seller agrees to have **all structures** on the property **except**
76. _____, inspected for wood destroying insects and pay for the inspection.
77. Seller shall provide the written report to the Buyer within __10__ business days of the Effective Date of this
78. Agreement. If evidence of infestation is found and if treatment is recommended, Seller agrees to pay the cost of
79. treatment by a licensed exterminator. Termite treatments shall include a one year warranty. Any and all warranty
80. renewals shall be at the Buyer's expense.

81. **8. Inspections/Permits.** Buyer acknowledges that the Selling REALTOR®/Broker has strongly recommended that
82. Buyer obtain all inspections necessary to properly determine the condition of this property.

83. ☐No additional inspection requested, or ☑This Agreement is contingent upon inspection reports or permits, the
84. result of which are to be satisfactory to the Buyer on the following items: (check applicable boxes)
85. ☐Home Inspection   ☐Well   ☐Water Quality   ☐Septic System   ☐Septic Permit
86. ☐Percolation Test/Soil Analysis   ☐DEQ Permits   ☐Water/Well Permit   ☐Easements   ☐Radon
87. ☐Zoning Determination   ☐Phase I Environmental Audit   ☐Other items for inspection/permit: Inspections are to
88. be determined.
89. The inspections are solely for the buyers knowledge. The home is being sold in its "as is" condition. The seller will make no repairs.
90. _____
91. The above inspections shall be ordered by the Buyer, at the Buyer's expense. The Buyer must, by a written notice,
92. either remove the inspection/permit contingencies or terminate this Agreement within_____ business days of
93. the Effective Date of this Agreement.

94. In the event the Buyer neither removes the contingencies nor terminates this Agreement in the time provided, the
95. Buyer shall be deemed to have waived the contingencies and proceed to close this transaction. Any request by
96. Buyer to modify this Agreement based on the results of an inspection(s) shall terminate this Agreement by the
97. deadline indicated on line 92, unless: 1) the request is agreed to by Seller, in writing, by said date or 2) the Buyer
98. proceeds to remove the inspection contingency, in writing, by said date. If requested by the Seller, the Buyer shall
99. furnish copies of any written reports, permits, or permit denials to the Seller.

100. If the Buyer or Seller requests either REALTOR®/Broker, or its agents, subagents, or the Seller to recommend
101. inspectors, service providers, and/or other professionals, the Buyer and Seller agree that the REALTOR®/Broker,
102. or its agents, subagents, or the Seller shall not be liable for errors or omissions made by said inspectors, service
103. providers, and/or other professionals and that neither REALTOR®/Broker, or its agents, subagents, or the Seller,

[JB 10/16/19 9:11 PM EDT] [LG 10/16/19 7:31 PM EDT] Buyer's Initials          [NLK 10/17/19 7:04 AM EDT dotloop verified] Seller's Initials

# BUY AND SELL AGREEMENT

104. jointly or severally, shall have any responsibility for the performance of any repairs made pursuant to this
105. Agreement. The Seller grants reasonable access to the property and any buildings thereon to permit the Buyer and
106. Buyer's representatives to conduct the above inspections. Buyer is solely responsible for obtaining such inspection
107. reports and estimates as they deem necessary.

108. **9. Survey.** ☑ No boundary (stake) survey requested; or ☐ Contingent upon a boundary (stake) survey paid for by
109. the ☐ Buyer or ☐ Seller; or ☐ Contingent upon a boundary (stake) survey showing all improvements on the
110. property paid for by the ☐ Buyer or ☐ Seller. The Buyer must, by written notice, either remove the boundary
111. survey contingency or terminate this Agreement within _____ business days of receipt of the boundary survey.
112. In event the Buyer neither removes the contingency nor terminates this Agreement in the time provided, the Buyer
113. shall be deemed to have waived the contingency and proceed to close this transaction.

114. A mortgage report, which shows the location of the major structures on the property, is not a boundary (stake)
115. survey and if required by the lender, will be paid for by the Buyer. Both Buyer and Seller acknowledge the
116. REALTORS®/Brokers recommend a stake survey to determine the true and accurate boundaries of the property.
117. Buyer understands and agrees that the REALTORS®/Brokers do not warrant location of the improvements and
118. easements on the property and the boundaries of the property nor assume any responsibility for the representations
119. made by the Seller of the location of the improvements and easements on the property and the boundaries of the
120. property.

