UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

                                                        Case No. DK 19-04258
NAJEEB AHMED KHAN,                                      Hon. Scott W. Dales
                                                        Chapter 11

                    Debtor.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge


The Second Interim Application of Jones Walker LLP for Allowance and Payment of Fees

and Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from

February 1, 2020 through March 31, 2020 (ECF No. 597 the "Second Application") left the court

with concerns about the staffing and billing decisions of the Committee's counsel, Jones Walker

LLP firm (the "Firm").

Although no interested party objected (including the Committee chair who evidently

supports it), the court nevertheless sent a letter to the Firm seeking further explanation to address

its concerns.  *See* Letter to Jeffrey R. Barber, Esq., from Hon. Scott W. Dales, dated July 13, 2020

(ECF No. 642, the "Court's Letter"); *see also In re Allison*, 578 B.R. 782, 784 (Bankr. W.D. Mich.

2018)("The court has an independent and continuing obligation to review fee applications").  Mr.

Barber timely responded to the Court's Letter with an explanation and he also proposed a modest

reduction of the fees requested.  *See* Letter from Jeffrey R. Barber, Esq., to the Hon. Scott W.

Dales dated July 27, 2020 (ECF No. 656, the "Firm's Letter").

The court acknowledges that billing by bankruptcy estate professionals is not strictly a

matter of preparing an invoice for the client and putting it in the mail. Because fees of the estate's professionals and the professionals who represent official committees are taxed to the estate as a priority expense of administration under 11 U.S.C. §§ 503(b)(2) and 507(a)(2),[1] the Bankruptcy Code requires court approval under § 330. Indeed, that section implicitly contemplates compensating professionals for seeking approval of their fees. *Id.* § 330(a)(6); *see also* Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals, at ¶ 9 (amended Oct. 1, 2013, the "Fee Memo") (available on the court's website at https://www.miwb.uscourts.gov/court-info/local-rules-and-orders/local-rules). Nevertheless, fees for seeking approval of compensation, like all fees to be borne by an estate, must be "reasonable." 11 U.S.C. § 330(a)(1)(A). And, the applicant bears the burden of proof on that issue.

So, when the court discovered that over one third of the time billed by the Firm on the Second Application was for getting the Firm's fees approved (103.1 hours compared to the 291.2 total hours spent on all other matters during the period), the court requested a further explanation. Of the $26,717.00 in time listed in the Second Application allocated to Code B160 (regarding fee petitions), most of the time was spent reviewing the Firm's own billing statements to ensure compliance with United States Trustee Guidelines, and sending emails and making phone calls to the Firm's own billing department. Some of this effort involved reviewing entries from the First Interim Fee Period (Nov. 12, 2019 – Jan. 31, 2020), and some from the second (Feb. 1, 2020 – Mar. 31, 2020).

In response to the court's concerns about underutilizing paraprofessionals in billing

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. In addition, the court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to identify the intended reference.

matters, Mr. Barber explained that the Firm's "Bankruptcy and Creditors Rights" team has only two bankruptcy paralegals supporting fifteen attorneys. In addition, he noted that the rates for several of the "junior associates" involved in the Code B160 entries are comparable to rates the court has already approved for paralegals at other firms involved in the case. Both points are fair, and the court accepts the explanation.

The Firm's explanation regarding the number of hours spent on its own billing, however, is less persuasive. Mr. Barber concedes the "possibility that [the Firm's] desire to be thoroughly scrupulous with [the] Second Application may reflect some overzealousness . . ." *See* Firm's Letter at p. 3. Many of the hours as described in the Second Application, indeed, document extensive efforts to comply with the United States Trustee's requirements. But, as the court's Fee Memo reminds counsel, "[n]o fees shall be allowed for general research on law well known or that should be well known to practitioners in the area of law involved." Fee Memo at ¶ 10. Extensive investigation into the United States Trustee requirements contravenes the spirit if not the letter of this admonition.

