**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br>NAJEEB AHMED KHAN,[1]<br><br>      Debtor. | Chapter 11<br>Case No. 19-04258 (SWD) |
| In re:<br>KHAN AVIATION, INC., *et al.*,[2]<br><br>      Debtors. | Chapter 11<br>Case No. 19-04261 (SWD)<br>(Jointly Administered) |
| In re:<br>INTERLOGIC OUTSOURCING, INC., *et al.*,[3]<br><br>      Debtors. | Chapter 11<br>Case No. 20-00325 (SWD)<br>(Jointly Administered) |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR (I) NAJEEB**
**AHMED KHAN, (II) KHAN AVIATION, INC. AND ITS**
**JOINTLY ADMINISTERED DEBTORS, AND (III) INTERLOGIC**
**OUTSOURCING, INC. AND ITS JOINTLY ADMINISTERED DEBTORS**

---

[1] Estate Tax I.D. No.:  84-6804873.

[2] The Debtors in the Khan Entities Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Khan Aviation, Inc. (0145), GN Investments, LLC (3550), KRW Investments, Inc. (4356), NJ Realty, LLC (3761), NAK Holdings, LLC (4717), and Sarah Air, LLC (4718).

[3] The Debtors in the IOI Cases, along with the last four digits of each Debtor's federal tax identification number are: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473).  The location of the IOI Debtors' headquarters is:  1710 Leer Drive, Elkhart, Indiana 46514.

{8858281:15 }

**Paul Hastings LLP**
Matt Murphy (admitted *pro hac vice*)
Nathan S. Gimpel (admitted *pro hac vice*)
Matthew Smart (admitted *pro hac vice*)
71 South Wacker Drive
Forty-Fifth Floor
Chicago, IL 60606
Telephone:  (312) 499-6036
Facsimile:  (312) 499-6100

-and-

**CBH Attorneys & Counselors, PLLC**
Steven L. Rayman (P30882)
141 E Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone:  (269) 345-5156
Facsimile:  (269) 345-5161

*Counsel for the IOI Debtors*

**McDonald Hopkins LLP**
Nicholas M. Miller (admitted *pro hac vice*)
Michael J. Kaczka
300 N. LaSalle Street
Suite 1400
Chicago, IL 60654
Telephone:  (312) 280-0111
Facsimile:  (312) 280-8232

-and-

**Miller Johnson**
Rachel L. Hillegonds (P67684)
45 Ottawa Avenue, SW, Suite 1100
P.O. Box 306
Grand Rapids, MI 49501
Telephone:  (616) 831-1711
Facsimile:  (616) 988-1711

*Counsel for the NA Khan Trustee*

**Beadle Smith PLC**
Kevin M. Smith (P48976)
445 South Livernois
Suite 305
Rochester Hills, MI 48307
Telephone:  (248) 650-6094
Facsimile:  (248) 650-6095

*Counsel for the Khan Entities Trustee*

Dated:  February 5, 2021

# TABLE OF CONTENTS

PAGE

ARTICLE I : DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

ARTICLE II : TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
      PRIORITY CLAIMS ................................................................................ 14

    2.1.    General Administrative Expense Claims ................................................ 14
    2.2.    Professional Fee Claims............................................................................ 14
    2.3.    Estate Trustee Fee Claims ........................................................................ 15
    2.4.    Priority Tax Claims .................................................................................. 15

ARTICLE III : CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
      AND INTERESTS ................................................................................... 15

    3.1.    Summary of Classification and Treatment of Classified Claims and
            Interests .................................................................................................... 15
    3.2.    Treatment of Claims against and Interests in the Debtors .................... 16

ARTICLE IV : ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 20

    4.1.    Impaired Classes of Claims Entitled to Vote on this Plan ..................... 20
    4.2.    Acceptance by an Impaired Class of Claims ........................................... 20
    4.3.    Presumed Acceptance by Unimpaired Classes ...................................... 20
    4.4.    Deemed Rejection by Certain Impaired Classes...................................... 20
    4.5.    Presumed Acceptance or Deemed Rejection of the Plan ........................ 20
    4.6.    Reservation of Rights............................................................................... 20

ARTICLE V : MEANS FOR IMPLEMENTATION OF THE PLAN....................................... 21

    5.1.    Plan Funding ........................................................................................... 21
    5.2.    Release of KeyBank Liens........................................................................ 21
    5.3.    Establishment of the Consolidated Estate Trust ................................... 21
    5.4.    Appointment of the Consolidated Estate Trustee. ................................. 21
    5.5.    Beneficiaries of the Consolidated Estate Trust ...................................... 22
    5.6.    Vesting and Transfer of Trust Assets to the Consolidated Estate Trust ............. 22
    5.7.    Consenting Creditor and Non-Consenting Creditor Distribution Accounts ........ 22
    5.8.    Estate Trustee Fees Escrow Account ....................................................... 22
    5.9.    Professional Fees Escrow Account ........................................................... 23
    5.10.    Distributions to KeyBank and Consenting Creditors............................. 23
    5.11.    Consolidated Estate Trust Expenses ....................................................... 24
    5.12.    Role of the Consolidated Estate Trustee. ................................................ 24
    5.13.    Preservation of Right to Conduct Investigations ................................... 26
    5.14.    Prosecution and Resolution of Causes of Action ................................... 26
    5.15.    Federal Income Tax Treatment of the Consolidated Estate Trust for the
            Trust Assets.............................................................................................. 26

5.16. Limitation of Liability ............................................................................. 27
5.17. Term of the Consolidated Estate Trust ................................................. 27
5.18. Retention of Professionals ..................................................................... 27
5.19. Conflicts between the Trust Agreement and the Plan ........................... 27
5.20. Cancellation of Existing Securities and Agreements ............................ 28
5.21. Automatic Stay ....................................................................................... 28
5.22. Committees ............................................................................................. 28
5.23. Books and Records ................................................................................. 28
5.24. D&O / E&O Insurance Policies ............................................................. 28
5.25. Additional Transactions Authorized under This Plan ........................... 29
5.26. Comprehensive Settlement of Claims and Controversies .................... 29

ARTICLE VI : TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
LEASES, AND INSURANCE POLICIES ........................................................... 29

6.1. Deemed Rejection of Executory Contracts and Unexpired Leases ...... 29
6.2. Rejection Claims ..................................................................................... 29
6.3. Assumed Contracts and Unexpired Leases ............................................ 29
6.4. Insurance Policies and Agreements ....................................................... 30
6.5. Postpetition Contracts and Leases ......................................................... 30
6.6. Modifications, Amendments, Supplements, Restatements, or Other
Agreements ............................................................................................. 30

ARTICLE VII : PROVISIONS GOVERNING DISTRIBUTIONS ............................ 30

7.1. Distributions Made by the Consolidated Estate Trustee ....................... 30
7.2. Timing and Calculation of Amounts to Be Distributed ........................ 31
7.3. Single Recovery ..................................................................................... 31
7.4. Distributions on Account of Claims Allowed after the Effective Date ............... 31
7.5. Special Rules for Distributions to Holders of Disputed Claims ........... 31
7.6. Means of Cash Payment .......................................................................... 31
7.7. Minimum; De Minimis Distributions .................................................... 31
7.8. Withholding and Reporting Requirements ............................................ 31
7.9. Compliance Matters ............................................................................... 32
7.10. Setoff and Recoupment .......................................................................... 32
7.11. Undeliverable or Non-Negotiated Distributions and Unclaimed Property .......... 32
7.12. Claims Paid by Third Parties ................................................................. 33

ARTICLE VIII : PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ................................................. 33

8.1. Allowance of Claims ............................................................................... 33
8.2. Claims Administration Responsibilities ................................................ 33
8.3. Adjustment to Claims Without Objection .............................................. 33
8.4. Time to File Objections to Claims ......................................................... 33
8.5. Disallowance of Claims .......................................................................... 33
8.6. Late-Filed Claims ................................................................................... 34

8.7. Amendments to Claims .................................................................. 34
8.8. No Distributions Pending Allowance ............................................ 34
8.9. Distributions after Allowance ...................................................... 34
8.10. Estimation ................................................................................... 34
8.11. Remedies Not Exclusive .............................................................. 34

ARTICLE IX : CONFIRMATION AND CONSUMMATION OF THE PLAN ...................... 35

9.1. Conditions to Effective Date ........................................................ 35
9.2. Waiver of Conditions ................................................................... 35
9.3. Continued Liquidation by Chapter 11 Trustees ............................ 35
9.4. Vacatur of Confirmation Order .................................................... 35
9.5. Notice of Effective Date .............................................................. 35

ARTICLE X : EFFECT OF PLAN CONFIRMATION ............................................... 36

10.1. Binding Effect ............................................................................. 36
KeyBank Releases ................................................................................... 36
10.2. **Releases by the Debtors** ............................................................ 36
10.3. **Releases by Holders of Claims and Interests** ............................ 37
10.4. **Exculpation** ............................................................................... 38
10.5. **Injunctions** ............................................................................... 38
10.6. Survival of Indemnification and Exculpation Obligations ............ 40
10.7. Term of Bankruptcy Injunction or Stays ..................................... 40
10.8. Liability to Governmental Units .................................................. 41
10.9. No Discharge of NA Khan ........................................................... 41

ARTICLE XI : RETENTION OF JURISDICTION ................................................... 41

11.1. Retention of Jurisdiction. ............................................................ 41

ARTICLE XII : MISCELLANEOUS PROVISIONS .................................................. 43

12.1. Effectuating Documents and Further Transactions ....................... 43
12.2. Exemption from Transfer Taxes .................................................. 43
12.3. Payment of Statutory Fees .......................................................... 44
12.4. Amendment or Modification of this Plan ..................................... 44
12.5. [Reserved] ................................................................................... 44
12.6. Closing of Chapter 11 Cases; Caption Change ............................ 44
12.7. Successors and Assigns ............................................................... 44
12.8. Non-Consummation ..................................................................... 44
12.9. Notice to Debtors, Consolidated Debtor, or Consolidated Estate Trustee ........... 45
12.10. Governing Law ............................................................................ 47
12.11. Exhibits ...................................................................................... 47
12.12. Filing of Additional Documents .................................................. 47
12.13. Plan Documents .......................................................................... 48
12.14. Reservation of Rights .................................................................. 48

SCHEDULES TO PLAN
       Schedule 1.82 - Holders of the Khan Entities Ordinary Course Claims
       Schedule 1.115 - Representatives Not Released by Plan
       Schedule 1.117 - Reserved Causes of Action

## INTRODUCTION

Each of (a) the NA Khan Trustee, (b) the Khan Entities Trustee, and (c) the IOI Debtors, (collectively, the "Plan Proponents") jointly proposes the following plan of liquidation for the Debtors' liquidation under chapter 11 of the Bankruptcy Code and for the resolution of outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article I. The classification and treatment of Claims and Interests are set forth in Articles II and III. The Plan Proponents are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a summary and analysis of this Plan and for a discussion of the Debtors' history, businesses, properties, operations, risk factors, and related matters.

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

A.      Defined Terms. As used in this Plan, capitalized terms shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1      Administrative Expense Claim means a Claim for costs and expenses of administration of the Chapter 11 Cases arising after the Petition Date and prior to the Effective Date under sections 326, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors after the Petition Date and Claims of Governmental Units for taxes (including tax audit Claims) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) any Professional Fee Claim or Estate Trustee Fee Claims, to the extent Allowed by Final Order under sections 326, 328, 330, 331 or 503 of the Bankruptcy Code; (c) with the exception of Claims arising under section 507(b) of the Bankruptcy Code, any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; or (d) any Quarterly Fees.

1.2      Affiliate has the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.3      Allowed means, with respect to a Claim or Interest, such Claim or Interest or any portion thereof to which a Debtor or other party in interest has not objected, and is not disputed, contingent or unliquidated, as of the Claims Objection Bar Date, or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) following the Effective Date, allowed by agreement between the Holder of such Claim or Interest and the Consolidated Estate Trustee or (d) allowed by an order of a court in which such Claim or Interest could have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; provided, however, that the Consolidated Estate Trustee shall retain all Causes of

Action and defenses with respect to Allowed Claims that are Unimpaired pursuant to this Plan (including, for the avoidance of doubt, Administrative Expense Claims not paid prior to the Effective Date).