121. **10. Lead-based Paint:** For residential property only (check ANY of the following that apply):
122. ☐ Seller represented that this residential property was built after January 1, 1978 and is exempt from the Federal
123. regulation on lead-based paint disclosure.
124. OR ☑ This property is residential and was or may have been built before 1978 as represented by the Seller. Buyer
125. acknowledges that prior to signing this Buy and Sell Agreement.
126. ☑ Buyer has received and reviewed a copy of the Lead-based Paint Sellers Disclosure Form completed by the
127. Seller on _____10/01/2019_____.
128. ☐ Buyer shall have a __10__ day opportunity after the Effective Date of this Agreement to conduct an
129. ☐ inspection or ☐ risk assessment (check one) of this property for the presence of lead-based paint and/or
130. lead-based paint hazards. (Intact lead-based paint that is in good condition is not necessarily a hazard. See the EPA
131. pamphlet "Protect Your Family From Lead in Your Home" for more information. Federal regulations require up to
132. a 10 day period or mutually agreed upon period of time.) The above risk assessment shall be ordered by and at the
133. Buyer's expense and shall be performed by a certified inspector with a written report showing the results. The
134. Buyer shall by written notice to the Seller, either accept the risk assessment or inspection as satisfactory, or if
135. unsatisfactory, the Buyer has the option to terminate this Agreement within the time period provided above. If the
136. Buyer terminates this Agreement, the Buyer shall provide to Seller a copy of the risk assessment or inspection
137. report. In the event that the Buyer does not accept the results as satisfactory or terminates this Agreement in writing
138. within the time period stated above, the Buyer shall be deemed to have accepted the results of the risk assessment
139. or inspection and shall proceed to close this transaction.
140. OR ☑ Buyer, being fully informed, hereby waives their opportunity to conduct a risk assessment or inspection of
141. the property for the presence of lead-based paint and/or lead-based paint hazards.

142. **11. Property Condition.** Buyer has examined this property and Buyer is satisfied with its present condition, except
143. as may be specified herein. Buyer understands and agrees that Buyer is purchasing the property in an **"AS IS"**
144. condition. Buyer understands and agrees that the REALTORS®/Brokers **do not warrant the condition of the**
145. **property** nor assume any responsibility for the representations made by the Seller pertaining to the condition of the
146. property or its use for any particular purpose.

147. It is further understood that no representations or promises have been made to Buyer by the real estate brokers
148. or salespersons or by the Seller (other than those contained in this Agreement or as otherwise made or given by
149. Seller to Buyer). Buyer has received and reviewed a signed copy of the Sellers Disclosure Statement dated:
150. _____10/01/2019_____.

151. Buyer and Seller both understand that the REALTORS®/Brokers are not environmental experts. Unless expressly
152. contained in a written instrument signed by the REALTOR®/Broker, the REALTOR®/Broker and
153. REALTOR®/Broker's Salespersons have no knowledge of and make no representations regarding the environmental
154. conditions of the property, the existence of underground storage tanks at the property now, or in the past, whether
155. the property is, has been or may be listed as a site of environmental contamination, or whether any such sites are
156. located in the proximity of the property.

157. Buyer and Seller release the REALTOR®/Brokers and REALTOR®/Broker's Salespersons, and their respective
158. agents, employees, attorneys and representatives with respect to all claims arising out of or related to this

| *JB* 10/16/19 | *JMS* 10/16/19 | Buyer's Initials | *NPK* 10/17/19 7:04 AM EDT dotloop verified | | Seller's Initials |

# BUY AND SELL AGREEMENT

159. Agreement, and addendums or Counter-Offers, all claims arising from any purported representations as to the
160. physical and environmental condition of the property covered by this Agreement or the marketability of title, and
161. all claims arising from any special assessments and/or utility bills which have been or may in the future be charged
162. against the property covered by this Agreement, and in addition, agree to indemnify and hold harmless the
163. REALTOR®/Brokers and the REALTOR®/Broker's Salespersons from any and all claims related to those matters.

164. At the time of possession, Seller agrees that the real estate and the improvements thereon, if any, shall be in the
165. same condition as they are now, with the exception of ordinary wear and tear. Between now and the time of
166. possession, Seller, at Seller's expense, shall repair any subsequent damage to the property and shall continue
167. general maintenance of the yard, buildings and mechanical systems. Seller shall not turn off utilities prior to the
168. time of possession.

169. Seller shall remove from the house, basement, attic, buildings and yard all personal property not included in the
170. sale as well as all rubbish and shall deliver the premises in broom swept condition. The Seller understands and
171. agrees that the Buyer reserves the right to do a final walk through prior to the closing to ensure the property's
172. condition is in compliance with the terms of this Agreement.

173. **12. Heating Fuel.** Buyer shall be entitled to all such fuel located or stored upon the property at the time of
174. **possession.** Seller agrees that the existing supply of liquid or gas heating fuel shall be depleted only in the course
175. of normal usage.

176. **13. Seller's Representations.** Except as otherwise disclosed in writing, Seller represents to the best of Seller's
177. knowledge and belief that:
178.     a). There are no existing violations of any laws, statutes, ordinances, regulations, orders or
179.     requirements of any governmental authority affecting the property.
180.     b). There is no pending or threatened litigation, administrative action or claim relating to the
181.     property.
182.     c). The Seller is the owner of title to the property in the condition required for performance
183.     hereunder.
184.     d). Unless expressly disclosed to the Buyer in writing, the Seller represents that this property is not
185.     subject to the terms of a Public Act 116 agreement, or any other governmental, agricultural, or
186.     developmental programs or agreements which will continue with the property.
187.     e). The Seller is the owner of all development rights in the property.

188. **14. Home Warranty.** Buyer and Seller are hereby informed that home protection plans are available for purchase.
189. Such plans may provide additional protection and benefit to the parties.