In his letter, after suggesting that the Firm's future requests will be more in line with the Court's Letter, Mr. Barber invites the court to compare the Firm's March 2020 fee statement in this case with the similar statements of Paul Hastings and Ice Miller in the related Interlogic Outsourcing, Inc. proceedings for the same period. The following table summarizes the comparison:

| Law Firm & Docket No. | Total Amount of Requested Fees March 2020 | Hours Spent on Fee Petition Issues and Amount Requested | Hours Preparing Applicant's Fee Petition and Amount for Same | Award Requested for Preparing Fee Petition As Percentage of Fees |
|---|---|---|---|---|
| Paul Hastings ECF No. 1056 | $174,308.00 | 32.1/$29,102.50 | 21.2/$19,369.00 | 16.9% |

| Ice Miller ECF No. 1070 | $171,653.50 | 66.3/ $34,947.00 | 63.9/$33,858.50 | 19.7% |
| Jones Walker ECF No. 563 | $49,591.00 | 69.5/$18,141.00 | 68.2/$17,754.00 | 35.8% |

Although the invited comparison shows that the Firm is indeed seeking a lower award for fee-related entries in March than the Paul Hastings and Ice Miller firms, the hours spent preparing the Firm's March statement (68.2) and the proportion of the fee award allocable to preparing the Firm's March statement (35.8%) still troubles the court, leading to the conclusion, under the lodestar analysis, that even if the rates are reasonable, the number of hours is excessive.

The Firm argues that a fee reduction would amount to a penalty for pursuing cost-sharing agreements with the official committee appointed in the Interlogic Outsourcing, Inc. cases:

> Had the Khan Committee engaged in substantial duplication of the IOI Committee's investigatory efforts, the proportion of time spent on the Second Application would have been much less compared to other services performed. So, in an ironic way, the decision by my Firm and the Khan Committee to save the estate money by not substantially duplicating effort by the IOI committee has created the unfortunate negative impression described in the [Court's] Letter.

*See* Firm's Letter at pp. 2-3. This argument is unpersuasive and ignores the fact that the additional work (assuming a different division of labor) would have generated additional time entries which in turn would (under the Firm's *modus operandi*) require review of the additional billing by the Firm's junior associates and partners. If the court applies the Firm's percentages from the Second Application and the March statement, creditors would be charged another 25 to 38 cents for every dollar of the Firm's time, just for billing that time. There is no reason to believe that the high percentage of hours spent on billing would differ if the Firm had not agreed to economize by cooperating with the other committee, and based on the March statement there is every reason to think the high percentage would persist or increase.

The court applauds the direction, if not the magnitude, of the Firm's voluntary $1,576.00

adjustment, and understands its staffing decisions. The rate it charges for junior associates is comparable to the rates other prominent bankruptcy firms involved in this case charge for paralegal professionals. Nevertheless, despite giving the Firm the opportunity to address the perception described in the Court's Letter that the number of hours spent on preparing the Second Application is excessive, the impression persists. The court, therefore, will reduce the Firm's compensable hours, beyond the $1,576.00 reduction offered in the Firm's Letter.

After carefully reviewing the itemizations, the court finds that the hours within category B160 exceed what would be reasonable for preparing the fee petitions. In reaching this conclusion, the court has considered the factors identified in § 330, especially § 330(a)(3)(C) and (a)(3)(D), as well as the guidance included within the Fee Memo. Under the circumstances, the court will reduce the award by 19.40 hours, at $250.00 per hour ($4,850.00), beyond the $1,576.00 in voluntary reductions identified in the Firm's Letter. The court's reduction comes from entries on the following dates for timekeeper "SAO": Feb. 27, 2020 (6.70 hours/$1,675.00); March 4, 2020 (4.70 hours/$1,175.00); March 16, 2020 (2.00 hours/$500.00); March 23, 2020 (2.80 hours/$700.00); March 25, 2020 (2.00 hours/$500.00); March 30, 2020 (1.20 hours/$300.00).