1.4     <u>Auction Order</u> means the *Order Authorizing (I) the Sale of the Vehicle Collection of the Debtors' Free and Clear of Liens, Claims, Encumbrances and Interests and Outside the Ordinary Course of Business; (II) Approving Terms and Conditions of Agreement With RM Sotheby's; and (III) Granting Related Relief*, entered by the Bankruptcy Court on January 9, 2020 [NAK Holdings, LLC 19-04267, Doc. No. 104; GN Investments, LLC, 19-04262, Doc. No. 123; and KRW Investments, Inc., 19-04264, Doc. No. 163], January 10, 2020 [NA Khan Doc. No. 349], and April 15, 2020 [Khan Aviation, Inc., 19-04261, Doc. No. 311].

1.5     <u>Avoidance Actions</u> means (a) any and all claims for relief against any and all third parties for the recovery of transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Estates under section 510 of the Bankruptcy Code or under other applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

1.6     <u>Ballot</u> means the form distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.7     <u>Bankruptcy Code</u> means title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.8     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Western District of Michigan.

1.9     <u>Bankruptcy Rules</u> means, collectively:  (a) the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

1.10    <u>Business Day</u> means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.11    <u>Cash</u> means the equivalent of legal tender of the United States of America, however paid or transmitted.

1.12    <u>Cause of Action</u> means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege,

license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.13    Chapter 11 Cases means, collectively, the NA Khan Case, the Khan Entities Cases, and the IOI Cases.

1.14    Chapter 11 Trustees means, collectively, the NA Khan Trustee and the Khan Entities Trustee.

1.15    Claim means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

1.16    Claims Agent means any claims, noticing, and/or solicitation agent retained by the IOI Debtors, the Chapter 11 Trustees, and/or the Consolidated Estate Trustee, as applicable, and/or authorized by the Bankruptcy Court to perform services for one or more Estates.

1.17    Claims Bar Date means the applicable bar date by which Proofs of Claim must be filed, as established by:  (a) the applicable Claims Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

1.18    Claims Bar Date Order means, as applicable, (a) with respect to the NA Khan Case and the IOI Cases, the *Order (I) Establishing Bar Dates for Filing of Proofs of Claims, (II) Designating Form and Manner for Filing Proofs of Claims, (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* (Case No. 19-04258) [NA Khan Doc. No. 458], as amended by the further *Order* [NA Khan Doc. No. 481] extending the applicable bar date; and (b) with respect to the Khan Entities Cases, the *Order Establishing Bar Date for Filing of Proofs of Claim and Approving Form and Manner of Notice Thereof* (Case No. 19-04261) [Khan Entities Doc. No. 226], as amended by the further Order [Khan Entities Doc. No. 278] extending the applicable bar date.

1.19    Claims Objection Bar Date means 150 days after the Effective Date, subject to the right of the Consolidated Estate Trustee to seek an extension of such date by motion served on parties requesting notice pursuant to Bankruptcy Rule 2002.

1.20    Claims Register means that certain register maintained by the Bankruptcy Court or the Claims Agent containing a list of all of the proofs of claim that have been filed in the Chapter 11 Cases.

1.21    Class means each category of Holders of Claims or Interests established under Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.22    Committees means, collectively, the IOI Committee and the NA Khan Committee.

1.23    <u>Committee Professionals</u> means all Professionals retained by the Committees.

1.24    <u>Confirmation</u> means the entry of the Confirmation Order by the Bankruptcy Court.

1.25    <u>Confirmation Date</u> means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket(s).

1.26    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

1.27    <u>Confirmation Order</u> means an order confirming this Plan, in form and substance satisfactory to the Plan Proponents, the Committees, and KeyBank.

1.28    <u>Consenting Creditor</u> means a Holder of a Khan/IOI General Unsecured Claim that has not opted out of the Third Party Releases, and has agreed to an Indirect Loss Claims Waiver.

1.29    <u>Consenting Creditor Distribution Account</u> means an account established for the purpose of making Distributions to Consenting Creditors on account of their Allowed Khan/IOI General Unsecured Claims, to be funded from time to time in an aggregate amount equal to 40% of the Net Available Proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets.

1.30    <u>Consolidated Debtor</u> means, collectively, the IOI Debtors, NA Khan, and the Khan Entities after the Effective Date.

1.31    <u>Consolidated Estate</u> means the estate created on the Effective Date solely for purposes of classification and treatment of Claims and Interests of the Consolidated Debtor under this Plan and Confirmation Order.

1.32    <u>Consolidated Estate Trust</u> means the trust created for the benefit of the Holders of Allowed Claims.

1.33    <u>Consolidated Estate Trust Beneficiaries</u> means the Holders of Allowed Claims.

1.34    <u>Consolidated Estate Trustee</u> means the trustee identified in the Plan Supplement and appointed pursuant to this Plan and the Trust Agreement.

1.35    <u>D&O / E&O Insurance Policies</u> means all primary and excess insurance policies of each of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of each of the Debtors' directors and officers.

1.36    <u>Debtor Releases</u> means the releases set forth in <u>Section 10.2</u> of this Plan.

1.37    <u>Debtors</u> means, collectively, the IOI Debtors, the Khan Entities, and NA Khan.

1.38    <u>Definitive Documentation</u> means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders,

agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (a) this Plan (and all exhibits and other documents and instruments related thereto); (b) the Plan Supplement; (c) the Disclosure Statement; (d) the Trust Agreement; and (e) the Confirmation Order, which shall be in each case in form and substance reasonably acceptable to the Plan Proponents, the Committees, and KeyBank.

1.39    Disclosure Statement means the written disclosure statement that relates to this Plan (including, without limitation, all exhibits and schedules to such Plan, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Plan Proponents, the Committees and KeyBank), as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.40    Disputed means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

1.41    Disputed Administrative and Priority Claim has the meaning given to such term in Section 5.10(a) of this Plan.

1.42    Distribution means any payment of Cash or property to any Holder of an Allowed Claim as provided in this Plan.

1.43    Distribution Date means (a) the Initial Distribution Date with respect to any Distribution to be made under this Plan on the Initial Distribution Date, and (b) with respect to all other Distributions to be made under this Plan, such date(s) as provided in the Trust Agreement, or as otherwise established by the Consolidated Estate Trustee in accordance with the Trust Agreement.

1.44    Distribution Record Date means the record date for determining entitlement to receive Distributions under this Plan on account of Allowed Claims, which date shall be the third Business Day after the Confirmation Date at 5:00 p.m. (prevailing Eastern time).

1.45    Effective Date means a date, after satisfaction or waiver of the conditions to the Effective Date set forth in Section 9.1 of this Plan, to be specified by the Plan Proponents in a Notice of Effective Date to be filed with the Bankruptcy Court in accordance with this Plan.

1.46    Entity has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.47    Estate means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

1.48    Estate Trustee Fees Escrow has the meaning given to such term in Section 5.8 of this Plan.

1.49    Estate Trustee Fee Claims means, collectively, the Khan Entities Trustee Fee Claim and the NA Khan Trustee Fee Claim.

1.50    <u>Exculpated Parties</u> means, collectively, in each case in its capacity as such: (a) the IOI Debtors; (b) the NA Khan Trustee; (c) the Khan Entities Trustee; (d) the Committees; (e) KeyBank; (f) Development Specialists, Inc.; and (g) with respect to each of the foregoing entities in clauses (a) through (f), such entities' directors, managers, officers, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, insurers, representatives, and other professionals, who served in these capacities on or after the Petition Date; <u>provided</u>, <u>however</u>, NA Khan and each Khan Related Party shall not be an Exculpated Party.

1.51    <u>Executory Contracts</u> means all executory contracts to which any Debtor is a party.

1.52    <u>Existing Equity Interests</u> means the Interests in the IOI Debtors or the Khan Entities as of the IOI Petition Date, or the Khan Petition Date, respectively, except for Intercompany Interests.

1.53    <u>Final Order</u> means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket by the clerk of such court, which order or judgment has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to submit any further appeal, petition for *certiorari* or motion for a new trial, reargument, or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

1.54    [Reserved]

1.55    <u>General Unsecured Claims</u> means Claims that are not secured, excluding (a) Administrative Expense Claims, (b) priority claims, including Priority Tax Claims and Other Priority Claims, (c) Professional Fee Claims, (d) Estate Trustee Fee Claims, and (e) Intercompany Claims.

1.56    <u>Governmental Unit</u> has the meaning provided in section 101(27) of the Bankruptcy Code.

1.57    [Reserved]

1.58    <u>Holder</u> means an Entity holding a Claim or Interest.

1.59    <u>Impaired</u> has the meaning provided in section 1124 of the Bankruptcy Code.

1.60    <u>Indiana Bankruptcy Court</u> means the United States Bankruptcy Court for the Northern District of Indiana.

1.61    <u>Indirect Loss Claims</u> means General Unsecured Claims seeking recovery for attorneys' fees or expenses, incidental or consequential damages, or other indirect losses related to the Debtors.

1.62    <u>Indirect Loss Claims Waiver</u> means the waiver of Indirect Loss Claims by Consenting Creditors.

1.63    <u>Initial Distribution Date</u> means that date which is five (5) Business Days following the Effective Date, or as soon thereafter as is practicable.

1.64    <u>Insider</u> has the meaning provided in section 101(31) of the Bankruptcy Code.

1.65    <u>Insider Claims</u> means any Claim held by (a) any Person that is an Insider of any of the Debtors or (b) any entity that was or is wholly owned or controlled by an Insider.

1.66    <u>Intercompany Claim</u> means any Claim that is held by a Debtor against any other Debtor arising at any time prior to or as of the Effective Date.

1.67    <u>Intercompany Interests</u> means any Interest in an IOI Debtor held by another IOI Debtor.

1.68    <u>Interest</u> means any equity security, as such term is used in section 101(16) of the Bankruptcy Code, in a Debtor.

1.69    <u>IOI Cases</u> means the voluntary cases under chapter 11 of the Bankruptcy Code commenced by the IOI Debtors in the Indiana Bankruptcy Court on the IOI Petition Date

1.70    <u>IOI Committee</u> means the Official Committee of Unsecured Creditors appointed in the IOI Cases on August 22, 2019.

1.71    <u>IOI Debtors</u> means, collectively:  Interlogic Outsourcing, Inc.; IOI Payroll Services, Inc.; TimePlus Systems, LLC; IOI West, Inc.; Lakeview Technology, Inc.; Lakeview Holdings, Inc.; and ModEarn, Inc.

1.72    <u>IOI Debtors/KeyBank Liens</u> means the Liens and security interests asserted by KeyBank against assets of one or more of the IOI Debtors.

1.73    <u>IOI Docket</u> means the docket maintained in the IOI Cases (Lead Case No. 20-00325).

1.74    <u>IOI Petition Date</u> means August 11, 2019, the date on which the IOI Debtors commenced the IOI Cases.

1.75    <u>KeyBank</u> means KeyBank National Association.

1.76    <u>KeyBank General Unsecured Claim</u> means all claims (after the deemed avoidance of certain Liens and security interests held by KeyBank) asserted by KeyBank against the IOI Debtors, NA Khan, and/or the Khan Entities in the stipulated Allowed amount of $142,300,000.

1.77    KeyBank Third Party Claims means any Causes of Action directly related to the IOI Debtors, NA Khan, or the Khan Entities that KeyBank has asserted or could assert, directly or derivatively, against any entity or person other than (a) the IOI Debtors, (b) NA Khan, (c) the Khan Entities, or (d) any present or former employee, officer, director, shareholder, equity holder, partner, member, manager, affiliate, attorney, accountant, or agent, employed or retained by KeyBank, or any insurer of KeyBank or the persons identified in clause (d).

1.78    Khan Entities means, collectively, Khan Aviation, Inc.; GN Investments, Inc.; KRW Investments, Inc.; NJ Realty, LLC; NAK Holdings, LLC; and Sarah Air, LLC.

1.79    Khan Entities Cases means the voluntary cases under Chapter 11 of the Bankruptcy Code commenced by the Khan Entities in the Bankruptcy Court on the Khan Petition Date.