190. **15. Other Provisions.** ☐ See Addenda  The home is being sold in its "As Is" condition. "The offer is accepted subject only to
191. Bankruptcy Court Approval"
192. 
193. 
194. 
195. 
196. Attachments and Addenda referenced here are part of this Agreement: _____
197. 

198. **16. Earnest Money.** The Buyer shall deposit $ __7000.00__ with __At Home Realty Group__
199. _____ (Escrowee) as earnest money evidencing the Buyer's good faith to be held by Escrowee
200. in trust and to apply to the purchase price. ☐ Buyer has deposited said funds with the submission of this offer, or
201. ☐ Buyer shall deposit funds __N/A__ .
202. If this offer is not accepted, or the title is not marketable, or if the contingencies specified herein cannot be met,
203. said deposit or deposits shall, upon furnishing written proof said contingency cannot be met, be refunded to the
204. Buyer. In the event the Buyer and Seller both claim the earnest money deposit, the earnest money deposit shall
205. remain in Escrowee's trust account until a civil action has determined to whom the deposit must be paid, or until
206. the Buyer and Seller have agreed, in writing, to the disposition of the deposit or the Escrowee commences a civil
207. action to interplead the earnest money deposit with the proper court pursuant to Rule 339.22313(5).

208. In the event Buyer shall fail or refuse to complete the sale on the terms herein set forth, then the Seller shall have
209. one of the following options: 1. Terminate this Agreement and direct the Escrowee to deliver the entire earnest
210. money deposit to the Seller as liquidated damages for the payment of expenses incurred in this transaction, selling
211. commissions and damages for Buyer's breach; or 2. Proceed with any remedy available under the laws of the State
212. of Michigan.

[JB 10/16/19 9:11 PM EDT] [MS 10/16/19 7:31 PM EDT] Buyer's Initials     [NLK 10/17/19 7:04 AM EDT dotloop verified] Seller's Initials

# BUY AND SELL AGREEMENT

213. In the event that the Seller shall fail or refuse to complete the sale on the terms herein set forth, then the Buyer
214. shall have one of the following options: 1. Terminate this Agreement and direct the Escrowee to return the entire
215. earnest money deposit to the Buyer; or 2. Proceed with any remedy available under the laws of the State of
216. Michigan.

217. **17. Special Assessments.** All future installment payments of special assessments of public record shall be assumed
218. by the Buyer.

219. **18. Prorations.** Rents, taxes and the current year's installment payment of any special assessment shall be prorated
220. as of the date of closing this sale, it is assumed that all taxes are based on the calendar year in which they are
221. billed, with the Buyer being responsible for the day of closing. For proration purposes, all tax bills shall be added
222. together, using the last tax bill(s) issued and prorated accordingly, unless there has been a change in the taxable
223. value or special assessments on the property, in which case the proration shall be on that basis. If the Seller has
224. paid taxes in advance, the Seller shall be credited by the Buyer at the time of closing for the taxes paid in advance
225. and prorated from the date of closing to end of the calendar year.

226. If the property does not currently have a principal residence exemption (a NON PRE property) and the Buyer will
227. both close and occupy the property as their principal residence prior to June 1 of the current year, then the school
228. portion of the property tax bill will be prorated based on the property having a PRE. If the property is currently a
229. NON PRE property and the Buyer will both close and occupy the property as their principal residence after June 1
230. and prior to November 1 of the current year, then the **school portion of the winter** property tax bill, if any, will be
231. prorated based on the property having a PRE.

232. **19. Land Division Act. (check one)**
233. ☑ This property is platted and is not being divided.
234. ☐ This property is unplatted and is not a new division under the Land Division Act and the Seller owns no other
235. contiguous, unplatted land unless otherwise disclosed in writing. Seller is transferring to Buyer all available
236. divisions, if any, under Section 108 of the Land Division Act of 1967, but makes no representations as to the
237. number. Buyer has not relied on any information or opinions of the Broker(s), Salesperson(s) or Seller(s) on this
238. matter.
239. ☐ This property is unplatted and is a new division under the Land Division Act and this agreement is subject to the
240. attached Land Division Addendum.

241. **20. Effective Date.** This Agreement is effective on the date of Seller's acceptance of Buyer's offer or Buyer's
242. acceptance of any counteroffer, as the case may be, and this date shall hereafter be referred to as the "Effective
243. Date". Further, any reference to "days" in this Agreement refers to calendar days unless otherwise specified. The
244. first calendar day begins at 12:01 a.m. on the day after the Effective Date. Any reference to "time" refers to local
245. time.

246. **21. Electronic Communications.** The parties agree that the offer, any Counter-Offer, acceptance of any offer or
247. Counter-Offer and any other written notice or communication in connection with this transaction may be delivered
248. or given by sending or transmitting it by electronic means or by fax. **Any such communication shall be deemed**
249. **delivered at the time it is sent or transmitted.** The parties agree that the electronic signatures and initials shall be
250. deemed to be valid and binding upon the parties as if the original signatures or initials were present in the
251. documents in the handwriting of each party. Seller and Buyer agree that all communications can be made or
252. delivered to listing agent on behalf of the Seller at the fax number and/or the email address indicated on lines
253. 295/296 and to the Selling Agent on behalf of the Buyer at the fax number and/or the email address indicated on
254. lines 273/274. Either party shall provide the other with notice of any change of electronic mail addresses.