In general, attorneys who look to a bankruptcy estate for payment of their fees must take care to economize, especially given the priority that their fees enjoy over the claims of creditors. Here, disproportionate time spent on preparing the Firm's fee petitions, including the Second Application, shows that the Firm fell short of that requirement. As a matter of law the court has authority to award fees in an amount less than requested under § 330(a)(2) if the request fails to meet the requirements of § 330(a)(3), and under the circumstances the court will exercise that authority here. After a searching review, the fees the Firm incurred in rendering legal service to the Committee seem reasonable as to rate and number of hours, but the number of hours spent in

seeking the court's approval is not. *See* 11 U.S.C. § 330(a)(3)(A).

To a considerable extent, the task of billing is a matter of overhead, although (as noted above) the requirement of court approval obviously requires compensable professional judgment and expertise. The court, however, cannot help but wonder how one of the Firm's non-bankruptcy clients would react to getting a bill for nearly 300 hours of legal services that included more than 100 hours of attorney time, at $250 per hour, for preparing the bill. The comparison is not perfect, given the requirement of court approval as noted above and the time spent reviewing entries from the earlier period, but it is very close. As an entity with a national chapter 11 practice, as self-reported in its employment application, the Firm spent entirely too much time familiarizing itself with the fee guidelines of the United States Trustee and making *post hoc* adjustments to fit entries into the agency's billing categories. *In re ACT Mfg., Inc.*, 281 B.R. 468, 485 (Bankr. D. Mass. 2002) ("By now professionals who routinely practice before bankruptcy courts should be well versed in the requirements for time keeping and should have tailored both their individual time-keeping practices and their computer billing systems accordingly."). Much of the work performed at $250.00 per hour ought to have been automated and anticipated through the training of timekeepers, rather than taxing the estate for the work, and much of the work is already reflected in the rates the Firm charges for its professionals.

Although endeavoring to observe the lodestar approach to fee review by identifying specific entries, the court agrees with Judge Shefferly's observation that "[t] he law does not limit the Court to viewing each time entry in a vacuum, without regard to the reasonableness of the total number of hours spent for the entire case." *In re Ulrich*, 517 B.R. 77, 88 (Bankr. E.D. Mich. 2014). The court identified specific entries in the Second Application which it regarded as especially excessive given work performed earlier in the month, or the nature of the task or expertise of the

time-keeper, though the Second Application cries out for "an overall reduction of the requested fee" as Judge Shefferly did in *Ulrich*.

The court is unsure whether the absence of any objection to the Firm's Second Application stems from a difference of opinion, professional courtesy, or even a "glass houses" effect, and is surprised that no one (including the United States Trustee) raised concerns about the costs of billing in the current application, or others. The Bankruptcy Code, however, in at least two places authorizes the court to raise the issue on its own. *See* 11 U.S.C. §§ 105(a) (general authority to act *sua sponte* to enforce orders and rules or prevent "abuse of process") and 330(a)(2) (specific authority to reduce fees "on its own motion"); *Allison*, 578 B.R. at 784 (citing cases).

There is no question that the professionals retained in this case (and related cases), including the Firm, are working creatively, cooperatively and assiduously to address a remarkably complicated set of circumstances emanating from the spectacular collapse of the Debtor's financial empire, and by no means is the court prodding them to carp at each other over fees. Instead, the court encourages a more searching self-assessment and greater participation in the fee approval process by the United States Trustee as a way of striking an appropriate balance in the case, at least for future fee petitions. Nevertheless, the court cannot in good conscience allow the Second Application as filed, without limiting it as provided herein.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows: (1) the Second Application is GRANTED in part and DENIED in part; and (2) fees and expenses are approved in the amount of $87,314.50 under §§ 330 and 331.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the chapter 11

trustee, the Committee chair appointed in this case, their respective counsel, the United States

Trustee, and all parties who have appeared in or requested notice of any of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated August 8, 2020**



Scott W. Dales
United States Bankruptcy Judge