1.80    Khan Entities Docket means the docket maintained in the Khan Entities Cases (Lead Case No. 19-04261).

1.81    Khan Entities Estates means, collectively, the Estates for the Khan Entities.

1.82    Khan Entities Ordinary Course Claims means General Unsecured Claims in an aggregate amount of not more than $50,000 arising from goods or services provided to the Khan Entities in the ordinary course of business of the Khan Entities, except and excluding Claims of NA Khan and Khan Related Parties.  For the avoidance of doubt, Khan Entities Ordinary Course Claims shall exclude Khan/IOI General Unsecured Claims, any Claims filed by or on behalf of KeyBank, Intercompany Claims filed against the Khan Entities Estates, Indirect Loss Claims, Insider Claims, and Punitive Damage Claims.  The Holders of the Khan Entities Ordinary Course Claims, and the amounts claimed by each Holder, are set forth in Schedule 1.82 of this Plan.

1.83    Khan Entities Trustee means the chapter 11 trustee appointed in the Khan Entities Cases on October 28, 2019.

1.84    Khan Entities Trustee Fee Claim means the Claim of the Khan Entities Trustee for allowance of compensation and/or reimbursement of costs and expenses incurred in the Khan Entities Cases on or before the Effective Date.

1.85    Khan/IOI General Unsecured Claims means General Unsecured Claims (a) asserted against the Khan Entities, NA Khan or the IOI Debtors, including Claims for goods or services provided to the IOI Debtors, (b) arising from the IOI Debtors' prepetition nonpayment of customer payroll tax obligations pursuant to the IOI Debtors' contractual arrangements with customers (including penalties and/or fees levied by taxing authorities and actually paid by such customers), and/or (c) arising from NA Khan's diversion of funds from the IOI Debtors, or other fraudulent activity perpetrated by NA Khan and/or the IOI Debtors; provided, however, that Khan/IOI General Unsecured Claims shall not include (x) the KeyBank General Unsecured Claim, (y) the Khan Entities Ordinary Course Claims, or (z) Punitive Damage Claims.

1.86     Khan/KeyBank Adversary Case means the adversary proceeding (Case No. 19-80119) brought against KeyBank and prosecuted by the Chapter 11 Trustees for the benefit of the respective estates of NA Khan and the Khan Entities.

1.87     Khan/KeyBank Liens means the Liens and security interests asserted by KeyBank against assets of NA Khan or one or more of the Khan Entities.

1.88     Khan Petition Date means October 8, 2019, the date on which (a) NA Khan commenced the NA Khan Case and (b) the Khan Entities commenced the Khan Entities Cases.

1.89     Khan Related Parties means each "relative" (as defined in section 101(45) of the Bankruptcy Code) of NA Khan, including, for the avoidance of doubt, Nancy Lee Khan, Sarah Shoemaker and Michael Shoemaker.

1.90     Lien means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

1.91     NA Khan means Najeeb Ahmed Khan.

1.92     NA Khan Case means the voluntary case under Chapter 11 of the Bankruptcy Code commenced by NA Khan in the Bankruptcy Court on the Khan Petition Date.

1.93     NA Khan Committee means the Official Committee of Unsecured Creditors, originally appointed in the NA Khan Case on November 1, 2019, as such appointment may have been amended.

1.94     NA Khan Docket means the docket maintained in the NA Khan Case.

1.95     NA Khan Trustee means the chapter 11 trustee appointed in the NA Khan Case on October 29, 2019.

1.96     NA Khan Trustee Fee Claim means the Claim of the NA Khan Trustee for allowance of compensation and/or reimbursement of costs and expenses incurred in the NA Khan Case on or before the Effective Date.

1.97     Net Available Proceeds means the gross proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, less (a) the actual and reasonable fees and expenses of the Consolidated Estate Trustee, including reasonable attorney's fees, incurred to collect, liquidate, recover and/or administer such assets, (b) amounts required by this Plan to be paid to the Holders of Allowed Administrative Expense Claims, Professional Fee Claims, Estate Trustee Fee Claims, Priority Tax Claims, and Other Priority Claims, (c) amounts required by this Plan to be paid to the Holders of Allowed Claims in Classes 1 and 2, (d) the amount required to fund the Non-Consenting Creditor Distribution Account, and (e) Reserves established by the Consolidated Estate Trustee pursuant to Section 5.10 of this Plan.

1.98    <u>Non-Consenting Creditor</u> means a Holder of a Khan/IOI General Unsecured Claim that has either (a) accepted this Plan and opted out of the Third Party Releases, or (b) rejected this Plan and opted out of the Third Party Releases.

1.99    <u>Non-Consenting Creditor Distribution Account</u> means an account established by the Consolidated Estate Trustee for the purpose of making Distributions to Non-Consenting Creditors on account of their Allowed Khan/IOI General Unsecured Claims, to be funded on the Initial Distribution Date, in the amount of $300,000.

1.100    <u>Non-Releasing Party</u> means a Holder of a Claim or Interest that opted out of the Third Party Releases by properly completing and returning an opt-out election on the Ballot in accordance with this Plan and Confirmation Order.  For the avoidance of doubt, "Non-Releasing Parties" shall include Non-Consenting Creditors.

1.101    <u>Other Priority Claim</u> means a General Unsecured Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

1.102    <u>Person</u> or <u>person</u> means a person as defined in section 101(41) of the Bankruptcy Code.

1.103    <u>Petition Date</u> means, as applicable, the IOI Petition Date and the Khan Petition Date.

1.104    <u>Plan</u> means this joint chapter 11 plan of liquidation for the Debtors' estates, jointly proposed and filed by the Plan Proponents, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.105    <u>Plan Proponents</u> has the meaning given to it in the Introduction to this Plan.

1.106    <u>Plan Supplement</u> means the supplement to this Plan, in a form reasonably acceptable to the Plan Proponents, the Committees, and KeyBank, to be filed with the Bankruptcy Court no later than ten days prior to the Confirmation Hearing, which shall include the Trust Agreement.

1.107    <u>Priority Tax Claim</u> means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code or a specified section of section 502(i) of the Bankruptcy Code.

1.108    <u>Proof of Claim</u> means a written statement filed with the Court setting forth a creditor's claim pursuant to section 501 of the Bankruptcy Code and Rule 3001 *et. seq.* of the Bankruptcy Rules.

1.109    <u>Professional</u> means any Entity retained by the IOI Debtors, the Chapter 11 Trustees, or the Committees in accordance with a Final Order entered in a Bankruptcy Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code.

1.110  Professional Fee Claim means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the respective Chapter 11 Cases on or before the Effective Date.

1.111  Professional Fees Escrow Account means the account established pursuant to Section 5.9 of this Plan.

1.112  Pro Rata means a proportion calculated as the ratio of (a) the amount of an Allowed Claim in a Class to the amount of all Allowed Claims in such Class, in the event that all Claims in the Class have been Allowed, or (b) prior to the allowance or disallowance of all Claims in a Class, the amount of an Allowed Claim in a Class to the sum of all Allowed Claims and Disputed Claims (in their face amount or estimated maximum allowable amount) in such Class.

1.113  Punitive Damage Claims means General Unsecured Claims seeking non-compensatory damages, or damage multipliers, based on statutory, common law, equitable, or other punitive damage theories of relief.

1.114  Quarterly Fees has the meaning given to such term in Section 12.3 of this Plan.

1.115  Released Parties means, collectively, in each case in its capacity as such: (a) the IOI Committee; (b) the NA Khan Committee; (c) Consenting Creditors; (d) KeyBank; (e) the NA Khan Trustee; (f) the Khan Entities Trustee; (g) with respect to each of the foregoing entities in clauses (a) through (f), such entities' current and former directors, managers, officers, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, insurers, consultants, affiliates, representatives, and other professionals (collectively, "Representatives"); and (h) the IOI Debtors' current and former Representatives, including, but not limited to Daniel Wikel and FTI Consulting, Inc., other than those Entities identified or described in Schedule 1.115 to this Plan; provided, however, Non-Releasing Parties are not Released Parties; provided further that, solely with respect to any Claim of a Releasing Party against such Releasing Party's insurer or surety, such insurer and surety shall not constitute a Released Party as to such Releasing Party; and provided further that (r) NA Khan, (s) Michael Shoemaker, (t) Sarah Shoemaker, (u) Crowe LLP, (v) OneSource Virtual, Inc., (w) Lake City Bank, (x) 1st Source Bank, (y) Berkshire Bank, and (z) with respect to each of the foregoing entities in clauses (r) through (y), such entities' Representatives are not Released Parties.  For the avoidance of doubt, the NA Khan Trustee's firm, Development Specialists, Inc., is a Released Party, and members of the Committees who are Non-Releasing Parties are not Released Parties.

1.116  Releasing Parties means, collectively, in each case in its capacity as such: (a) each of the Debtors; (b) the IOI Committee; (c) the NA Khan Committee; (d) Consenting Creditors; (e) KeyBank; (f) each Holder of a Claim entitled to vote to accept or reject this Plan that either votes to accept this Plan or is not a Non-Releasing Party; (g) each Holder of a Claim or Interest that is Unimpaired and presumed to accept this Plan; (h) each Holder of a Claim or Interest that is deemed to reject this Plan that is not a Non-Releasing Party; (i) the NA Khan Trustee; (j) the Khan Entities Trustee, and with respect to each of the foregoing entities in clauses (a) through (j), such entities' current and former directors, managers, officers, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, affiliates,

representatives, and other professionals. For the avoidance of doubt, any members of the Committees who are Non-Releasing Parties are not Releasing Parties.

1.117 <u>Reserved Causes of Action</u> means all Causes of Action assertable by the Debtors, the Chapter 11 Trustees, or the Committees, directly or derivatively, <u>other than</u> any Causes of Action that are released pursuant to the Debtor Releases, the Third-Party Releases, or the exculpation provisions in <u>Section 10.4</u> of this Plan. The Reserved Causes of Action shall include, without limitation, those identified in Schedule 1.117 to this Plan.

1.118 <u>Reserves</u> has the meaning given to such term in <u>Section 5.10</u> of this Plan.

1.119 <u>Section 510(b) Claim</u> means a Claim that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including, without limitation, a Claim arising from the rescission or purchase of a sale or security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security or for reimbursement or contribution on account of such Claim pursuant to section 502 of the Bankruptcy Code.

1.120 <u>Secured Claim</u> means Claim for which performance is secured by a Lien.

1.121 <u>Securities Act</u> means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.122 <u>Third-Party Releases</u> means the releases set forth in <u>Section 10.3</u> of this Plan.

1.123 <u>Third Party Claims</u> means any Causes of Action arising from or related, directly or indirectly, to any activity or conduct of any of the Debtors or of any Released Party relating to such activity or conduct that are, or could be asserted, directly or derivatively, against a Released Party by a Person or Entity that is (i) not the Holder of a Claim or Interest, or (ii) a Non-Releasing Party.

1.124 <u>Trust Agreement</u> means that certain Liquidating Trust Agreement, in a form reasonably acceptable to the Committees, the Chapter 11 Trustees, the IOI Debtors, and KeyBank, to be filed as an exhibit to the Plan Supplement.

1.125 <u>Trust Assets</u> means:

    (a) an amount equal to the proceeds that KeyBank received from the sale of any assets titled in whole or in part in any Debtor's name at any time after July 8, 2019, less (i) the amount(s) of such proceeds previously transferred by KeyBank to the NA Khan Trustee or the Khan Entities Trustee, and (ii) amounts distributed to KeyBank for application against its Claims pursuant to orders entered by the Bankruptcy Court or the Indiana Bankruptcy Court;

    (b) the Reserved Causes of Action;

        (c)     any KeyBank Third Party Claims, to be transferred by KeyBank into the Consolidated Estate Trust on the Effective Date pursuant to <u>Section 5.3.1</u> of this Plan; and

        (d)     all other tangible and intangible assets of the Debtors, including cash, cash equivalents, personal property, real property, property subject to the Auction Order, and the proceeds thereof, administered in the Debtors' Estates, other than those assets abandoned by the NA Khan Trustee pursuant to the *Order (I) Approving Global Settlement Agreement with Nancy L. Khan, (II) Limiting Notice Pursuant to Bankruptcy Rule 2002(i) in Certain Cases, and (III) Granting Certain Related Relief* (Case No. 19-04258) [NA Khan Doc No. 659].

        1.126   <u>U.S. Trustee</u> means the Office of the United States Trustee for the Western District of Michigan.

        1.127   <u>Unexpired Lease</u> means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

        1.128   <u>Unimpaired</u> means with respect to a Claim, a Claim that is not Impaired

        B.     <u>Rules of Interpretation</u>.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan or the Plan Supplement, as the same may be amended, waived, or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply;  and  (i) any  reference  to  an  Entity's  "subsidiaries"  means  its  direct  and  indirect subsidiaries.