255. **22. Wire Fraud.** If you receive any electronic communication directing you to transfer funds or provide nonpublic
256. personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER
257. OR TITLE COMPANY, do not respond until you have verified the authenticity by direct communication with
258. Broker or Title Company. **Do not rely on telephone numbers provided on the email.** Such requests may be part
259. of a scheme to steal funds or use your identity.

260. **23. Counterparts.** This Agreement may be signed in any number of counterparts with the same effect as if the
261. signature of each counterpart were upon the same instrument.

262. **24. The parties hereto agree** that this is a legal and binding agreement, consisting of seven (7) pages and the
263. exhibits and addenda specifically referred to herein and constitutes the entire understanding of the parties and
264. there are no other agreements, expressed or implied. **The REALTOR®/Broker recommends that all parties to**
265. **this Agreement retain an attorney to protect their interests in this transaction.**

| *JS* 10/16/19 | *JMS* 10/16/19 | Buyer's Initials | *NLK* 10/17/19 7:04 AM EDT dotloop verified | | Seller's Initials |
|---|---|---|---|---|---|

## BUY AND SELL AGREEMENT

266. **25. Buyer and Seller hereby acknowledge** that they have read this Agreement and have received a completed
267. copy of this Agreement including any of the Exhibits and Addenda referred to herein. All parties agree that time is
268. of the very essence of every provision of this Agreement. **Unless previously withdrawn by the Buyer, the Seller**
269. **must accept this offer in writing prior to** _10/18/2019_ at _9:00_ (☐a.m., ☑p.m., ☐noon)
270. **or this offer shall terminate.**

271. Date: 10/16/2019    Time: _____ (☐A.M., ☐P.M.)    _Jonathan T Slocum_ [dotloop verified 10/16/19 9:11 PM EDT PBKH-Q5FE-PYQZ-MXGB] Buyer Signature
272. By: _Francee Foster_ [dotloop verified 10/16/19 7:19 PM EDT EJPD-B3VQ-1Z9P-NW5J]    5748768570    Jonathan T Slocum _____ Printed
    Selling Agent                                Phone No.
273. For: _At Home Realty Group_    269-663-0100    _Lindsay A Slocum_ [dotloop verified 10/16/19 7:31 PM EDT C3H4-EQWO-KBUZ-T8L6] Buyer Signature
    Selling Office                              Phone No.
274. Selling Agent Fax No.: _574-651-5353_    Lindsay A Slocum _____ Printed
275. Selling Agent Email Address: _francee@franceefoster.com_

Selling Office License #: 6505362180
Selling Agent License #: 6501354583

276. **26. Seller's Acceptance:** As owners and Sellers of the property described herein, the undersigned accepts the
277. Buyer's offer ☑ as written and no further signatures are required; or ☐ except for the following changes in Seller's
278. Counter-Offer below:
279. _____
280. _____
281. _____
282. _____
283. _____
284. _____
285. _____
286. _____
287. and agrees to sell in accordance therewith. **In the event of a Seller's Counter-Offer, unless previously**
288. **withdrawn by the Seller, the Buyer must accept Seller's Counter-Offer in writing prior to**
289. _____ at _____ (☐a.m., ☐p.m., ☐noon) or Seller's Counter-Offer
    Date             Time
290. shall terminate. Seller understands that consummation of the sale or transfer of the property described in
291. this Agreement shall not relieve the Seller of any liability that Seller may have under the mortgage(s) to
292. which the property is subject, unless otherwise agreed to by the lender or required by law or regulation.

293. Date: _10/17/2019_    Time: _____ (☐A.M., ☐P.M.)    _Nancy L Khan_ [dotloop verified 10/17/19 7:04 AM EDT XDE1-PJEV-AREG-MLP6] Seller Signature
294. By: _Francee Foster_ [dotloop verified 10/17/19 10:06 AM EDT 7HYA-K6TM-AE24-APCD]    574-876-8570    Nancy L. Khan _____ Printed
    Listing Agent                                Phone No.
295. For: _At Home Realty Group_    269-663-0100    _____ Seller Signature
    Listing Office                              Phone No.
296. Listing Agent Fax No.: _574-651-5353_    _____ Printed
297. Listing Agent Email Address: _francee@franceefoster.com_

Listing Office License #: 6505362180
Listing Agent License #: 6501354583

## BUY AND SELL AGREEMENT

298. **27. Buyer's Receipt of Acceptance:** ☐Buyer hereby accepts Seller's Counter-Offer in paragraph 26 above either
299. ☐as written; or ☐except for the following changes in Buyer's Counter-Offer below:
300. _____
301. _____
302. _____
303. _____
304. _____
305. _____
306. _____
307. _____
308. _____
309. In the event of a Buyer's Counter-Offer, unless previously withdrawn by the Buyer, the Seller must
310. accept Buyer's Counter-Offer in writing prior to _____ at _____ (☐a.m., ☐p.m.,
                                                                                        Date                                  Time
311. ☐noon) or Buyer's Counter-Offer shall terminate.