        C.     <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, Distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or Distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed, or completed by

such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

        D.    <u>Exhibits and Plan Supplement</u>.  All exhibits to this Plan, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Plan Supplement and the filed exhibits upon written request to PrimeClerk.  Upon their filing, the Plan Supplement and the exhibits may be inspected (i) in the office of the Clerk of the Bankruptcy Court during normal business hours, (ii) at the Bankruptcy Court's website at http://www.miwb.uscourts.gov, or (iii) free of charge on the IOI Debtors' restructuring website at https://cases.primeclerk.com/InterlogicOutsourcing/, or Khan Trustee's restructuring website at https://cases.primeclerk.com/NajeebKhan/.

        E.    <u>Deemed Acts</u>.  Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of this Plan and/or Confirmation Order without any further act by any party.

## ARTICLE II:
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

        In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Article III</u>.

        2.1.    <u>General Administrative Expense Claims</u>.

        Subject to the terms of the Confirmation Order, each Holder of an Allowed Administrative Expense Claim, except for Priority Tax Claims, Professional Fee Claims, or Estate Trustee Fee Claims, against the Debtors shall receive cash equal to the Allowed amount of its Claim on the later of (a) the Initial Distribution Date, (b) the date such Administrative Expense Claim is Allowed, and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable.

        2.2.    <u>Professional Fee Claims</u>.

        All final requests for payment of Professional Fee Claims must be filed no later than 60 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  Allowed Professional Fee Claims shall be paid in cash in full.

        Objections to any Professional Fee Claim must be filed and served on the Consolidated Estate Trustee, the NA Khan Trustee, the Khan Entities Trustee and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim.

2.3.  Estate Trustee Fee Claims.

All final requests for payment of Estate Trustee Fee Claims must be filed no later than 60 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Estate Trustee Fee Claims shall be determined by the Bankruptcy Court. Allowed Estate Trustee Fee Claims shall be paid in Cash in full.

Objections to any Estate Trustee Fee Claim must be filed and served on the Consolidated Estate Trustee, the NA Khan Trustee, and the Khan Entities Trustee within 21 days after the filing of the final fee application with respect to the Estate Trustee Fee Claim.

2.4.  Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim against the Debtors shall receive cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date, (b) the date such Priority Tax Claim is Allowed, and (c) the date such Allowed Priority Tax Claim becomes due and payable, or as soon thereafter as is practicable.

# ARTICLE III:
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1.  Summary of Classification and Treatment of Classified Claims and Interests.

3.1.1  General.

(a)  Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, Confirmation, and Distributions pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

(b)  Consolidation of the Debtors.  This Plan provides for the consolidation of the Debtors and their Estates for purposes of describing treatment under this Plan, voting on this Plan, Confirmation, and making Distributions to the Holders of Allowed Claims.

(c)  Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

(d)  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, Distribution, and other benefits

provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies pursuant to the terms of this Plan, including all Claims, Causes of Action, and controversies arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party or Holders of Claims, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors, other than the Reserved Causes of Action, each of which Reserved Cause of Action shall be expressly preserved by and for the benefit of the Consolidated Estate Trust. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. The provisions of this Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

       3.1.2   Identification of Classes of Claims Against and Interests in the Debtors. The following chart assigns a number to each Class for purposes of identifying each separate Class:

| CLASS | CLAIM OR INTEREST |
|---|---|
| 1 | Secured Claims |
| 2 | Other Priority Claims |
| 3 | Khan Entities Ordinary Course Claims |
| 4-A | Khan/IOI General Unsecured Claims |
| 4-B | KeyBank General Unsecured Claim |
| 5 | Intercompany Claims |
| 6 | Punitive Damage Claims |
| 7 | Intercompany Interests |
| 8 | Existing Equity Interests |

      3.2.   Treatment of Claims against and Interests in the Debtors.

Each Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Consolidated Estate Trustee and such Holder. Unless otherwise indicated, each such Holder shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

3.2.1    Class 1:  Secured Claims.

(a)    <u>Classification</u>:  Class 1 consists of all Secured Claims.

(b)    <u>Treatment</u>:  Each Holder of Allowed Secured Claims against the Debtors shall receive, at the discretion of the Consolidated Estate Trustee:

      i.    the return of the property securing such Holder's Secured Claim;

      ii.    payment in full in cash equal to the Allowed amount of such Claim, with payment to be made on the later of (A) the Initial Distribution Date, and (B) five (5) Business Days following the date the Claim becomes an Allowed Claim; or

      iii.    treatment in any other manner that renders the Claim unimpaired under the Bankruptcy Code.

(c)    <u>Voting</u>:  Allowed Claims in Class 1 are Unimpaired.  Each Holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

3.2.2    Class 2:  Other Priority Claims.

(a)    <u>Classification</u>:  Class 2 consists of all Other Priority Claims.

(b)    <u>Treatment</u>:  Each Holder of an Allowed Other Priority Claim against the Debtors shall receive cash equal to the amount of such Allowed Claim on the later of (i) the Initial Distribution Date, (ii) the date such Other Priority Claim is Allowed, and (iii) the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is practicable.

(c)    <u>Voting</u>:  Allowed Claims in Class 2 are Unimpaired.  Each Holder of an Allowed Claim in Class 2 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

3.2.3    Class 3:  Khan Entities Ordinary Course Claims.

(a)    <u>Classification</u>:  Class 3 consists of all Khan Entities Ordinary Course Claims.

(b)    <u>Treatment</u>:  Each Holder of an Allowed Khan Entities Ordinary Course Claim shall receive payment in cash equal to the Allowed amount of such Claim on the later of (i) the Initial Distribution Date and (ii) five (5) Business Days following the date the Claim becomes an Allowed Claim.

(c)    <u>Voting</u>:  Allowed Claims in Class 3 are Unimpaired.  Each Holder of an Allowed Claim in Class 3 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.4    Class 4-A:  Khan/IOI General Unsecured Claims.

(a)    <u>Classification</u>:    Class 4-A consists of all Khan/IOI General Unsecured Claims.

(b)    <u>Treatment</u>:  Pursuant to Section 5.10 of this Plan, each Holder of an Allowed Khan/IOI General Unsecured Claim that is a Consenting Creditor shall receive on the Initial Distribution Date, or as soon thereafter as is practicable, and on subsequent Distribution Dates as specified in the Trust Agreement, a Pro Rata Distribution of 40% of the Net Available Proceeds under this Plan until such time as the Allowed amount of such Claim is paid in full.

Each Holder of an Allowed Khan/IOI General Unsecured Claim that is a Non-Consenting Creditor shall <u>not</u> receive any distribution from the Consenting Creditor Distribution Account, but such Holder shall receive, on the later of (i) the Initial Distribution Date, and (ii) five (5) Business Days following the date the Claim becomes an Allowed Claim, an amount equal to the lesser of (i) 10% of its Allowed Khan/IOI General Unsecured Claim and (ii) its Pro Rata share of funds deposited in the Non-Consenting Creditor Distribution Account in the amount of $300,000.

(c)    <u>Voting</u>:  Claims in Class 4-A are Impaired.  Therefore, each Holder of an Allowed Claim in Class 4-A shall be entitled to vote to accept or reject this Plan.

### 3.2.5    Class 4-B:  KeyBank General Unsecured Claim.

(a)    <u>Classification</u>:    Class 4-B consists of the KeyBank General Unsecured Claim.

(b)    <u>Allowance</u>:  The KeyBank General Unsecured Claim shall be deemed Allowed on the Effective Date in the aggregate amount of $142,300,000.

(c)    <u>Treatment</u>:  Pursuant to Section 5.10 of this Plan, KeyBank shall receive, on the Initial Distribution Date and on subsequent Distribution Dates, on account of its Allowed KeyBank General Unsecured Claim, Distributions of amounts up to the full amount of its Allowed Claim equal to (i) 60% of the Net Available Proceeds under this Plan until such time as the Allowed Claims of Consenting Creditors are paid in full, and (ii) 100% of the Net Available Proceeds under this Plan after the Allowed Claims of Consenting Creditors are paid in full.

(d)    <u>Voting</u>:  The Claim in Class 4-B is Impaired.  Therefore, the Holder of the Allowed Claim in Class 4-B shall be entitled to vote to accept or reject this Plan.

### 3.2.7 Class 5: Intercompany Claims.

(a)  Classification:  Class 5 consists of all Intercompany Claims.

(b)  Treatment: Intercompany Claims shall be released without any Distribution on account of such Claims.

(c)  Voting:  Allowed Claims in Class 5 are Impaired.  Each Holder of an Allowed Claim in Class 5 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.8 Class 6: Punitive Damage Claims.

(a)  Classification:  Class 6 consists of all Punitive Damage Claims.

(b)  Treatment:  On the Effective Date, Punitive Damage Claims shall be extinguished, and the Holders of such Claims shall not receive or retain any Distribution, property, or other value on account of such Claims.

(c)  Voting:  Allowed Claims in Class 6 are Impaired.  Each Holder of an Allowed Claim in Class 6 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

### 3.2.9 Class 7: Intercompany Interests

(a)  Classification:  Class 7 consists of all Intercompany Interests.

(b)  Treatment:  In the sole discretion of the Consolidated Estate Trustee, Intercompany Interests shall either be:

    i.      reinstated for administrative convenience; or

    ii.     released without any distribution on account of such Interests.

(c)  Voting:  Allowed Claims in Class 7 are either Unimpaired, in which case the Holders of Allowed Class 7 Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any Distribution under this Plan, in which case the Holders of Allowed Class 7 Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Class 7 Interest will not be entitled to vote to accept this Plan.

### 3.2.10 Class 8: Existing Equity Interests.

(a)  Classification:  Class 8 consists of all Existing Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, Existing Equity Interests shall be extinguished and the Holders of such Interests shall not receive or retain any Distribution, property, or other value on account of such Interests.

(c)    <u>Voting</u>:  Interests in Class 8 are Impaired.  Each Holder of an Allowed Interest in Class 8 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1.    <u>Impaired Classes of Claims Entitled to Vote on this Plan</u>.  Claims in Class 4-A (Khan/IOI General Unsecured Claims) and Class 4-B (KeyBank General Unsecured Claim) are Impaired, and the Holders of such Claims are entitled to vote to accept or reject this Plan.

4.2.    <u>Acceptance by an Impaired Class of Claims</u>.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class shall have accepted this Plan if, after excluding any Claims held by any Holder whose Claims have been designated pursuant to section 1126(e) of the Bankruptcy Code, the Holders of (a) at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept this Plan.

4.3.    <u>Presumed Acceptance by Unimpaired Classes</u>.  Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), and Class 3 (Khan Entities Ordinary Course Claims) are Unimpaired by this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders in such Classes are conclusively presumed to have accepted this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

4.4.    <u>Deemed Rejection by Certain Impaired Classes</u>.  Class 5 (Intercompany Claims), Class 6 (Punitive Damage Claims), and Class 8 (Existing Equity Interests), are Impaired by this Plan.  Holders in such Classes will not receive or retain any property under this Plan on account of their Claims or Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, such Holders are conclusively deemed to have rejected this Plan and therefore shall not be entitled to vote to accept or reject this Plan.

4.5.    <u>Presumed Acceptance or Deemed Rejection of the Plan</u>.  To the extent Interests in Class 7 (Intercompany Interests) are extinguished, each Holder of an Interest in Class 7 is deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Plan.  To the extent Interests in Class 7 (Intercompany Interests) are reinstated, each Holder of an Interest in Class 7 is presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject this Plan.

4.6.    <u>Reservation of Rights</u>.  The Plan Proponents reserve the right to amend, modify, or supplement this Plan for any reason, in accordance with <u>Section 12.13</u> of this Plan, the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V:
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.    <u>Plan Funding</u>.  This Plan shall be funded from the Trust Assets transferred to the Consolidated Estate Trust, including any proceeds therefrom.

5.2.    <u>Release of KeyBank Liens</u>.  On the Effective Date, the liens and security interests asserted by KeyBank against NA Khan, the Khan Entities, and the IOI Debtors shall be deemed avoided and preserved for the benefit of the Consolidated Estate.

5.3.    <u>Establishment of the Consolidated Estate Trust</u>.