312. Date: _____ Time: _____ (☐A.M., ☐P.M.)    [_____] Buyer Signature

313.                                                                                                                                                  [_____] Buyer Signature

314. **28. Seller's Receipt of Acceptance.** ☐Receipt is hereby acknowledged by Seller of the Buyer's acceptance of
315. Seller's Counter-Offer and no further signatures are required; or ☐Seller accepts Buyer's Counter-Offer as written.

316. Date: _____ Time: _____ (☐A.M., ☐P.M.)    [_____] Seller Signature

317.                                                                                                                                                   [_____] Seller Signature



Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.

October 15, 2019                                          Pre-approval Expiration Date: January 11, 2020

**Congratulations Jonathan Thomas Slocum!** We are pleased to inform you that you are conditionally pre-approved for a residential mortgage loan, based on the terms outlined below.

| | |
|---|---|
| Loan Program Type: | NAJAF30 Conventional 30-Year Fixed Rate |
| Purchase Price: | $750,000 |
| Down Payment: | $75,500 |
| Loan Amount: | $674,500 |
| Property Type | Detached - 1 Unit |
| LTV/CLTV/HCLTV: | 89.934% |

This conditional pre-approval is based on Caliber Home Loans, Inc's preliminary review of the financial information you provided regarding your income, assets, cash for down payment and closing cost and credit report and score and is subject to our final underwriting approval.

Based on the information that you have provided, as described above, Caliber has determined that you are eligible and qualified to meet the financial requirement of the loan.

A final underwriting approval is subject to the following conditions:

1. Satisfactory review of the executed sales contract and addendums.
2. A satisfactory residential appraisal report.
3. No material changes to your financial status or credit report prior to closing.
4. Completion and execution of all residential application forms and disclosures.
5. Evidence of satisfactory homeowner's insurance.
6. Satisfactory title insurance policy for the subject property.
7. Full underwriting review, including verification and underwriter review of all income and asset documentation.

Thank you for selecting Caliber Home Loans as your residential lender. If you have any questions about this pre-approval or need any assistance, please feel free to contact me.

*[signature]*

George Norberg (NMLS: 575690)
Phone: 269-598-1441
george.norberg@caliberhomeloans.com

This is not a commitment to lend. Interest rates and points are subject to change at any time without prior notice before a rate lock is executed, and any change in the prevailing interest rates and points could affect this pre-qualification. We reserve the right to revoke this pre-approval at any time if there is a change in your financial condition or credit history which would impair your ability to repay this obligation and/or if any information contained in your application is untrue, incomplete or incorrect. Caliber Home Loans, Inc. (NMLS: 15622) | 1525 S. Belt Line Road, Coppell, TX 75019

## Seller's Disclosure Statement

**Property Address** _____ 23411 Lakeview Drive _____ Edwardsburg _____ MICHIGAN
Street                        City, Village or Township

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitute for any inspections or warranties the Buyer may wish to obtain.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or the Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. **THIS INFORMATION IS A DISCLOSURE ONLY AND IS NOT INTENDED TO BE PART OF ANY CONTRACT BETWEEN BUYER AND SELLER.**

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE A PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/Systems/Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

| | Yes | No | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|---|
| Range/oven | ✓ | | | | Washer | ✓ | | | |
| Dishwasher | ✓ | | | | Dryer | ✓ | | | |
| Refrigerator | ✓ | | | | Lawn sprinkler system | | | ✓ | |
| Hood/fan | ✓ | | | | Water heater | | | | ✓ |
| Disposal | | | | ✓ | Plumbing system | ✓ | | | |
| TV antenna, TV rotor & controls | | | | ✓ | Water softener/conditioner | | | | ✓ |
| Electrical system | ✓ | | | | Well & pump | ✓ | | | |
| Garage door opener & remote control | ✓ | | | | Septic Tank & drain field sewer | | | | ✓ |
| Alarm system | ✓ | | | | Sump pump | | | | ✓ |
| Intercom | | | | ✓ | City water system | | | | ✓ |
| Central vacuum | | | | ✓ | City sewer system | ✓ | | | |
| Attic fan | | | | ✓ | Central air conditioning | | | | ✓ |
| Pool heater, wall liner & equipment | | | | ✓ | Central heating system | ✓ | | | |
| Microwave | | | | ✓ | Wall furnace | | | | ✓ |
| Trash compacter | ✓ | | | | Humidifier | | | | ✓ |
| Ceiling fan | ✓ | | | | Electronic air filter | | | | ✓ |
| Sauna/hot tub | | | | ✓ | Solar heating system | | | | ✓ |
| | | | | | Fireplace & chimney | ✓ | | | |
| | | | | | Wood burning system | | | | ✓ |

Explanation (attach additional sheets if necessary): _lawn sprinkler system is installed but not warrantied_