5.3.1    On or before the Effective Date, the IOI Debtors, the NA Khan Trustee, the Khan Entities Trustee, and the Consolidated Estate Trustee shall execute the Trust Agreement.  On the Effective Date, (a) the Consolidated Estate Trust shall be created, and (b) the Trust Assets shall be transferred to the Consolidated Estate Trust.

5.3.2    The Trust Assets shall include any KeyBank Third Party Claims, to be transferred by KeyBank on the Effective Date to the Consolidated Estate Trust, subject to the right of KeyBank to require the reassignment to KeyBank of any KeyBank Third Party Claims that would provide a basis for the defense of any claims asserted by any person against KeyBank, <u>provided</u> that following any such reassignment, KeyBank shall have all rights, title, and interests in and to such KeyBank Third Party Claims for purposes of defending itself against any claims asserted against KeyBank, and pursuing affirmative recovery on such claims; <u>provided further</u> that any affirmative recovery on such claims, after reimbursement of all legal fees and other costs and expenses incurred by KeyBank in connection with, preparing for, or conducting litigation involving such claims, shall, following entry of a Final Order(s) disposing of such litigation, be remitted to the Consolidated Trust Estate.

5.4.    <u>Appointment of the Consolidated Estate Trustee</u>.

5.4.1    Subject to the terms of this Plan, as of the Effective Date, the Consolidated Estate Trustee shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee and the exclusive representative of the Estates or any corresponding provision of federal or state laws and shall succeed to all of the Debtors' and the Estates' rights.  The powers, rights, and responsibilities of the Consolidated Estate Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Trust Agreement.

5.4.2    Subject to the terms of this Plan, the Consolidated Estate Trustee, in accordance with the Trust Agreement, this Plan, and the Confirmation Order, shall liquidate the Trust Assets and distribute the proceeds thereof in accordance with this Plan.  The Consolidated Estate Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

5.4.3    Subject to the terms of this Plan, all corporate-governance powers with respect to the IOI Debtors and the Khan Entities shall be transferred as of the Effective Date to the Consolidated Estate Trustee in accordance with the Trust Agreement. After the Effective Date, the Consolidated Estate Trustee may from time to time dissolve the IOI Debtors and the Khan Entities as appropriate, pursuant to the terms of the Trust Agreement.

5.5.    Beneficiaries of the Consolidated Estate Trust.  The Consolidated Estate Trust Beneficiaries shall be the beneficiaries of the Consolidated Estate Trust.  The Consolidated Estate Trust Beneficiaries shall be bound by the Trust Agreement.  The interests of the Consolidated Estate Trust Beneficiaries in the Consolidated Estate Trust shall be uncertificated and nontransferable except upon death of the interest Holder or by operation of law.

5.6.    Vesting and Transfer of Trust Assets to the Consolidated Estate Trust.  Pursuant to section 1141(b) of the Bankruptcy Code, the Trust Assets shall vest in the Consolidated Estate Trust as of the Effective Date, free and clear of all Liens, Claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Consolidated Estate Trustee may abandon or otherwise not accept any non-Cash Trust Assets that the Consolidated Estate Trustee believes, in good faith, have no value to the Consolidated Estate Trust.  Any non-Cash Trust Assets that the Consolidated Estate Trustee so abandons or otherwise does not accept shall not be property of the Consolidated Estate Trust.

5.7.    Consenting Creditor and Non-Consenting Creditor Distribution Accounts.

5.7.1    On the Effective Date, the Consolidated Estate Trustee shall establish the Consenting Creditor Distribution Account to be funded from time to time, as provided in this Plan, with forty percent (40%) of the then Net Available Proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, for the purpose of making Distributions to the Holders of Allowed Khan/IOI General Unsecured Claims that are Consenting Creditors, as provided in Section 3.2.3(b) of this Plan.  Any funds remaining in the Consenting Creditor Distribution Account after all Distributions have been made to Consenting Creditors pursuant to Section 3.2.3(b) of this Plan shall be remitted to the Consolidated Estate Trustee and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

5.7.2    On the Effective Date, the Consolidated Estate Trustee shall establish the Non-Consenting Creditor Distribution Account in the amount of $300,000 for the purpose of making Distributions to the Holders of Allowed Khan/IOI General Unsecured Claims that are Non-Consenting Creditors, as provided in Section 3.2.4(b) of this Plan.  Any funds remaining in the Non-Consenting Creditor Distribution Account after all Distributions have been made to Non-Consenting Creditors pursuant to Section 3.2.4(b) of this Plan shall be remitted to the Consolidated Estate Trustee and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

5.8.    Estate Trustee Fees Escrow Account.  On the Effective Date, the Consolidated Estate Trustee shall establish an escrow account (the "Estate Trustee Fees Escrow Account") in an amount equal to all asserted Estate Trustee Fee Claims outstanding as of the Effective Date

(including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable from the Debtors' Estates). Amounts held in the Estate Trustee Fees Escrow Account shall not constitute property of the Consolidated Estate Trust. The Estate Trustee Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Estate Trustee Fees Escrow Account following payment to all Holders of Allowed Estate Trustee Fee Claims under this Plan, any such amounts shall be turned over to the Consolidated Estate Trust and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

5.9.    Professional Fees Escrow Account.  On the Effective Date, the Consolidated Estate Trustee shall establish the Professional Fees Escrow Account in an amount equal to all asserted Professional Fee Claims outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable from the Debtors' estates). Amounts held in the Professional Fees Escrow Account shall not constitute property of the Consolidated Estate Trust.  The Professional Fees Escrow Account may be an interest-bearing account.  In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all Holders of Allowed Professional Fee Claims under this Plan, any such amounts shall be turned over to the Consolidated Estate Trust and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

5.10.    Distributions to KeyBank and Consenting Creditors.

(a)    Initial Distribution to KeyBank and Funding of Consenting Creditor Distribution Account.  Subject to the provisions of Section 5.10(d), on the Initial Distribution Date, the Consolidated Estate Trustee shall (i) distribute sixty percent (60%) of the then Net Available Proceeds to KeyBank for application against the KeyBank General Unsecured Claim, and (ii) deposit forty percent (40%) of the then Net Available Proceeds in the Consenting Creditor Distribution Account; provided, however, that the Consolidated Estate Trustee shall retain from the Net Available Proceeds prior to making the foregoing distribution and deposit sufficient funds as the Consolidated Estate Trustee reasonably determines are required to establish adequate reserves for (A) Disputed Administrative Expense Claims, Priority Tax Claims and Other Priority Claims (collectively, the "Disputed Administrative and Priority Claims"), (B) the defense of Third Party Claims, and (C) costs and expenses reasonably anticipated to be incurred by the Consolidated Estate Trustee in administering the Consolidated Estate Trust, including litigation of the Reserved Causes of Action and KeyBank Third Party Claims (all of the foregoing reserves, collectively, the "Reserves").

(b)    Initial Distributions to Consenting Creditors.  On the Initial Distribution Date, or as soon thereafter as is practicable, the Consolidated Estate Trustee shall distribute to each Consenting Creditor that holds an Allowed Khan/IOI General Unsecured Claim for application against such Claim an amount equal to its Pro Rata share of the funds on deposit in the Consenting Creditor Distribution Account.

(c)    Subsequent Distributions.  Subject to the provisions of Section 5.10(d), subsequent Distributions of Net Available Proceeds as provided in Sections 3.2.4(b) and 3.2.5(c) of this Plan shall be made by the Consolidated Estate Trustee in accordance with the terms of

this Plan and the Trust Agreement. Reserves established pursuant to Section 5.10(a) for Disputed Administrative and Priority Claims shall be released at such time as the Claim has been resolved through agreement of the Holder of the Claim and the Consolidated Estate Trustee, or entry of a Final Order resolving the Claim, and (i) that portion of the released funds shall be paid to the Holder of the Claim in satisfaction of the Allowed Claim, and (ii) the balance of the released funds, if any, shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan. The Consolidated Estate Trustee shall release Reserves established to pay costs and expenses anticipated to be incurred in administering the Consolidated Estate Trust to the extent the amount reserved exceeds the amount reasonably determined by the Consolidated Estate Trustee to be necessary for such purpose, and the released funds shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan.

(d) <u>Distribution Adjustment</u>. In the event that Holders of Khan/IOI General Unsecured Claims recover amounts from any constructive trust, forfeiture, or restitution award prior to the Distributions required by Section 5.10(a) or 5.10(c) of this Plan, arising or established as a result of civil or criminal proceedings initiated against NA Khan and/or Nancy Khan by any governmental authority, including criminal restitution, an amount equal to the aggregate amount recovered by the Holders of Khan/IOI General Unsecured Claims shall first be deducted from the Net Available Proceeds and paid to KeyBank for application against the KeyBank General Unsecured Claim prior to the Distribution required under Section 5.10(a) or 5.10(c) of this Plan.

5.11. <u>Consolidated Estate Trust Expenses</u>. Subject to the provisions of the Trust Agreement, all costs, expenses and obligations incurred by the Consolidated Estate Trustee in administering this Plan, the Consolidated Estate Trust, or in any manner connected, incidental, or related thereto, or in effecting Distributions from the Consolidated Estate Trust, shall be a charge against the Trust Assets that remain after payment in Cash and in full of all Allowed Administrative Expense Claims (including Professional Fee Claims), Estate Trustee Fee Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims. Such expenses shall be paid in accordance with the Trust Agreement.

5.12. <u>Role of the Consolidated Estate Trustee</u>.

(a) <u>Exclusive Trustee</u>. The Consolidated Estate Trustee shall be the exclusive trustee of the Consolidated Estate Trust and the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Consolidated Estate Trustee shall be specified in the Trust Agreement and shall include the authority and responsibility to: (i) receive, liquidate, manage, invest, supervise, and protect the Trust Assets; (ii) pay taxes or other obligations incurred by the Consolidated Estate Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Trust Assets; (iv) calculate and effectuate distributions of Trust Assets; (v) investigate, prosecute, compromise, and settle, in accordance with the specific terms of this Plan and the Trust Agreement, Reserved Causes of Action vested in the Consolidated Estate Trust; (vi) resolve issues involving Claims and Interests in accordance with this Plan; (vii) undertake all administrative functions of this Plan, including the payment of fees payable to

the U.S. Trustee and the ultimate closing of the Debtors' Chapter 11 Cases. Pursuant to the terms of this Plan, the Consolidated Estate Trustee is the successor to the Debtors and their Estates.

       (b)    <u>Possession of Books and Records</u>.  On the Effective Date, the Consolidated Estate Trust shall:  (i) take possession of all books, records, and files of the Debtors and their respective Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Consolidated Estate Trust determines, in accordance with the Trust Agreement, that retention of same is no longer necessary or required.

       (c)    <u>Investment of Cash</u>.  The Consolidated Estate Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; <u>provided</u>, <u>however</u>, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

       (d)    <u>Right to Object</u>.  The Consolidated Estate Trust shall have the right to object to Claims and Interests.

       (e)    <u>Quarterly Reports</u>.  In no event later than 30 days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Consolidated Estate Trust has been distributed in accordance with this Plan, the Consolidated Estate Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all distributions made by the Consolidated Estate Trustee under this Plan through each applicable reporting period.

       (f)    <u>Tax Returns</u>.  The Consolidated Estate Trustee shall file tax returns for the Consolidated Estate Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan.  The Consolidated Estate Trust also shall annually (for tax years in which distributions from the Consolidated Estate Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; <u>provided</u>, <u>however</u>, that no such statement need be sent to any Class that is not expected to receive any distribution from the Consolidated Estate Trust.  The Consolidated Estate Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Consolidated Estate Trust Beneficiaries in accordance with their relative beneficial interests in the Consolidated Estate Trust.  As soon as possible after the Effective Date, the Consolidated Estate Trust shall make a good faith valuation of assets of the Consolidated Estate Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Consolidated Estate Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Consolidated Estate Trust that are required by any Governmental Unit for taxing purposes.  The Consolidated Estate Trust may request an expedited determination of taxes of the Debtors or of the Consolidated Estate Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Consolidated Estate Trust for all taxable periods through the dissolution of the Consolidated Estate Trust.  The Consolidated Estate Trust shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Consolidated

25

Estate Trust.  The Consolidated Estate Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Consolidated Estate Trust shall be subject to any such withholding and reporting requirements.

(g)    Allowed Tax Obligations.  The Consolidated Estate Trust shall be responsible for payment of all taxes imposed on the Consolidated Estate Trust.