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**Property conditions, improvements and additional information:**
1. **Basement/Crawlspace:** Has there been evidence of water?     yes ☐   no ✓
   If yes, please explain: _____
2. **Insulation:** Describe, if known: _unknown_
   Urea formaldehyde Foam Insulation (UFFI) is installed?   unknown ✓   yes ☐   no ☐
3. **Roof:** Leaks?   yes ☐   no ✓
   Approximate age if known: _unknown_
4. **Well:** Type of well (depth/diameter, age and repair history, if known): _unknown_
   Has the water been tested?
   If yes, date of last report/results: _____ yes ☐   no ✓
5. **Septic tanks/drain fields:** Condition, if known: _city sewer_
6. **Heating system:** Type/approximate age: _boiler / gas / radiant heat_   unknown
7. **Plumbing system:** Type: copper ☐   galvanized ☐   other ☐
   Any known problems? _3 showers / 3 toilets need repairs_
8. **Electrical system:** Any known problems? _no_
9. **History of infestation,** if any: (termites, carpenter ants, etc.) _no_

_mk_ Seller's Initials     _JB_ 10/15/19 1:32 PM EDT dotloop verified   _AB_ 10/15/19 1:23 PM ED dotloop verified Buyer's Initials

Page 1 of 2
Rev. 1/06

# Seller's Disclosure Statement

**Property Address:** _____23411 Lakeview Drive_____  _____Edwardsburg_____  MICHIGAN
                                   Street                                  City, Village or Township

10. **Environmental problems:** Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on property?
    unknown ☑   yes ☐   no ☐
    If yes, please explain: _____
11. **Flood Insurance:** Do you have flood insurance on the property?    unknown ☐   yes ☐   no ☑
12. **Mineral Rights:** Do you own the mineral rights?    unknown ☑   yes ☐   no ☐

**Other items:** Are you aware of any of the following:
1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property?   unknown ☐   yes ☐   no ☑
2. Any encroachments, easements, zoning violations or nonconforming uses?   unknown ☐   yes ☐   no ☑
3. Any "common areas" (facilities like pools, tennis courts, walkways, or other areas co-owned with others), or a homeowners' association that has any authority over the property?   unknown ☐   yes ☐   no ☑
4. Structural modifications, alterations, or repairs made without necessary permits or licensed contractors?   unknown ☐   yes ☐   no ☑
5. Settling, flooding, drainage, structural, or grading problems?   unknown ☐   yes ☐   no ☑
6. Major damage to the property from fire, wind, floods, or landslides?   unknown ☐   yes ☐   no ☑
7. Any underground storage tanks?   unknown ☐   yes ☐   no ☑
8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.   unknown ☐   yes ☐   no ☑
9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge?   unknown ☐   yes ☐   no ☑
10. Any outstanding municipal assessments or fees?   unknown ☐   yes ☐   no ☑
11. Any pending litigation that could affect the property or the Seller's right to convey the property?   unknown ☐   yes ☐   no ☑

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____

The Seller has lived in the residence on the property from __never__ (date) to _____ (date).
The Seller has owned the property since __Dec. 28, 2016__ _____ (date).
The Seller has indicated above the condition of all the items based on information known to the Seller. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

Seller certifies that the information in this statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSUALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.

BUYER IS ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28.721 TO 28.732 IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.

BUYER IS ALSO ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. **BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY TAX OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.**

Seller _[signature]_   Date __10/1/19__
Seller _____   Date _____
Buyer _Jonathan T Slocum_ (dotloop verified 10/15/19 1:32 PM EDT 68AR-CV64-PHGO-IBPB)   Date _____   Time _____
Buyer _Lindsay Q Slocum_ (dotloop verified 10/15/19 1:23 PM EDT WQSP-LO5X-2MML-HV2H)   Date _____   Time _____

Disclaimer: This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form for misrepresentation for for warranties made in connection with the form.

 

# LEAD-BASED PAINT SELLER'S DISCLOSURE FORM

| 23411 Lakeview Drive | Edwardsburg | | MI |
|---|---|---|---|
| Street Address | City, Village | Township | State |

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

## I. Seller's Disclosure (initial)

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below):
  ☐ Known lead-based and/or lead-based paint hazards are present in the housing (explain):
  or _____

  ☑ Seller has no knowledge of lead-based paint and/or lead-based hazards in the housing.

(b) Records and reports available to the seller (check one below):
  ☐ Seller has provided purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):
  or _____

  ☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Seller certifies that to the best of his/her knowledge, the Seller's statement above are true and accurate.

Date: 10/1/19 _____ Seller

Date: _____ Seller

## II. Agent's Acknowledgment (initial)

Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.
Agent certifies that to the best of his/her knowledge, the Agent's statement above is true and accurate.

Date: 10/1/19  Francee Foster
                         Agent

## III. Purchaser's Acknowledgment (initial)

(a) Purchaser has received copies of all information listed above.
(b) Purchaser has received the federally approved pamphlet *Protect Your Family From Lead In Your Home*.
(c) Purchaser has (check one below):

  ☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or
  or  inspection of the presence of lead-based paint or lead-based hazards;

  ☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Purchaser certifies to the best of his/her knowledge, the Purchaser's statements above are true and accurate.