5.13.    Preservation of Right to Conduct Investigations.    The preservation for the Consolidated Estate Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committees prior to the Effective Date shall vest with the Consolidated Estate Trust and shall continue until dissolution of the Consolidated Estate Trust.

5.14.    Prosecution and Resolution of Causes of Action.  From and after the Effective Date, prosecution and settlement of all Reserved Causes of Action transferred to the Consolidated Estate Trust shall be the sole responsibility of the Consolidated Estate Trustee pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Consolidated Estate Trust shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle, or abandon such Reserved Causes of Action as the sole representative of the Debtors' Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.  Proceeds recovered from all Reserved Causes of Action will be deposited into the Consolidated Estate Trust and will be distributed by the Consolidated Estate Trustee to beneficiaries in accordance with the provisions of this Plan and Trust Agreement.  **All Causes of Action that are not expressly released or waived under this Plan are Reserved Causes of Action and preserved and vest in the Consolidated Estate Trust in accordance with this Plan.  No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Consolidated Estate Trustee will not pursue any and all Reserved Causes of Action against such Person or Entity.**  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan.  No Causes of Action that have been otherwise released or exculpated shall be transferred to the Consolidated Estate Trust; the Consolidated Estate Trustee shall not have standing to pursue such released or exculpated claims or Causes of Action; and all such claims and Causes of Action shall be waived, released, and discharged pursuant to this Plan.

5.15.    Federal Income Tax Treatment of the Consolidated Estate Trust for the Trust Assets.  For federal income tax purposes, it is intended that the Consolidated Estate Trust be classified as a liquidation trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Consolidated Estate Trust Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Trust Assets (to the extent of the value of their respective share in the applicable Trust Assets) and then contributed such interests

to the Consolidated Estate Trust, and the Consolidated Estate Trust Beneficiaries will be treated as the grantors and owners thereof.

5.16.   <u>Limitation of Liability</u>.   No recourse will ever be had, directly or indirectly, against the Consolidated Estate Trustee or its officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Consolidated Estate Trust under this Plan or by reason of the creation of any indebtedness by the Consolidated Estate Trust or the Consolidated Estate Trustee under this Plan.   All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Trust Assets.   The Consolidated Estate Trustee and its agents shall not be deemed to be the agent for any Holder of a Claim in connection with distributions made under this Plan.   The Consolidated Estate Trustee and its officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; <u>provided</u>, <u>however</u>, that the limitations of liability set forth in this section will not apply to any gross negligence or willful misconduct by any of the foregoing.

5.17.   <u>Term of the Consolidated Estate Trust</u>.   The Consolidated Estate Trustee shall be discharged and the Consolidated Estate Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Trust Assets have been liquidated, (c) all duties and obligations of the Consolidated Estate Trustee under the Trust Agreement have been fulfilled, (d) all Distributions required to be made under this Plan and the Trust Agreement have been made, and (e) the Debtors' Chapter 11 Cases have been closed.

5.18.   <u>Retention of Professionals</u>.   Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Consolidated Estate Trustee may retain and compensate attorneys and other professionals to assist in their duties, on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate, without Bankruptcy Court approval.   Subject to the terms of this Plan, upon the appointment of the Consolidated Estate Trustee under the Trust Agreement, any Professionals retained by the Debtors shall no longer be obligated or required to continue to represent the Debtors after the Effective Date (unless such Professionals have agreed in writing to continue such representation) and, if such Professional elects to withdraw from such representation, such Professional shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Chapter 11 Cases and the confirmation of this Plan.   The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation.   However, such Professionals shall be deemed retained after such date with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions seeking the enforcement of the provisions of this Plan or the Confirmation Order.

5.19.   <u>Conflicts between the Trust Agreement and the Plan</u>.   In the event of any inconsistencies or conflict between the Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

5.20.   Cancellation of Existing Securities and Agreements.   Except for purposes of evidencing a right to Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or Interests or rights of any Holder of a Claim against or Interest in any of the Debtors, including, but not limited to, all indentures, notes, bonds, and share certificates evidencing such Claims and Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Debtors but not as against any other Person or Entity.

5.21.   Automatic Stay.   Subject to the terms of this Plan, the automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

5.22.   Committees.   Upon the Effective Date, the Committees shall be automatically dissolved, and their members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Chapter 11 Cases.  The retention and employment of the Professionals retained by the Committees shall terminate as of the Effective Date; provided, however, that the Committees shall exist, and their Professionals shall be retained, after such date solely with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of this Plan or the Confirmation Order.

5.23.   Books and Records.   Subject to the terms of this Plan, as part of the appointment of the Consolidated Estate Trustee, to the extent not already transferred on the Effective Date, the Debtors, the NA Khan Trustee and the Khan Entities Trustee shall transfer dominion and control over all of their books and records to the Consolidated Estate Trustee in whatever form, manner, or media those books and records existed immediately prior to the transfer thereof to the Consolidated Estate Trustee.  The Consolidated Estate Trustee may abandon or dispose of all such books and records on or after ninety (90) days from the Effective Date; provided, however, that the Consolidated Estate Trustee shall not abandon or dispose of any books and records (a) that are reasonably likely to pertain to pending or contemplated litigation in which the Debtors or their current or former officers or directors are or likely will become a party and/or (b) in a manner that fails to prevent disclosure of account numbers and personally identifiable information of customers, employees of customers, and other third parties.  Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required, to effectuate the aforementioned abandonment or disposal of the books and records of the Debtors.

5.24.   D&O / E&O Insurance Policies.   No prepaid D&O / E&O Insurance Policy shall be cancelled, and the Debtors' directors, officers, and employees who have valid claims against the D&O / E&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O / E&O Insurance Policies to the extent of the coverage provided by the D&O / E&O Insurance Policies.  As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O / E&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors and assigned to the Consolidated Estate Trustee.

5.25.    Additional Transactions Authorized under This Plan.  On or after the Effective Date, the Consolidated Estate Trustee shall be authorized to take any such actions as may be necessary or appropriate to carry out the provisions of this Plan.

5.26.    Comprehensive Settlement of Claims and Controversies.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are fair, equitable, and reasonable and are in the best interests of (a) the Debtors and their Estates and their respective property and (b) Claim and Interest Holders.

## ARTICLE VI:
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND INSURANCE POLICIES

6.1.    Deemed Rejection of Executory Contracts and Unexpired Leases.  Unless already assumed or rejected by Final Order in the Chapter 11 Cases, all executory contracts and unexpired leases of the Debtors that are not the subject of a pending application to assume as of the Confirmation Date shall be deemed rejected on the Effective Date except as provided in this Plan, including, but not limited to, Sections 6.3 and 6.4.

6.2.    Rejection Claims.

(a)    Rejection by the Plan.  Holders of Claims as a result of the rejection of an executory contract or unexpired lease by the terms of this Plan shall file a Proof of Claim for rejection damages no later than thirty (30) days after the Effective Date, failing which such Claim shall be disallowed.

(b)    Rejection by Means Other than by the Plan.  Holders of Claims as a result of the rejection of an executory contract or unexpired lease, other than by the terms of this Plan, shall follow the procedures for filing a claim previously set forth in such order authorizing rejection, failing which such Claim shall be disallowed in its entirety.

6.3.    Assumed Contracts and Unexpired Leases.  The Debtors shall assume those Executory Contracts and Unexpired Leases set forth on an exhibit attached to the Plan Supplement.  If such counterparty to the proposed Executory Contracts and Unexpired Leases to be assumed under this Plan disagrees with the cure amount set forth on an exhibit attached to the Plan Supplement, the party must file an objection with the Bankruptcy Court not later than (7) days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (a) each such assumption is in the best interest of the Debtors and their Estates, (b) the

requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (c) the assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

6.4.    Insurance Policies and Agreements.

6.4.1    To the extent that the insurance policies issued to, or insurance agreements entered into by, any Debtor before the applicable Petition Date constitute Executory Contracts under section 365 of the Bankruptcy Code, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute (a) approval of such assumption pursuant to section 365(a) of the Bankruptcy Code, and (b) a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Consolidated Estate, and all parties in interest.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order, or agreed to by the IOI Debtors, the NA Khan Trustee, and the Khan Entities Trustee before the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

6.4.2    Nothing contained in this Plan will constitute a waiver of any claim, right, or Cause of Action that any Debtor or the Consolidated Estate Trust may hold against an insurer of any of the Debtors under any policy of insurance or insurance agreement.

6.5.    Postpetition Contracts and Leases.  All contracts, agreements, and leases that were entered into by the Debtors, or assumed by the Debtors, after the applicable Petition Date shall be deemed assigned by the Debtors to the Consolidated Estate Trustee on the Effective Date.

6.6.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.  Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.   Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**ARTICLE VII:**
**PROVISIONS GOVERNING DISTRIBUTIONS**

7.1.    Distributions Made by the Consolidated Estate Trustee.  All Distributions under this Plan shall be made by the Consolidated Estate Trustee pursuant to this Plan and the Trust

Agreement. All Distributions under this Plan shall be made in accordance with the priorities established by this Plan.

7.2.    <u>Timing and Calculation of Amounts to Be Distributed</u>. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in <u>Article VIII</u>. Except as otherwise provided in this Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in this Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

7.3.    <u>Single Recovery</u>. There will be only a single recovery on account of each Allowed Claim. No Holder of an Allowed Claim will be entitled to receive more than payment in full of its Allowed Claim, and each Claim will be administered and treated in the manner provided by this Plan until payment in full of that Allowed Claim.

7.4.    <u>Distributions on Account of Claims Allowed after the Effective Date</u>. Except as otherwise provided in this Plan, the Confirmation Order, or a Final Order, or as agreed to by the relevant parties, Distributions under this Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

7.5.    <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Notwithstanding any provision to the contrary in this Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Consolidated Estate Trustee, in accordance with this Plan and the Trust Agreement, shall establish appropriate Reserves for potential payment of such Claims.

7.6.    <u>Means of Cash Payment</u>. Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Consolidated Estate Trustee by checks or wire transfers. Cash payments to foreign creditors may be made, at the option of the Consolidated Estate Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

7.7.    <u>Minimum; De Minimis Distributions</u>. No Cash payment of less than $25.00, in the reasonable discretion of the Consolidated Estate Trustee, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

7.8.    <u>Withholding and Reporting Requirements</u>. In connection with this Plan and all Distributions thereunder, the Consolidated Estate Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. In accordance with the Trust Agreement, the Consolidated Estate Trustee shall be authorized to take

any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Consolidated Estate Trustee believes are reasonable and appropriate.  All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.  No Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Consolidated Estate Trustee for the payment and satisfaction of such tax obligations.

7.9.    <u>Compliance Matters</u>.  The Consolidated Estate Trustee shall be entitled to allocate and distribute all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens, and similar encumbrances.

7.10.    <u>Setoff and Recoupment</u>.  The Consolidated Estate Trustee may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Estates or the Consolidated Estate Trustee may have against the Holder of such Claim; <u>provided</u>, <u>however</u>, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Consolidated Estate Trustee of any claim that the Estates or the Consolidated Estate Trustee may assert against any Holder of an Allowed Claim.

7.11.    <u>Undeliverable or Non-Negotiated Distributions and Unclaimed Property</u>.  If any Distribution is returned as undeliverable, no further Distributions to the applicable Holder shall be made unless and until the Consolidated Estate Trustee is notified in writing of such Holder's then-current address, at which time the undelivered Distribution shall be made to such Holder without interest or dividends; <u>provided</u>, <u>however</u>, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Distribution is made.  Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all undeliverable Distributions under this Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Consolidated Estate Trust.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed Distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the Consolidated Estate Trustee by the Holder of the relevant Allowed Claim within the 90-calendar-day period.  After such date, Distributions to the Holder of the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to

the Consolidated Estate Trust in accordance with the terms hereof, notwithstanding any federal or state escheat laws to the contrary.

7.12.  Claims Paid by Third Parties.  To the extent a Holder receives a Distribution on account of a Claim and also receives payment from a party, other than an insurer or surety, that is not the Consolidated Estate Trustee on account of such Claim, such Holder shall, within thirty calendar days of receipt thereof, repay or return the Distribution to the Consolidated Estate Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of the Claim as of the date of any such Distribution under this Plan.