Date: Jonathan T Slocum  dotloop verified 10/15/19 1:32 PM EDT  1JEN-DDGE-UJKQ-SEKN
                                Purchaser

Date: Lindsay A Slocum  dotloop verified 10/15/19 1:23 PM EDT
                                Purchaser

FORM L-3, ©1996 Michigan Association of REALTORS®, 10/96




# Disclosure Regarding Real Estate Agency Relationships

Before you disclose confidential information to a real estate licensee regarding a real estate transaction, you should understand what type of agency relationship you have with that licensee. A real estate transaction is a transaction involving the sale or lease of any legal or equitable interest in real estate consisting of not less than 1 or not more than 4 residential dwelling units or consisting of a building site for a residential unit on either a lot as defined in section 102 of the land division act, 1967 PA 288, MCL 560.102, or a condominium unit as defined in section 4 of the condominium act, 1978 PA 59, MCL 559.104.

(1) An agent providing services under any service provision agreement owes, at a minimum, the following *duties* to the client:
  (a) The exercise of reasonable care and skill in representing the client and carrying out the responsibilities of the agency relationship.
  (b) The performance of the terms of the service provision agreement.
  (c) Loyalty to the interest of the client.
  (d) Compliance with the laws, rules, and regulations of this state and any applicable federal statutes or regulations.
  (e) Referral of the client to other licensed professionals for expert advice related to material matters that are not within the expertise of the licensed agent.
  (f) An accounting in a timely manner of all money and property received by the agent in which the client has or may have an interest.
  (g) Confidentiality of all information obtained within the course of the agency relationship, unless disclosed with the client's permission or as provided by law, including the duty not to disclose confidential information to any licensee who is not an agent of the client.

(2) A real estate broker or real estate salesperson acting pursuant to a service provision agreement shall provide the following *services* to his or her client:
  (a) When the real estate broker or real estate salesperson is representing a seller or lessor, the marketing of the client's property in the manner agreed upon in the service provision agreement.
  (b) Acceptance of delivery and presentation of offers and counteroffers to buy, sell, or lease the client's property or the property the client seeks to purchase or lease.
  (c) Assistance in developing, communicating, negotiating, and presenting offers, counteroffers, and related documents or notices until a purchase or lease agreement is executed by all parties and all contingencies are satisfied or waived.
  (d) After execution of a purchase agreement by all parties, assistance as necessary to complete the transaction under the terms specified in the purchase agreement.
  (e) For a broker or associate broker who is involved at the closing of a real estate or business opportunity transaction furnishing, or causing to be furnished, to the buyer and seller, a complete and detailed closing statement signed by the broker or associate broker showing each party all receipts and disbursements affecting that party.

Michigan law requires real estate licensees who are acting as agents of sellers or buyers of real property to advise the potential sellers or buyers with whom they work of the nature of their agency relationship.

## SELLER'S AGENTS

A seller's agent, under a listing agreement with the seller, acts solely on behalf of the seller. A seller can authorize a seller's agent to work with subagents, buyer's agents and/or transaction coordinators. A subagent of the seller is one who has agreed to work with the listing agent, and who, like the listing agent, acts solely on behalf of the seller. Seller's agents and their subagents will disclose to the seller known information about the buyer which may be used to the benefit of the seller.

Individual services may be waived by the seller through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

## BUYER'S AGENTS

A buyer's agent, under a buyer's agency agreement with the buyer, acts solely on behalf of the buyer. A subagent of the buyer is one who has agreed to work with the buyer's agent with who, like the buyer's agent, acts solely on behalf of the buyer. Buyer's agents and their subagents will disclose to the buyer known information about the seller which may be used to benefit the buyer.

Individual services may be waived by the buyer through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

 Seller's Initials

 Buyer's Initials

Page 1 of 2

## Disclosure Regarding Real Estate Agency Relationships

### DUAL AGENTS

A real estate licensee can be the agent of both the seller and the buyer in a transaction, but only with the knowledge and informed consent, in writing, of both the seller and the buyer. In such a dual agency situation, the licensee will not be able to disclose all known information to either the seller or the buyer. As a dual agent, the licensee will not be able to provide the full range of fiduciary duties to the seller or the buyer. The obligations of a dual agent are subject to any specific provisions set forth in any agreement between the dual agent, the seller and the buyer.

### TRANSACTION COORDINATOR

A transaction coordinator is **a licensee who is not acting as an agent of either the seller or the buyer**, yet is providing services to complete a real estate transaction. The transaction coordinator is not an agent for either party and therefore owes no fiduciary duty to either party.

### DESIGNATED AGENCY

A buyer or seller with a designated agency agreement is represented only by agents specifically named in the agreement. Any agents of the firm not named in the agreement do not represent the buyer or seller. The named "designated" agent acts solely on behalf of his or her client and may only share confidential information about the client with the agent's supervisory broker who is also named in the agreement. Other agents in the firm have no duties to the buyer or seller and may act solely on behalf of another party in the transaction.