**ARTICLE VIII:**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

8.1.  Allowance of Claims.  After the Effective Date, the Consolidated Estate Trustee shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately before the Effective Date, other than Claims that are Allowed under this Plan or pursuant to a Final Order entered by the Bankruptcy Court on or before the Effective Date.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

8.2.  Claims Administration Responsibilities.  Except as otherwise specifically provided in this Plan, after the Effective Date, the Consolidated Estate Trustee shall have the sole authority to:  (a) reconcile Claims, file, litigate to judgment, or withdraw objections to Claims; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust (or cause to be administered or adjusted) the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

8.3.  Adjustment to Claims Without Objection.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Consolidated Estate Trustee without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.4.  Time to File Objections to Claims.  Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

8.5.  Disallowance of Claims.  Any Claims held by an Entity from which property may be recoverable pursuant to a Reserved Cause of Action under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Reserved Causes of Action or

Avoidance Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Estates, the Consolidated Estate, or the Consolidated Estate Trust by that Entity have been turned over or paid to the Consolidated Estate Trust.

8.6.    <u>Late-Filed Claims</u>.  Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims will not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late-filed Claims have been deemed timely filed by a Final Order.

8.7.    <u>Amendments to Claims</u>.  On or after the Effective Date, except as provided in this Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court and the Consolidated Estate Trustee, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

8.8.    <u>No Distributions Pending Allowance</u>.  If an objection to a Claim or portion thereof is filed as set forth in <u>Article VIII</u> of this Plan, no payment or Distribution provided under this Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

8.9.    <u>Distributions after Allowance</u>.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Consolidated Estate Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, less any previous Distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

8.10.    <u>Estimation</u>.  The IOI Debtors or the Chapter 11 Trustees may, at any time prior to the Effective Date, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the IOI Debtors or the Chapter 11 Trustees have objected to such Claim.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  Notwithstanding the foregoing, the Consolidated Estate Trustee may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim and may request the Bankruptcy Court to estimate any contingent or Disputed Claims subsequent to the Effective Date.

8.11.    <u>Remedies Not Exclusive</u>.  All of the Claims objection and estimation procedures set forth in this <u>Article VIII</u> are cumulative and not exclusive of one another.

**ARTICLE IX:**
**CONFIRMATION AND CONSUMMATION OF THE PLAN**

9.1.    <u>Conditions to Effective Date</u>.  This Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived after entry of the Confirmation Order, in accordance with <u>Section 9.2</u> of this Plan:

9.1.1    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to the Plan Proponents, the Committees and KeyBank, and the Confirmation Order shall be a Final Order.

9.1.2    All applicable Definitive Documentation, including the Trust Agreement, in each case reasonably acceptable to the Plan Proponents, the Committees and KeyBank, shall be effective.

9.1.3    The Professional Fees Escrow Account and the Estate Trustee Fees Escrow Account shall be established and funded.

9.1.4    The aggregate amount of Priority Tax Claims and Other Priority Claims asserted as of the Effective Date shall not exceed $25,000.00.

9.1.5    The aggregate amount of Khan Entities Ordinary Course Claims asserted as of the Effective Date shall not exceed $50,000.00.

9.2.    <u>Waiver of Conditions</u>.  Each of the conditions set forth in <u>Section 9.1</u> of this Plan may be waived in whole or in part with the express written consent of each of the IOI Debtors, the NA Khan Trustee, the Khan Entities Trustee, the Committees, and Key Bank, in their respective sole discretion.

9.3.    <u>Continued Liquidation by Chapter 11 Trustees</u>.  Notwithstanding the occurrence of the Effective Date, the Chapter 11 Trustees may continue to liquidate non-cash assets upon the agreement of the Consolidated Estate Trustee and the respective Chapter 11 Trustee.

9.4.    <u>Vacatur of Confirmation Order</u>.  If the Confirmation Order is vacated, which shall occur automatically upon failure of the Effective Date:  (a) this Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of 120 days after the date the Confirmation Order is vacated.

9.5.    <u>Notice of Effective Date</u>.  The IOI Debtors and the Chapter 11 Trustees, as applicable, shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

## ARTICLE X:
## EFFECT OF PLAN CONFIRMATION

10.1.    <u>Binding Effect</u>.  On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors or the Consolidated Debtor in connection with this Plan or the Plan Supplement, shall be binding upon the Debtors and their Estates, the Consolidated Debtor, the NA Khan Trustee, the Khan Entities Trustee, the Consolidated Estate Trust, and all Holders of Claims against and Interests in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan. Except as expressly provided otherwise in this Plan, all agreements, instruments, and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

<u>KeyBank Releases</u>.  In exchange for, among other things, (a) the agreement of KeyBank to limit the amount to be distributed to it from Net Available Proceeds in accordance with this Plan, (b) KeyBank's agreement to the avoidance of its asserted liens and security interests against the Debtors and preservation of those liens and security interests for the benefit of the Consolidated Estate, (c) KeyBank's transfer of the KeyBank Third Party Claims, subject to the provision of <u>Section 5.3.2</u>, to the Consolidated Estate Trust, and (d) KeyBank's agreement to be a "Releasing Party," KeyBank shall be included as a "Released Party" in the Plan Releases.

10.2.    **<u>Releases by the Debtors</u>**.

**10.2.1 Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by each of the Debtors and their Estates, jointly and severally, from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors that any of the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating directly or indirectly to, or in any manner arising from, in whole or in part, any of the Debtors, the Debtors' operation of their respective businesses prior to the Petition Date, any alleged fraudulent activity undertaken by NA Khan or any alleged fraudulent activity related, directly or indirectly, to the other Debtors prior to the Petition Date, the Debtors' or their Estates' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the pursuit of entry of the Confirmation Order, the pursuit of consummation of this Plan, the administration and implementation of this Plan, including the Distribution of property under this**

Plan or any other related agreement, or based on or relating, directly or indirectly, to any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan and do not release any right to enforce this Plan or Confirmation Order.

**10.2.2 Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's specific factual findings that the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Consolidated Debtor, the Estates or Consolidated Estate Trust asserting any claim or Cause of Action released pursuant to the Debtor Releases.**

10.3.    <u>**Releases by Holders of Claims and Interests**</u>.

**10.3.1 As of the Effective Date, each Releasing Party is deemed to have released and discharged each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of any of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating, directly or indirectly to, or in any manner arising from, in whole or in part, any of the Debtors, the Debtors' operation of their respective businesses prior to the Petition Date, any alleged fraudulent activity undertaken by NA Khan or any alleged fraudulent activity related directly or indirectly to the other Debtors prior to the Petition Date, the Debtors' or their Estates' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the pursuit of entry of the Confirmation Order, the pursuit of consummation of this Plan, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or based on or relating, directly or indirectly, to any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan and do not release any right to enforce this Plan or Confirmation Order.**

10.3.2 **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Releases, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's specific factual findings that the Third-Party Releases are: (a) consensual; (b) essential to the confirmation of this Plan; (c) necessary in order to mitigate claims against the Estates; (d) given in exchange for substantial assets representing good and valuable consideration provided by the Released Parties; (e) a good-faith settlement and compromise of the Claims released by the Third-Party Releases; (f) in the best interests of the Debtors and their Estates; (g) fair, equitable, and reasonable; (h) given and made after due notice and opportunity for hearing; and (i) a bar to any of the Releasing Parties or the Consolidated Estate Trust asserting any claim or Cause of Action released pursuant to the Third-Party Releases.**

10.4. **Exculpation.**

10.4.1 **From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective current or former employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any Post-Petition Date act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing this Plan, the Plan Supplement, the Disclosure Statement, the solicitation of acceptances of this Plan, Confirmation, and the pursuit thereof, the consummation of this Plan, the administration of this Plan, the property to be distributed under this Plan, or any other Post-Petition Date act taken or omitted to be taken in connection with the Chapter 11 Cases or implementation of this Plan.**

10.4.2 **Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Debtors' Estates and the Consolidated Debtor shall neither have, nor incur any liability to any Entity for any exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, willful misconduct or gross negligence.**

10.4.3 **Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

10.5. **Injunctions .**

10.5.1 **Injunction Related to Exculpation. Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or Cause of Action, or right to assert damages of any nature whatsoever, of the types described in Section 10.4 of**

this Plan relating to any of the Debtors, the Consolidated Debtor, or any of their respective assets and property and/or the Estates, the Chapter 11 Cases, this Plan, the Plan Supplement, and/or the Disclosure Statement, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Exculpated Party or its property on account of such exculpated or released liabilities, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged or released under this Plan; and/or (e) commencing or continuing in any manner any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

10.5.2  **Injunction Related to Releases**.  Except as expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or Cause of Action, or right to assert damages of any nature whatsoever, of the types described in **Section 10.3** of this Plan relating to the Debtors, the Consolidated Debtor, or any of their respective assets and property and/or the Estates, the Chapter 11 Cases, this Plan, the Plan Supplement, and/or the Disclosure Statement are, and shall be, permanently, forever, and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other Causes of Action: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged or released under this Plan; and/or (e) commencing or continuing in any manner any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

10.5.3  **Channeling Injunction**.  Except as expressly provided in this Plan, or the Confirmation Order, all Persons and Entities that hold, have held, or may hold a Third Party Claim against a Released Party are, and shall be,

**permanently, forever, and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Released Party or its property on account of such Third Party Claim, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitration, administrative, or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting, or in any way enforcing in any manner, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any Third Party Claim; and/or (e) commencing or continuing in any manner any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. The sole source of recovery for Third Party Claims shall be the Trust Assets. Any Cause of Action based upon a Third Party Claim, whether direct, indirect, derivative or otherwise shall only be asserted against the Consolidated Estate Trust. The Consolidated Estate Trustee shall be vested with, and entitled to assert, all defenses, claims, counterclaims, rights of setoff and other remedies with respect to any Third Party Claims.**

10.6.   <u>Survival of Indemnification and Exculpation Obligations</u>.  The obligations of the IOI Debtors to indemnify and exculpate any past and present directors, officers, agents, employees, and representatives who provided services to the IOI Debtors as of or after the Petition Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any of such officers, directors, agents, employees, and representatives, based upon any act or omission related to service with, for or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of this Plan and shall be assumed by the Consolidated Estate Trust; <u>provided</u>, <u>however</u>, that none of the IOI Debtors, the Khan Entities, or the Consolidated Estate Trust shall have any indemnification or exculpation obligation to NA Khan or any Khan Related Party, or any Entity which is determined in a Final Order to have participated in, or aided and abetted, fraudulent activity undertaken by NA Khan or any Khan Related Party.  For the avoidance of doubt, this <u>Section 10.6</u> affects only the obligations of the IOI Debtors and Consolidated Estate Trust with respect to any indemnity or exculpation owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Entity, including any provider of director and officer insurance, owed to or for the benefit of such past and present directors, officers, agents, employees, and representatives of the Debtors.

10.7.   <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.8.    Liability to Governmental Units.  Nothing in the Confirmation Order or this Plan discharges, releases, resolves, precludes, exculpates, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Confirmation Date; (c) any police or regulatory liability to a Governmental Unit to the extent of such Entity's liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date; or (d) any liability to a Governmental Unit on the part of any Person other than the Debtors or Consolidated Debtor.  For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and Interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code, or limit the Debtors' or Consolidated Debtor's rights under section 525 of the Bankruptcy Code.  Nothing in the Confirmation Order or this Plan shall affect any setoff or recoupment rights of any Governmental Unit.

10.9.    No Discharge of NA Khan.  Notwithstanding anything else to the contrary in this Plan, (a) NA Khan shall not be entitled to a discharge of any debt arising before the entry of the Confirmation Order, (b) all debts of NA Khan as of entry of the Confirmation Order are excepted from discharge, and (c) NA Khan is deemed to have waived his right to a discharge as of the entry of the Confirmation Order.