### LICENSEE DISCLOSURE
REALTOR hereby discloses the following relationship:
(check one from each column)

| with the BUYER | with the SELLER |
|---|---|
| ☐ Buyer's Agent | ☐ Seller's Agent |
| ☐ Buyer's Agent - Limited Service Agreement | ☐ Seller's Agent – Limited Service Agreement |
| ☒ Dual Agent        AND | ☒ Dual Agent |
| ☐ Transaction Coordinator | ☐ Transaction Coordinator |
| ☐ None of the Above | ☐ None of the Above |

### AFFILIATED LICENSEE DISCLOSURE (Check one)

___ ☐ Check here if acting as a designated agent. Only the licensee's broker and a named supervisory broker have the same agency relationship as the licensee named below. If the other party in a transaction is represented by an affiliated licensee, then the licensee's broker and all named supervisory brokers shall be considered disclosed consensual dual agents.

___ ☒ Check here if not acting as a designated agent. All affiliated licensees have the same agency relationship as the licensee named below.

Further, this form was provided to the buyer or seller before disclosure of any confidential information.

*Francee Foster*                                                                 dotloop verified 10/15/19 11:50 AM EDT 4DCT-ZUQQ-YI1J-UXM1
Licensee                                                                          Date

_____
Licensee                                                                          Date

### ACKNOWLEDGMENT

By signing below, the parties acknowledge that they have received and read the information in this agency disclosure statement and acknowledge that this form was provided to them before the disclosure of any confidential information specific to the potential sellers or buyers. **THIS IS NOT A CONTRACT.**
The undersigned ☐ Does ☒ Does Not have an agency relationship with any other real estate licensee.
If any agency relationship exists, the undersigned is represented as a ☐ Seller ☐ Buyer.

| *Nancy L Khan* — dotloop verified 10/17/19 11:33 AM EDT UTPY-JAOO-YWXG-BHOA | *Jonathan T Slocum* — dotloop verified 10/15/19 1:32 PM EDT 7MVN-7P2A-YK5L-DBHF | Date |
|---|---|---|
| Potential Buyer/Seller (circle one)  ☐  ☒ | Potential Buyer/Seller (circle one)  ☒  ☐ | |

Copyright June 2008 by the Southwestern Michigan Association of REALTORS®, Inc.
Use of this form by non-members is strictly prohibited.

*Lindsay A Slocum* — dotloop verified 10/15/19 1:23 PM EDT 9OBI-AGFS-QZUK-DSW5

Page 2 of 2




## DUAL AGENCY AGREEMENT

1. _____ At Home Realty Group _____
2. REALTOR®/Brokerage Firm

3. _____ Francee Foster _____          _____ Francee Foster _____
4. Listing REALTOR®                          Selling REALTOR®

5. _____ Nancy L. Khan _____           Jonathan T Slocum and Lindsay A Slocum
6. Seller                                    Buyer

7. Property Address: _____ 23411 Lakeview Drive, Edwardsburg, MI 49112 _____

8. Seller and Buyer acknowledge that in connection with the possible sale/purchase of the Property, the above
9. REALTOR®/Brokerage Firm hereinafter referred to as "Broker" will be acting as a disclosed consensual dual
10. agent of both the Seller and Buyer. When the Broker acts as a disclosed consensual dual agent neither the Seller
11. or the Buyer will receive the full range of fiduciary duties. While both the Seller and the Buyer give up their
12. rights to undivided loyalty and receive only limited duties of disclosure, obedience and confidentiality, the
13. Broker shall:

14. • Work equally for both parties to complete the transaction

15. • Keep confidential to each party all facts that may influence either party's decision to
16.   make or accept an offer to purchase

17. • Prepare offers and counter-offers as an intermediary rather than as an active negotiator
18.   for either party

19. • Keep confidential the motivations of each party

20. • Keep confidential each party's willingness to modify the price or terms of any offer to purchase

21. • Be accountable and exercise reasonable care, as may be required to complete a transaction

22. • REALTOR®/Broker will preserve all confidential information obtained during any prior agency
23.   relationship and will not use such confidential information to the detriment of the former client

24. Notwithstanding the terms of any contract between Broker and Seller or Buyer as provided above, Seller and
25. Buyer hereby release Broker from any fiduciary duties inconsistent with the terms of this Dual Agency
26. Agreement. The Seller and the Buyer, and each of them individually, hereby waive any claims, of whatever
27. name or nature, due to conflicts of interest, now existing or hereafter arising, from such Dual Agency, except as
28. expressly provided herein.

29. Seller and Buyer acknowledge and agree that all terms for compensation of the Broker remain in full force and
30. effect. The undersigned Seller and Buyer hereby give fully-informed consent to the Broker and their agent(s) to
31. act as a disclosed consensual dual agent in the above referenced transaction.

32. *Nancy L Khan*   dotloop verified 10/17/19 11:33 AM EDT GPC8-99MX-WNAQ-PJXB      *Jonathan T Slocum*   dotloop verified 10/15/19 1:32 PM EDT BUD2-DK4Y-DIXT-TZ7G
33. Seller Signature                         Date         Buyer Signature                          Date

34.                                                       *Lindsay A Slocum*   dotloop verified 10/15/19 1:23 PM EDT 5MBH-Y4K8-D6KN-NLQO
35. Seller Signature                         Date         Buyer Signature                          Date

Copyright June 2009 by the Southwestern Michigan Association of REALTORS®, Inc.
Use of this form by non-members is strictly prohibited.