**ARTICLE XI:**
**RETENTION OF JURISDICTION**

11.1.    Retention of Jurisdiction.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim, and the resolution of any objections to allowance or disallowance, priority, the secured or unsecured status, or amount of Claims or Interests;

(b)    resolve any matters related to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors or Consolidated Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(c)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes from, or relating to Distributions under, this Plan;

(d)    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(e)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order, and issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(f)     resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any Entity's rights arising from or obligations incurred in connection with this Plan or such documents, including hearing and determining disputes, cases, or controversies arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order;

(g)     enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h)     adjudicate, decide, or resolve any and all disputes as to the ownership of any Claim or Interest;

(i)     approve any modification of this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(j)     hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, if any;

(k)     subject to Section 8.1, hear and determine all applications for compensation and reimbursement of expenses of the NA Khan Trustee, the Khan Entities Trustee, and Professionals under this Plan or under sections 326, 330, 331, 363, 503(b), 1103, and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to an order of the Bankruptcy Court;

(l)     hear and determine Reserved Causes of Action by or on behalf of the Consolidated Estate Trustee;

(m)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     hear and determine any issues arising under, or violations of, section 525 of the Bankruptcy Code;

(o)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or if Distributions pursuant to this Plan are enjoined or stayed;

(p)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order, or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(q)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(r)     hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(s)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(t)     enter a final order or decree concluding or closing the Chapter 11 Cases; and

(u)     hear any other matter not inconsistent with the Bankruptcy Code;

provided, however, that the Bankruptcy Court shall not retain jurisdiction after the Effective Date over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

## ARTICLE XII:
## MISCELLANEOUS PROVISIONS

12.1.   Effectuating Documents and Further Transactions.   Each of the Debtors, the Consolidated Debtor, the NA Khan Trustee, and Khan Entities Trustee and the Consolidated Estate Trustee is authorized to execute, deliver, file, or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan.

12.2.   Exemption from Transfer Taxes.   Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer, or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, and transfers of tangible property, specifically including but not

limited to transfers made pursuant to the Auction Order, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.3.    Payment of Statutory Fees.    All fees due and payable pursuant to section 1930(a)(6) of Title 28 of the United States Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Estates on the Effective Date. After the Effective Date, the Consolidated Estate Trust shall be liable for any and all Quarterly Fees when they are due and payable after the Effective Date. The Estates shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Consolidated Estate Trustee shall file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Consolidated Estate Trustee during the applicable period. The Consolidated Estate Trust shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

12.4.    Amendment or Modification of this Plan.    Subject to section 1127 of the Bankruptcy Code, the Plan Proponents, collectively, and with the consent of the Committees and KeyBank, may alter, amend, or modify this Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. Any Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.5.    [Reserved].

12.6.    Closing of Chapter 11 Cases; Caption Change.    The Consolidated Estate Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Upon the filing of a motion to close the Chapter 11 Cases, the Consolidated Estate Trustee shall file a final report with respect to all of the Chapter 11 Cases.

12.7.    Successors and Assigns.    This Plan shall be binding upon and inure to the benefit of the Debtors and the Estates and their successors and assigns, including, without limitation, the Consolidated Debtor. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.8.    Non-Consummation.    Any proposed settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of

Claims or Interests), any proposed assumption or rejection of Executory Contracts or Unexpired Leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall not become effective until the Effective Date.  Until the Effective Date, nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, or (ii) prejudice in any manner the rights of the Debtors, the Chapter 11 Trustees, or any other Person.

    12.9.    <u>Notice to Debtors, Consolidated Debtor, or Consolidated Estate Trustee</u>.    All notices, requests, and demands to or upon the Debtors, the Chapter 11 Trustees, or the Consolidated Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

        (a)      If to the NA Khan Trustee:

                Attn:   Mark T. Iammartino, Trustee
                Development Specialists Inc.
                10 S. LaSalle Street
                Suite 3300
                Chicago, IL 60603
                Telephone:  (312) 263-4141
                Facsimile:  (312) 263-1180

                -and-

                Attn:   Nicholas M. Miller
                McDonald Hopkins LLC
                300 N. LaSalle Street
                Suite 1400
                Chicago, IL 60654
                Telephone:  (312) 280-0111
                Facsimile:  (312) 280-8232

                -and-

                Attn:   Rachel L. Hillegonds
                Miller Johnson
                45 Ottawa Avenue, SW, Suite 1100
                P.O. Box 306
                Grand Rapids, MI 49501
                Telephone:  (616) 831-1711
                Facsimile:  (616) 988-1711

        (b)      If to the Khan Entities Trustee:

                Attn:   Kelly M. Hagan, Trustee

Hagan Law Offices, PLC
P.O. Box 6844
Traverse City, MI 49686
Telephone:  (231) 938-7095
Facsimile:  (231) 938-7995

-and-

Attn:   Kevin M. Smith
Beadle Smith PLC
445 South Livernois, Suite 305
Rochester Hills, MI 48307
Telephone:  (248) 650-6094
Facsimile:  (248) 650-6095

(c)      If to the IOI Debtors:

Attn:   Daniel Wikel, Chief Restructuring Officer
Interlogic Outsourcing, Inc.
804 Greenwood Ave.
Wilmette, IL 60091
Telephone:  (312) 622-5938
Facsimile:  (312) 759-8119

-and-

Attn:   Matt Murphy
         Nathan S. Gimpel
Paul Hastings LLP
71 South Wacker Drive
Forty-Fifth Floor
Chicago, IL 60606
Telephone:  (312) 499-6036
Facsimile:  (312) 499-6100

-and-

Attn:   Steven L. Rayman
CBH Attorneys & Counselors, PLLC
141 E Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone:  (269) 345-5156
Facsimile:  (269) 345-5161

and with respect to matters relating to the Consolidated Estate Trustee's role and responsibilities under this Plan, a copy to the notice address(es) provided in the Trust Agreement.  Copies of all such Notices shall also be given to the following:

{8858281:15 }                                              46

(a)    Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Attn:   Alan Lepene
             Curtis Tuggle
Telephone:  (216) 566-5500
Facsimile:  (216) 566-5800

(b)    Ice Miller LLP
1500 Broadway, Suite 2900
New York, NY  10036
Attn:   Louis T. DeLucia
             Alyson M. Fiedler
Telephone:  (212) 835-6312
Facsimile:  (212) 835-6322

(c)    May Oberfell Lorber
4100 Edison Lakes Pkwy., Suite 100
Mishawaka, IN  46545
Attn:   R. William Jonas, Jr.
Telephone:  (574) 243-4100
Facsimile:  (574) 232-9789

(d)    Jones Walker LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA  70170
Attn:   Mark Mintz
             Jeffrey Barber
Telephone:  (504) 582-8150
Facsimile:  (504) 589-8368

12.10.  <u>Governing Law</u>.  Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, and subject further to <u>Section 11.1</u> of this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Indiana, without giving effect to the principles of conflicts of law of such jurisdiction.

12.11.  <u>Exhibits</u>.  All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

12.12.  <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the IOI Debtors, the NA Khan Trustee and the Khan Entities Trustee shall, as applicable,

file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of this Plan.

 12.13. <u>Plan Documents</u>. This Plan and the Plan Supplement, including all exhibits, supplements, appendices, and schedules thereto, and any modifications to any of the foregoing, shall be in form and substance acceptable to the Plan Proponents, the Committees and KeyBank.

 12.14. <u>Reservation of Rights</u>. Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Plan Proponents with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Plan Proponents or any other Person with respect to Claims against and Interests in the Debtors.


[*Remainder of Page Intentionally Left Blank*]

Dated:  February 5, 2021          NA KHAN TRUSTEE

          */s/ Mark. T. Iammartino*
          Mark T. Iammartino
          Chapter 11 Trustee of the Estate of Najeeb Ahmed Khan

          KHAN ENTITIES TRUSTEE

          */s/  Kelly M. Hagan*
          Kelly M. Hagan
          Chapter 11 Trustee of the Khan Entities Estates

          INTERLOGIC OUTSOURCING, INC.
          (on behalf of itself and the IOI Debtors)

          */s/  Timothy Daileader*
          Timothy Daileader
          Independent Director of the IOI Debtors

**SCHEDULE 1.82**

**KHAN ENTITIES ORDINARY COURSE CLAIMS**

| CREDITOR | AMOUNT |
|---|---|
| Comcast Business | $     251.83 |
| City of Elkhart/Elkhart Public Utilities | $     122.39 |
| Frontier Communications | $      72.50 |
| IN MI Power | $  3,958.51 |
| Indiana Flight Center | $  1,300.00 |
| MCI | $      30.26 |
| NIPSCO | $     143.59 |
| Shoff Security Services, Inc. | $     626.42 |
| GoGo Business Aviation | $      94.14 |
| Crystal Valley Landscaping | $  1,260.00 |
| Koorsen Fire & Security | $     175.00 |
| Buckeye Power Sales Co. Inc. | $  1,595.48 |
| The Horton Group | $     162.25 |
| City of Scottsdale | $     307.27 |
| APS | $     183.94 |
| McDowell Business Park | $  2,001.96 |
| Safeguard Security | $     192.48 |
| The Roundabouts Consultancy | $32,200.00 |

## <u>SCHEDULE 1.115</u>

The non-Released Parties shall include all Persons and Entities that provided tax, audit, and/or accounting services to any of the Debtors during or after the year 2011.

## SCHEDULE 1.117

## RESERVED CAUSES OF ACTION

This schedule represents a non-exhaustive list of the Reserved Causes of Action in connection with the Plan. The Plan Proponents expressly reserve the right to alter, modify, amend, remove, augment, or supplement this schedule at any time in accordance with the Plan. If the Plan is not confirmed, no limitation will be created on claims and Causes of Action by the Estates.

As defined in the Plan, "Cause of Action" means individually or collectively and without limitation, any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

Further, as defined in the Plan, "Avoidance Actions" means, collectively and individually, (a) any and all claims for relief against any and all third parties for the recovery of transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Estates under section 510 of the Bankruptcy Code or under other applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

Pursuant to the Trust Agreement, the Consolidated Estate Trustee may investigate and prosecute, investigate, and settle Avoidance Actions and Causes of Action after the Effective Date to the extent permitted under the Plan and Confirmation Order.

No Person should rely on the absence of a specific reference in the Plan, the Disclosure Statement, or any exhibits or schedules attached to either the Plan or the Disclosure Statement to any Cause of Action against it that the Consolidated Estate Trustee will not, or may not, pursue any and all available Causes of Action against it. The Plan Proponents and their respective Estates and the Consolidated Estate Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person to the extent permitted under the Plan and Confirmation Order.

Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a court order, the Plan Proponents and their respective Estates and the Consolidated Estate Trustee expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon after, or as a consequence of,

confirmation or consummation of the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that any Debtor or Estate may hold against any Person shall vest in the Consolidated Estate Trustee.

Notwithstanding the foregoing, the following is a potential (but in no way exclusive) list of specific types of Claims, rights Causes of Action, suits, and proceedings expressly preserved by the Plan Proponents and their respective Estates and the Consolidated Estate Trustee.  The Plan Proponents and their respective Estates have not definitively concluded that each of these actions and potential defendants will be subject to a Cause of Action, but this list is provided here for review by interested parties out of an abundance of caution.

1.    Causes of Action against any insurers, including, but not limited to, any claims for coverage relating to Claims filed that may be covered by insurance, and claims for reimbursement of legal fees in connection with the same.  Specific insurers include, but are not limited to: Pacific Indemnity Company; Chubb; The Horton Group; Federal Insurance Company; Progressive Insurance; Northwestern Mutual; Ohio Casualty Insurance Company; Aspen American Insurance Company; and Guarantee Company of North America.

2.    All Avoidance Actions, including, but not limited to, actions against those parties listed in any Debtor's Statement of Financial Affairs, copies of which are available upon request by contacting counsel to the NA Khan Trustee, Nicholas Miller, Esq., via email at nmiller@mcdonaldhopkins.com.

3.    Causes of Action asserted under state and federal law, including but not limited to any and all avoidance recovery, fraud, fraudulent transfer, conspiracy, lender liability, aiding and abetting, constructive trust, setoff, breach of contract, breach of fiduciary duty, breach of Uniform Fiduciary Act, conversion, responsible person liability, indemnification, unjust enrichment, civil RICO, declaratory relief, professional malpractice, negligence, claim disallowance, claim subordination, or other actions related in any way to the financial mismanagement described in the Disclosure Statement that may be brought on behalf of the Debtors or their Estates or by the Consolidated Estate Trustee against any Persons or Entities that are not Released Parties, including, but not limited to, (a) NA Khan, (b) Michael Shoemaker, (c) Sarah Shoemaker, (d) Crowe LLP, (e) OneSource Virtual, Inc., (f) Lake City Bank, (g) 1st Source Bank, (h) Berkshire Bank, and (i) with respect to each of the foregoing entities in clauses (a) through (h), such entities' Representatives.

4.    All other Causes of Action of the Debtors and their Estates.

{9384223:2 }